IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:24-21983-CIVIL BECERRA/TORRES

CUBANOS PA'LANTE, et al.,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF REPRESENTATIVES,
et al.,

    *Defendants*.

_____/

**THE SECRETARY'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Plaintiffs acknowledge that they must plead and prove that "race was the 'predominant factor' motivating district line drawing." Doc.38 at 3 (quoting *Cooper v. Harris*, 581 U.S. 285, 291 (2017)). But Plaintiffs think that they can plead racial predominance through a few snippets from the legislative record and a few conclusory statements about district shapes. *See* Doc.32 at 3-5. They say that racial-gerrymandering claims are so unique that, unlike all other types of "discriminatory-intent claims," they don't need to concern themselves with the kind of fact-sensitive inquiry used in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977), or the kind of factual allegations needed for such an inquiry. Doc.38 at 4. That's not true. Courts routinely employ *Arlington Heights* to gauge whether race in fact predominated in the drawing of districts—whether race was "the criterion that, in the" legislature's "view, could not be compromised." *Shaw v. Hunt*, 517 U.S. 899, 907 (1996). And, without the kind of sensitive inquiry that *Arlington Heights* requires, it becomes impossible to disentangle permissible from impermissible considerations, to overcome the "starting presumption that the legislature acted in good faith," or to show that an alternative map was even feasible. *Alexander v. S.C. State Conf. of the NAACP*, 144 S. Ct. 1221, 1235 (2024).

    **A.**    ***Arlington Heights*** **is used to determine legislative intent—whether race predominated in the drawing of districts.**

Consider just two of the cases Plaintiffs rely on in their response: *Hunt v. Cromartie*, 526 U.S. 541 (1999), and *Jacksonville Branch of the NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229 (M.D. Fla. 2022). Both are racial-gerrymandering cases. In *Hunt*, the Supreme Court said

1

that "the trial court" must "perform a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" to "assess[] a jurisdiction's motivation" in drawing a district. 526 U.S. at 546 (cleaned up). Unsurprisingly, the Supreme Court pointed to *Arlington Heights*, and other racial-gerrymandering cases that also rely on *Arlington Heights*, as the guide for this sensitive inquiry. *Id.* And, in *Jacksonville Branch of the NAACP*, the district court relied on the *Arlington Heights* factors to assess the city's motivations in drawing district lines in a racial-gerrymandering challenge to city-council and school-board districts. 635 F. Supp. 3d at 1244. It said that "[t]o determine legislative intent, the Court is guided by the Supreme Court's decision in *Village of Arlington Heights*." *Id.* The district court helpfully collected cases for the proposition, including four Supreme Court cases. *Id.*

Using the *Arlington Heights* framework makes intuitive sense as well. The question posed in racial-gerrymandering cases is whether districts were "drawn with an impermissible racial motive." *Hunt*, 526 U.S. at 547. Or as the district court in *Jacksonville Branch of the NAACP* put it, again, citing a Supreme Court case: "The predominance question is about *which* voters the legislature decides to move in or out of a district to meet its equal population obligations, and whether race, as opposed to other, 'traditional' factors, predominated the decision." 635 F. Supp. 3d at 1244 (citing *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 273 (2015)). Whether a decision was made because of race, and not in spite of race, is precisely what *Arlington Heights* helps answer based on "a sensitive inquiry" of the "circumstantial and direct evidence." 429 U.S. at 266. Cases applying *Arlington Heights* thus guide any assessment from pleading through trial; they shouldn't be cast aside as merely "discriminatory intent" or "racial animus" cases. *Compare* Doc.38 at 6, *with Jacksonville Branch of the NAACP*, 635 F. Supp 3d at 1244 (relying on *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363 (11th Cir. 2022), and *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299 (11th Cir. 2021)).

> **B.    Because *Arlington Heights* applies, Plaintiffs must plead more than they have.**

At the pleading stage, when viewed through the *Arlington Heights* lens, Plaintiffs must plead enough facts (and not just legal conclusions) to show that it's plausible for race to have predominated. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way, Plaintiffs must allege enough facts concerning direct and circumstantial evidence to overcome the starting

presumption of legislative good faith—the starting presumption that race didn't predominate. This Plaintiffs haven't done in their amended complaint.

**1.** Start with the direct evidence of racial predominance. In their response, Plaintiffs point to statements from four legislators. Doc.38 at 8. While statements from four officials may be sufficient to glean the intent of a five-person city commission, *GRACE, Inc. v. City of Miami*, 1:22-cv-24066 (S.D. Fla. 2024) (a racial-gerrymandering case with a five-person city commission), that's not the case with the 160-person Florida Legislature. One legislator speaks only for himself, not the entire body. Case, *United States v. O'Brien*, 391 U.S. 367, 384 (1968), after case, *Brnovich v. DNC*, 594 U.S. 647, 689 (2021), after case, *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 932 (11th Cir. 2023), after case, *Greater Birmingham Ministries*, 992 F.3d at 1324-25, stands for this very proposition. To be sure, four legislators' statements may be "important," "probative," or even helpful. Doc.38 at 9. But they simply don't establish the entire legislature's "view" on whether certain people were placed in certain districts because of their race. *Shaw*, 517 U.S. at 907. More direct evidence is needed for Plaintiffs to *plausibly* overcome the presumption that the legislature acted in good faith—that it acted without race being the factor that predominated its decisions.

**2.** Without the necessary direct evidence, Plaintiffs could have provided allegations concerning circumstantial evidence. Something like the legislature's creation of a "'strangely irregular twenty-eight-sided'" district was needed. *Alexander*, 144 S. Ct. at 1250 (quoting *Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960)). Plaintiffs didn't come close to such allegations.

Plaintiffs' circumstantial-evidence allegations concern the at-issue districts "transgressing major geographic boundaries like the Everglades, unnecessarily splitting political subdivisions like the City of Miami and Collier County, and forming noncompact shapes" when compactness metrics are compared with other districts in the same map. Doc.38 at 10. Yet these are merely districting realities. The Everglades must be put in a district. The same is true of airports. Large metropolitan areas must be split where they have too many people for a single district. One district may well have a better compactness score than another. Again, there are no allegations of odd appendages or twenty-eight-sided districts; complaining about compactness scores, for instance, isn't enough. *Compare* Doc.31 ¶ 4 (challenging CD27), *with* Doc.32-2 at 2 (stating compactness scores, including a Reock score of .71, which is very compact).

3

More to the point, Plaintiffs fail to include any allegations of deviations from traditional districting criteria—like lack of compactness or splitting of political subdivisions—done *because of* race. They instead ask for inferences in their favor. It doesn't work. It's more reasonable to infer, for example, that the City of Miami was split because of its large population and not because of race. That's especially so because the legislature's choices come with a presumption of legislative good faith—an evidentiary weight that tilts away from racial predominance. *Alexander*, 144 S. Ct. at 1235-36. And that's especially so because the government violates the Equal Protection Clause only when it acts "*because of*"—and not "in spite of"— "its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added).

**3.** Given the (lack of) allegations concerning direct and circumstantial evidence of intent, Plaintiffs could have alleged something more through an alternative map, as *Alexander* says they must. Without one, it's "difficult for plaintiffs to defeat our starting presumption that the legislature acted in good faith," and show that different but permissible maps were even possible. *Alexander*, 144 S. Ct. at 1235. The Secretary explained that the available alternatives simply don't work. *See* Doc.32 at 6-10. Plaintiffs seemingly disavow those alternatives anyways. *See* Doc.38 at 7 n.3.

What's left then is Plaintiffs' attempt to distinguish *Alexander*. They say that *Alexander* applies only where partisan-gerrymandering is raised as a defense, though the case itself includes no such limitation, and they claim that *Alexander*'s alternative map requirement "is an evidentiary tool to be used at trial, *not* a pleading requirement." Doc.38 at 7 (emphasis in the original). That's no hurdle here. When there isn't enough direct evidence, and when there isn't enough circumstantial evidence, then, without an alternative map, it's difficult to find enough facts or "reasonable inferences" from those facts to save Plaintiffs' complaint. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

\*   \*   \*

This Court should dismiss Plaintiffs' amended complaint for the reasons in the Secretary's motion to dismiss, Doc.32, and this reply in support of that motion. The dismissal should be with prejudice because Plaintiffs have used their one amendment as of right and made little progress towards alleging a case for racial gerrymandering; there's no reason to allow a case to proceed where the allegations simply don't warrant it. *See generally Simpson v. Thurston*, 4:22-cv-213, 2023 U.S. Dist. LEXIS 92213, at *2-6 (E.D. Ark. May 25, 2023) (three-judge court) (granting a

4

motion to dismiss in a vote-dilution case after concluding that the allegations weren't enough to overcome the legislative presumption of good faith).

Dated: August 13, 2024                                             Respectfully submitted by,

Bradley R. McVay (FBN 79034)                    /s/ Mohammad O. Jazil
brad.mcvay@dos.myflorida.com                    Mohammad O. Jazil (FBN 72556)
Joseph S. Van de Bogart (FBN 84764)             mjazil@holtzmanvogel.com
joseph.vandebogart@dos.myflorida.com            Michael Beato (FBN 1017715)
Ashley Davis (FBN 48032)                        mbeato@holtzmanvogel.com
ashley.davis@dos.myflorida.com                  zbennington@holtzmanvogel.com
FLORIDA DEPARTMENT OF STATE                     HOLTZMAN VOGEL BARAN
R.A. Gray Building                              TORCHINSKY & JOSEFIAK PLLC
500 S. Bronough St.                             119 S. Monroe St. Suite 500
Tallahassee, FL 32399                           Tallahassee, FL 32301
(850) 245-6536                                  (850) 270-5938

*Counsel for the Secretary*

## LOCAL RULE 7.1(c) CERTIFICATION

The undersigned certifies that the foregoing does not exceed ten pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.