IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF
REPRESENTATIVES, *et al.*,

    *Defendants*.

_____/

## **PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM FLORIDA HOUSE OF REPRESENTATIVES**

In this racial gerrymandering suit regarding congressional and State House districts in South Florida, Plaintiffs served a first set of requests for production on Defendant the Florida House of Representatives. Plaintiffs later served a second set of new and different requests. Despite acknowledging the requests are not the same, the House objects to this second set as "duplicative" of the first set. The House also objects to portions of four requests—which demand legislative documents used to develop the redistricting plans at issue—as irrelevant.

With good-faith attempts to resolve the matter having proven unsuccessful, Plaintiffs move under Federal Rule of Civil Procedure 37(a) to compel the House to produce documents responsive to Request Nos. 1–9 of Plaintiffs' Second Request for Production, and to pay Plaintiffs' reasonable expenses incurred in making this motion.

### I. Factual Background

Plaintiffs filed this action on May 23, 2024. The operative complaint alleges that three congressional and seven State House districts (the "Challenged Districts") are racially gerrymandered in violation of the Fourteenth Amendment's Equal Protection Clause. ECF No. 58. The Court has not yet issued a scheduling order or set a discovery deadline.

On July 10, 2024, Plaintiffs served 11 requests for documents related to the House's redrawing of the Challenged Districts. Ex. 1 (Plfs.' 1st RFP). The House responded on August 9, objecting to Request Nos. 1–5 and 7–10 on the following grounds, among others:

    (1) The demand for "all documents related to" certain subjects rendered the requests overly broad, disproportionate, vague, and not reasonably particular in their description of

1

    requested documents; and

  (2) The requests were overly broad, disproportionate, and unduly burdensome because they required the House to search all records of all House members and staff.

Ex. 2 (House's Resp. to Plfs.' 1st RFP).

  Plaintiffs' and the House's counsel conferred on August 22 regarding the House's objections and discussed ways in which the requests could be narrowed to accommodate the House's concerns of undue burden, vagueness, overbreadth, and disproportionality. Plaintiffs' counsel emailed a summary of the discussion on October 8. Ex. 3 (Plfs.' Oct. 8, 2024 Letter). The House's counsel responded on October 17 that the time to raise with the Court any discovery dispute regarding the First Request for Production had expired, and that the House's objections to the First Request for Production remained unchanged. Ex. 4 (House's Oct. 17, 2024 Letter).

  On November 4, Plaintiffs served their Second Request for Production, including nine new requests rewritten and narrowed along the lines of what the Parties' counsel had discussed in their conferral. Ex. 5 (Plfs.' 2nd RFP). Each request asked only for documents which are or were in the custody of 14 specific custodians, rather than all House members and staff. Ex. 5 at 5. Request Nos. 1–9 demanded, for the period January 1, 2020, to April 19, 2022, "All Documents including an analysis or discussion of" the following:

  (1) "the redistricting of congressional or Florida House districts in Miami-Dade County that were written, drafted, and/or edited by the Legislature";

  (2) "Voting Cohesion among Hispanic or Latino voters that were written, drafted, received, commissioned, and/or edited by the Legislature";

  (3) "White Bloc Voting that were written, drafted, received, commissioned, and/or edited by the Legislature";

  (4) "the Non-Retrogression Requirement, Non-Dilution Requirement, or Section 2 to Hispanic-majority districts in Miami-Dade County that were written, drafted, received, commissioned, and/or edited by the Legislature";

  (5) "redistricting criteria or methodology that were written, drafted, and/or edited by the Legislature";

  (6) "the redistricting of congressional or Florida House districts in Miami-Dade County that were transmitted to, from, and/or between the Legislature, the Legislature's staff, and/or the Legislature's consultants";

(7) "Voting Cohesion among Hispanic or Latino voters that were transmitted to, from, and/or between the Legislature, the Legislature's staff, and/or the Legislature's consultants";

(8) "White Bloc Voting that were transmitted to, from, and/or between the Legislature, the Legislature's staff, and/or the Legislature's consultants"; and

(9) "the application of the Non-Retrogression Requirement, Non-Dilution Requirement, or Section 2 to Hispanic-majority districts in Miami-Dade County that were transmitted to, from, and/or between the Legislature, the Legislature's staff, and/or the Legislature's consultants". Ex. 5 at 5–6.

Each request explicitly excluded from its ambit "any Documents made publicly available on floridaredistricting.gov, myfloridahouse.gov, or flsenate.gov." Ex. 5 at 5–6.

The House responded on December 4, objecting to Request Nos. 1–9 on the ground that they are "duplicative of" Plaintiffs' First Request for Production. Ex. 6 (House's Resp. to Plfs.' 2nd RFP):

> The House further objects that this request, although narrower than, is duplicative of [a request] of Plaintiffs' First Request for Production on the Florida House of Representatives, dated July 10, 2024. Under Local Rule 26.1(g)(2)(A), Plaintiffs long ago waived their right to challenge the objections the House served on August 9, 2024. Plaintiffs cannot circumvent Local Rule 26.1(g)(2)(A)'s deadline to submit discovery disputes to the Court by re-serving the same request two months after the deadline passed.

Ex. 6 at 3–11.

The House also raised this relevance objection to a portion of Request Nos. 2, 3, 7, and 8:

> The House further objects that, to the extent it seeks documents that relate to voting cohesion among Hispanic or Latino voters in districts not located wholly or partially in Miami-Dade County, this request seeks documents that are not relevant to any party's claims or defenses.

Ex. 6 at 4–5, 9–10.

Finally, the House asserted legislative privilege and work product objections.[1] Ex. 6 at 3–12. The Parties' earlier conferral seemingly bore fruit, however, because the House raised no objections on grounds of undue burden, vagueness, overbreadth, or disproportionality.

---

[1] Plaintiffs do not contest the House's legislative privilege and work product objections so long as the House observes any applicable privilege log obligations. *See* L.R. 26.1(e)(2)(C).

3

Plaintiffs conferred with the House, explaining that nothing in the Local Rules bars Plaintiffs from serving new document requests, and explaining that documents relating to districts outside Miami-Dade County are relevant to Plaintiffs' case. Despite good-faith conferrals on these issues, however, the House is unwilling to withdraw its objections.

## II. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The Rules strongly favor full discovery whenever possible." *Azzia v. Royal Caribbean Cruises Ltd.*, No. 15-24776-CV, 2018 WL 11233847, at *1 (S.D. Fla. Feb. 12, 2018) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). "Courts must therefore employ a liberal and broad scope of discovery in keeping with the spirit and purpose of the discovery rules." *Id.* (citing *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010)). "Motions to compel are committed to the sound discretion of the court." *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 670 (S.D. Fla. 2012) (citing *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984)).

## III. Argument

**A. The Local Rules do not bar a party from serving a new request for production.**

Rule 34(a) provides, in relevant part, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored information . . . ." Rule 34 sets no limit on the number of requests a party may serve. (Nor indeed how many times a party may serve the same request, so long as a repeated request is not interposed for an improper purpose or unduly burdensome. *See* Rule 26(g)(1)(B).)

Nor do the Local Rules set any such limits. While Local Rule 26.1(g)(2)(A)(i) provides a deadline for seeking court intervention concerning a "dispute relating to a written response or objection to a discovery request," that provision does exactly that: sets a deadline for raising a dispute regarding a particular response to a particular discovery request—"the written response or objection that is the subject of the dispute".

Here, Plaintiffs served a first set of requests for production, received and discussed the House's objections, and then served a new, second set of requests. The House even acknowledges that the second set of requests are different ("narrower than") than the first. Ex. 6 at 3–11. But not merely "narrower than" the first set of requests, each new request is *written differently* to demand

4

*a different set of documents*. Whereas the first set of requests demanded "all documents related to" certain subjects, Ex. 1 at 5–6, the new requests ask for "all documents including an analysis or discussion of" certain subjects, Ex. 5 at 5–6. Furthermore, whereas the first set of requests demanded documents that might be in the custody of *more than five hundred* individual representatives and House staffers, *see* Ex. 2 at 3–18, the new requests are limited only to documents "which are and/or were in the custody of" seven representatives, four staffers, and three committees. Ex. 5 at 5.

In short, the existence of a prior, similar document request cannot shield a party from responding to a subsequent, different request. The House's objection is meritless.

### B. Information requested by Request Nos. 2, 3, 7, and 8 outside Miami-Dade County clears the "low bar" of relevance.

The House's relevance objections to Request Nos. 2, 3, 7, and 8 are likewise meritless. This case presents racial gerrymandering claims under the Fourteenth Amendment's Equal Protection Clause. Courts apply a two-step analysis when assessing racial gerrymandering claims. First, a plaintiff must allege that race was the "predominant factor" motivating district line drawing. *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). Second, if race was the predominant factor motivating a district's design, the defendant must satisfy strict scrutiny by proving that its use of race "serves a 'compelling interest' and is 'narrowly tailored' to that end." *Id.* at 292 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 173, 193 (2017)). "When a State invokes the [Voting Rights Act] to justify race-based districting, it must show (to meet the 'narrow tailoring' requirement) that it had a 'strong basis in evidence' for concluding that the statute required its action." *Id.* (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)). "Or said otherwise, the State must establish that it had 'good reasons' to think that it would transgress the [VRA] if it did *not* draw race-based district lines." *Id.* at 293 (emphasis in original).

In this case, Plaintiffs allege that the Florida Legislature drew several majority-Hispanic districts in South Florida predominantly based on race. ECF No. 58 (Second Am. Compl.) ¶¶ 220, 225. Plaintiffs further allege that the use of race was not narrowly tailored to any compelling interest that might justify the predominant use of race, namely the Voting Rights Act and corollary requirements of the Florida Constitution's Fair Districts Amendments. *Id.* ¶¶ 221, 226. This is so, Plaintiffs allege, because the Legislature lacked good reasons to think that two of the preconditions for liability under the Voting Rights Act and Fair Districts Amendments were present in the

5

Challenged Districts. *Id.* ¶¶ 193–199. These preconditions (the "*Gingles* preconditions") are Hispanic voting cohesion and white bloc voting. *Id.* ¶¶ 13–17, 193–199; *see Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986).

Request Nos. 2, 3, 7, and 8 demand various legislative documents that analyze or discuss "Voting Cohesion among Hispanic or Latino voters" and "White Bloc Voting." The House objects that "documents that relate to [these two subjects] in districts not located wholly or partially in Miami-Dade County . . . are not relevant to any party's claims or defenses." Ex. 6 at 4–5, 9–10. This objection holds no water. When the House debated the challenged redistricting maps during the legislative process, the bill sponsors and Redistricting Committee leadership repeatedly explained that they employed a "consistent methodology" in redistricting statewide, including when applying the minority-protection requirements.[2] In light of these statements, the House's analyses of Hispanic voting cohesion and white bloc voting in districts outside Miami-Dade County are relevant to whether the House had "good reasons to think" those two *Gingles* preconditions were present for the Challenged Districts (which all include a portion of Miami-Dade County).

---

[2] *See, e.g.*, Ex. 7 (Feb. 1, 2022 House Tr.), statement of Redistricting Committee Chair Rep. Leek, 8:4–5, 8:12–14 (describing how the State House map's "18 protected Black districts . . . and 12 protected Hispanic districts" are all "drawn in a consistent manner with respect to Florida Supreme Court precedent, and to maintain existing majority-minority districts."); Ex. 8 (Feb. 2, 2022 House Tr.), statements of Congressional Redistricting Committee Vice Chair Rep. Tuck, 8:3–6 (debating in support of State House map, "I want to take a minute to discuss . . . the consistent methodology that has been applied to every district throughout the state in order to reach the result we are considering today. . . . This concept is indicative of the consistent methodology and reasoned approach of applying the constitutional standards throughout the map.") and Chair Leek, 36:11–12 ("These maps and our process used a consistent methodology, just like we did a decade ago, applied across the entire map."); Ex. 9 (Feb. 18, 2022 House Subcommittee Tr.), statement of Congressional Redistricting Subcommittee Chair Rep. Tyler Sirois, 10:19, 11:6–9 (explaining that in an early congressional map draft, the "three protected Black districts and three protected Hispanic districts" "are also drawn in a consistent manner with respect to Florida Supreme Court pre[ce]dent to maintain existing majority-minority districts"), 130:17–20 (explaining that the House "hit that mark again" in "engag[ing] in a consistent and reasoned approach"); Ex. 10 (Mar. 3, 2022 House Tr.), statements of Chair Leek, 52:8–9 ("If the question is, was the methodology used in the State House maps consistent with the methodology used in the congressional maps, the answer is yes.") and Chair Sirois, 78:4–5 ("Our approach has been careful and consistent."); Ex. 11 (Apr. 19, 2022 House Subcommittee Tr.), statement of Chair Leek, 9:20–24 (explaining that challenged Congressional Districts 27 and 28 were "exact copies" of the districts discussed on March 3, 2022).

If the House *did* apply a consistent methodology statewide, then any discussion of the *Gingles* preconditions outside South Florida would be relevant to how the Challenged Districts were drawn, too. If, however, discovery reveals that the House did *not* apply a consistent methodology when evaluating those two preconditions—and instead applied a unique, perhaps faulty methodology when evaluating the Challenged Districts—that would undermine the House's defense that it had a "strong basis in evidence" for concluding that those two preconditions were present with respect to the Challenged Districts.

"Whether evidence is relevant under the federal rules is an extraordinarily low bar." *Nunez v. Coloplast Corp.*, No. 19-cv-24000-SINGHAL/Louis, 2020 WL 2315077, at *9 (S.D. Fla. May 11, 2020); *see also Fla. State Conf. of Branches & Youth Units of NAACP v. Lee*, 568 F. Supp. 3d 1301, 1305 (S.D. Fla. 2021) (noting "circumstantial evidence could be relevant and therefore discoverable even if ultimately not admissible"). Request Nos. 2, 3, 7, and 8 clear this low hurdle.

### C. The Court should assess Plaintiffs' fees and expenses against the House.

Under Rule 37(a)(5)(A), if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party [] whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the party's objection was "substantially justified" or "other circumstances make an award of expenses unjust." Rule 37 "creates a rebuttable presumption in favor of sanctions." *Harris v. Int'l Paper Co.*, No. 2:20-cv-573-TFM-N, 2022 WL 22897114, at *1 (S.D. Ala. Sept. 14, 2022) (citation omitted). The House's objections are not substantially justified, and there are no other circumstances that make an award of expenses unjust. The Court should therefore assess Plaintiffs' reasonable fees and expenses against the House under Rule 37(a)(5).

## IV.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court compel the House to produce all non-privileged documents responsive to Request Nos. 1–9 in Plaintiffs' Second Request for Production, and assess reasonable expenses incurred in making this motion.

### LOCAL RULE 7.1(a)(3) CERTIFICATE OF CONFERRAL

Plaintiffs' counsel conferred with the counsel for the House in a good-faith effort to resolve the issues raised in this motion, during a telephone meet-and-confer on December 12, 2024, and again by email. The House opposes the relief requested by this motion.

Respectfully submitted January 2, 2025,

/s/ Nicholas L.V. Warren

Nicholas L.V. Warren (FBN 1019018)
Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida, Inc.**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org
cmcnamara@aclufl.org

Andrew Frackman*
**O'Melveny & Myers LLP**
1301 Avenue of the Americas
17th Floor
New York, NY 10019
(212) 326-2000
afrackman@omm.com

*Admitted pro hac vice*

Jorge L. Vasquez, Jr.*
**Vasquez Attorneys at Law, PC**
141 Parkway Road, Suite 14
Bronxville, NY 10708
(212) 752-8408
jorge@vasquezpc.com

Brian P. Quinn*
Patrick J. Jones*
Emily Murphy*
Gabrielle S. Jackson*
**O'Melveny & Myers LLP**
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bquinn@omm.com
pjones@omm.com
emurphy@omm.com
gjackson@omm.com

*Counsel for Plaintiffs*