IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF
REPRESENTATIVES, *et al.*,

    *Defendants*.

_____/

**AMENDED JOINT SCHEDULING REPORT**

    In accordance with the Court's Order of February 14, 2025, the parties conferred regarding this amended joint scheduling report on February 19, 2025.

**I. DISCOVERY PLAN**

    Pursuant to Rule 26(f)(3) and Local Rule 16.1(b)(2), the parties discussed a discovery plan:

  **A. Initial disclosures:** The parties exchanged initial disclosures on 7/16/24.

  **B. Discovery:**

    **a. Scope:** Plaintiffs intend to seek discovery on whether race predominated in the drawing of the challenged districts, whether the use of race was narrowly tailored to a compelling interest, the administrability of a remedial decree, and affirmative defenses. The topics on which Defendants intend to seek discovery include Plaintiffs' standing, Plaintiffs' expert evidence, any alternative maps that Plaintiffs intend to present, and any affirmative defenses that might be raised.

    **b. Timing:**

      **i. Plaintiffs' Position:** Plaintiffs propose separate deadlines for documentary and interrogatory discovery and other discovery, similar to the separate deadlines for documentary and other discovery that the parties jointly proposed in their initial scheduling report (ECF No. 34 at 1–2).[1] Specifically, Plaintiffs propose that document requests and interrogatories must be served by 5 days after the Court issues a scheduling order, and that all other discovery be completed by 7/2/25. The

---

[1] Notably, under the parties' initial proposed schedule, Defendants agreed that document requests would have to be served *before* Plaintiffs served their final expert reports. ECF No. 34 at 2–3.

1

parties have already engaged in significant written discovery, with plaintiffs having been served as many as (1) three sets of requests for production containing 37 separate requests, (2) four sets of interrogatories containing 15 separate interrogatories, many with multiple detailed subparts, and (3) forty requests for admission. All parties have had ample time to engage in written discovery. The parties should be given one last opportunity to serve interrogatories and document requests, and then focus their remaining discovery efforts on depositions, expert discovery, and requests for admission.

    ii. **Defendants' Position:** Notwithstanding their motion to stay the case, as discussed below, Defendants oppose deadlines for documentary and interrogatory discovery that precede the general discovery deadline. Defendants might seek to conduct documentary and interrogatory discovery after 3/28/25 under a variety of circumstances (for example, in connection with or after fact depositions, if Plaintiffs disclose additional alternative maps, or if the Florida Supreme Court's forthcoming decision in *Black Voters Matter Capacity Building Institute*, *Inc. v. Secretary*, *Florida Department of State*, No. SC2023-1671 (Fla.), suggests a need for further discovery).

## II. OTHER MATTERS

Pursuant to Local Rule 16.1(b)(2), the parties discussed the following issues:

A. **Likelihood of settlement:** The parties agree that, at this juncture, settlement is not likely.

    Defendants note Michael Hanzman of Miami has mediation scheduled for March 26 in *Nord Hodges v. Albritton*, No. 8:24-cv-879 (M.D. Fla.), a three-judge redistricting case pending before the Middle District of Florida. If this Court is inclined to send this case to mediation, then Defendants would ask for the mediation to be scheduled on March 26 with Michael Hanzman. Given the overlap in issues and counsel between the two cases, having one mediator on one date would conserve the parties' resources.

    Plaintiffs are unable to mediate in this case on March 26. If the Court is inclined to refer this case to mediation, the selection of a mediator and the scheduling and conduct of the mediation should proceed in the ordinary course of this case and according to the Local Rules.

  B. **Likelihood of appearance of additional parties:** Additional parties are not likely.

  C. **Proposed limits on the time to join other parties and to amend the pleadings, file pretrial motions, hear pretrial motions, and complete discovery; and requested dates for expert disclosures, Rule 26(a)(3) disclosures, submission of pretrial briefs, a final pretrial conference, and trial:**

   a. **Defendants' Position and Proposed Deadlines:**

  Defendants submit that, beginning with expert-disclosure deadlines, all deadlines should run from the date the Florida Supreme Court issues its forthcoming decision in *Black Voters Matter Capacity Building Institute*, *Inc. v. Secretary*, *Florida Department of State*, No. SC2023-1671 (Fla.) ("*BVM*"). Additionally, Defendants will move to stay this case, pending the resolution of *BVM*.

  Plaintiffs' claims turn on their assertion that the non-diminishment standard in article III, sections 20(a) and 21(a) of the Florida Constitution applies only to districts that satisfy the second and third of the so-called *Gingles* preconditions. *See* ECF No. 58 at 13–17, 191–214. Specifically, Plaintiffs contend that the non-diminishment provision does not protect predominantly Hispanic districts in South Florida—and therefore did not require the Legislature to consider race in drawing those districts—because (Plaintiffs argue) the challenged districts do not satisfy the second and third *Gingles* preconditions. *Id*. These preconditions are satisfied if the minority group is politically cohesive and the white majority votes sufficiently as a bloc to enable it usually to defeat the minority group's preferred candidate. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986).

  Whether, how, and to what extent the *Gingles* preconditions apply not only under Florida's separate vote-dilution standard, but also under the non-diminishment standard, is one of the main questions that is squarely before the Florida Supreme Court in *BVM*. Oral argument took place in *BVM* more than five months ago, on September 12, 2024. Yet Plaintiffs propose to begin expert discovery in this case in four weeks—perhaps without the benefit of the Florida Supreme Court's determination of the very state-law question on which Plaintiffs' claims so fundamentally depend.

  Plaintiffs claim that, in 2022, Florida law was unequivocal and that the second and third *Gingles* preconditions "were plainly prerequisites to Florida's non-diminishment standard." Any different ruling in *BVM*, Plaintiffs argue, would represent a change in Florida law and therefore be irrelevant to Plaintiffs' claims, which challenge the 2022 redistricting.

  But the law was not clear-cut. In the Florida Supreme Court's original exposition of the

Florida Constitution's redistricting standards in *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d 597 (Fla. 2012), the Court discussed the non-diminishment standard in detail but did not suggest that the *Gingles* preconditions applied to the non-diminishment standard. Even in *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015), the Court sent mixed signals. It stated that cohesion and polarized racial bloc voting are the "first step" in the analysis, but also described those criteria as "relevant" rather than necessary. *Id*. at 286–87 & n.11. And rather than conclude that the non-diminishment standard did not protect South Florida's predominantly Hispanic districts, the Court held that the district at issue there—a South Florida congressional district—"does not diminish the ability of Hispanics to elect representatives of their choice." *Id*. at 287. More recently, when the Court reviewed Florida's new State House districts, it took no issue with the House's position that twelve districts perform for Hispanic voters and found that the "objective statistical data constitute support in the record for the Legislature's representation that the 2022 plans do not diminish minority voters' ability to elect representatives of their choice." *In re Senate Jt. Resol. of Legis. Apportionment 100*, 334 So. 3d 1282, 1289–90 (Fla. 2022). Plaintiffs' position therefore that the Florida Supreme Court has definitively resolved the question now pending in *BVM* relies on a selective reading of the Florida Supreme Court's precedents.

At the very least, *BVM* should clarify Florida law on the applicability and scope of the *Gingles* preconditions.

Before the parties engage in expensive expert discovery and prepare summary-judgment papers, this Court should allow the Florida Supreme Court time to resolve the threshold, state-law question that is central to Plaintiffs' claims. Any assessment of the *Gingles* preconditions requires sophisticated statistical analyses and expert testimony. The parties and the Court should have the benefit of the Florida Supreme Court's decision on this state-law question before the parties begin to expend significant resources to present expert testimony and motions for summary judgment—and before this Court decides dispositive motions. Otherwise, the parties and the Court might waste resources—including time and public funds—and be compelled to retrace their steps (for example, in the form of reopened discovery or new or supplemental expert disclosures or summary-judgment briefs). All of this favors Defendants' stay motion.

Plaintiffs have no reason to complain that Defendants' proposal might extend the litigation schedule. Plaintiffs waited more than two years after the challenged districts were enacted to file

4

this litigation on May 23, 2024. More recently, Plaintiffs withheld their expert disclosures for 6½ months beyond the agreed-upon deadline for Plaintiffs' expert disclosures. Under the parties' original proposed schedule, Plaintiffs' expert disclosures were due on August 30, 2024. ECF No. 34 at 3. On August 27, Plaintiffs notified the Court that they "plan to serve their expert disclosures by September 6, 2024." ECF No. 49 at 1. But they never did—and now propose to serve their initial expert disclosures 6½ months later, on March 14, 2025. If Plaintiffs sought an expeditious resolution, they would have served their expert disclosures last August or September, when they said they would.

Under any schedule, Defendants respectfully request at least 75 days to make expert disclosures from Plaintiffs' deadline to make their initial expert disclosures. Any analysis of the second and third *Gingles* preconditions involves sophisticated "statistical techniques" such as "homogenous precinct analysis, ecological regression, and ecological inference." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 979 F.3d 1282, 1290 (11th Cir. 2020). Plaintiffs have had nearly three years to prepare their expert analyses. Defendants should have at least 75 days to review Plaintiffs' expert disclosures, fully evaluate the methodology employed by Plaintiffs' experts, conduct analyses on any new alternative maps that Plaintiffs might disclose, and prepare appropriate rebuttals to Plaintiffs' expert evidence.

Defendants therefore propose the following schedule:

| Deadline | Days After Issuance of the *BVM* Decision |
|---|---|
| Deadline for Plaintiffs to serve expert disclosures | 30 days |
| Deadline for Defendants to serve expert disclosures | 90 days |
| Deadline for Plaintiffs to serve rebuttal expert disclosures | 120 days |
| Deadline to complete discovery | 160 days |
| Deadline to file motions for summary judgment | 190 days |
| Deadline to file Rule 26(a)(3) disclosures | 250 days |
| Deadline to file pretrial motions | 250 days |
| Deadline to file pretrial briefs | 280 days |
| Deadline to hear pretrial motions | 290 days |
| Pretrial conference | 290 days |
| Trial | 300 days |

### b. Plaintiffs' Position and Proposed Deadlines:

Plaintiffs propose the schedule outlined below. Plaintiffs believe—consistent with the parties' initial joint scheduling report—that there is no need to wait for the Florida Supreme Court's decision in *BVM*, because it will not impact the substantive issues in this case. The decision will obviously have no bearing on the purely factual question of whether race predominated in the design of the Challenged Districts. As for strict scrutiny, federal courts measure states' tailoring of race against the law as it was at the time the legislature made its race-based districting decisions. Subsequent changes in the law serving as the state's asserted compelling interest do not matter.

This principle is most plain in the context of the Voting Rights Act's Section 5, which was rendered inoperable by *Shelby County v. Holder*, 570 U.S. 529 (2013). Despite *Shelby County*'s neutering the states' compelling interest in Section 5 compliance, the Supreme Court continues to assess tailoring against the Section 5 standard in place at the time the districts were drawn. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 194 (2017) (assessing tailoring based on what § 5 required "at the time"); *id.* at 197 (Alito, J., concurring in part and concurring in the judgment) ("The districting plan at issue here was adopted prior to our decision in *Shelby County v. Holder*, [] and therefore it is appropriate to apply the body of law in effect at that time."), *on remand*, 326 F. Supp. 3d 128, 143, 175–76 (E.D. Va. 2018) (assessing tailoring based on what § 5 required "[a]t the time of the 2011 redistricting"); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 279 (2015) (articulating that, where state justified race-based districting as necessary to comply with § 5, the narrow-tailoring inquiry asked whether the legislature's decisions aligned with "§ 5's language, its purpose, the Justice Department Guidelines, and the relevant precedent"), *on remand*, 231 F. Supp. 3d 1026, 1061 (M.D. Ala. 2017) (finding § 5 compliance was a compelling interest and analyzing narrow-tailoring in relation to the law in effect when the challenged districts were drawn); *Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. 253, 264–65 (2016) (rejecting argument that § 5 compliance could not be a legitimate state interest following *Shelby County*); *see also Cooper v. Harris*, 581 U.S. 285, 292 (2017).

So, any post-hoc change in what Florida's non-diminishment standard requires is irrelevant to whether the Legislature's 2022 decisions were narrowly tailored to a compelling interest. Minority voting cohesion and racial bloc voting were plainly prerequisites to Florida's non-diminishment standard. *League of Women Voters of Fla. v. Detzner* (*Apportionment VIII*), 179 So. 3d 258, 286 & n.11 (Fla. 2015) (describing "Hispanic voting cohesion and polarized racial bloc

6

voting" as "the first step in any retrogression analysis").

In any event, the question before the Florida Supreme Court in *BVM* is not whether minority cohesion or racially polarized voting are preconditions for protection under the non-diminishment standard. In fact, the *BVM* petitioners and Secretary both acknowledged that minority voting cohesion is part of the retrogression analysis. Petitioners' Reply Br. at 2, *BVM* (June 5, 2024); Sec'y's Answer Br. at 53 n.11 & 54, *BVM* (Apr. 29, 2024). The only other party—the Legislature—made no arguments to the contrary. *See generally* Legislature's Answer Br., *BVM* (May 6, 2024). And the decision below, which the Secretary and Legislature seek to affirm, held plainly that "[t]he protection afforded [] by both the VRA and the FDA . . . is of the voting power of a *politically cohesive*, geographically insular minority group." *Sec'y of State Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, 375 So. 3d 335, 354 (Fla. 1st DCA 2023) (emphasis added, quotation omitted). *BVM* will simply not affect the legal issues in this case. There is no reason to wait on the Florida Supreme Court.

Finally, if Defendants would like to stay this case pending the Florida Supreme Court's decision—as they request—they should make their arguments in a properly filed motion which the parties can fully brief.

Plaintiffs therefore propose the following schedule:

| Deadline | Date |
| --- | --- |
| Deadline to join other parties and to amend the pleadings | 2/21/25 |
| Deadline to serve interrogatories and requests for production | 5 days after Court enters scheduling order |
| Deadline for Plaintiffs to serve expert disclosures | 3/21/25 |
| Deadline for Defendants to serve expert disclosures | 5/5/25 |
| Deadline for Plaintiffs to serve rebuttal expert disclosures | 6/4/25 |
| Deadline to complete other discovery | 7/2/25 |
| Deadline to file motions for summary judgment | 8/1/25 |
| Deadline to file Rule 26(a)(3) disclosures | 9/12/25 |
| Deadline to file pretrial motions | 9/26/25 |
| Deadline to file pretrial briefs | 10/6/25 |
| Deadline to hear pretrial motions | 10/14/25 |
| Pretrial conference | 10/14/25 |
| Trial | 10/27–31/25 |

D. **Proposals for:**

    a. **The formulation and simplification of issues, including the elimination of frivolous claims or defenses:** The parties will work to simplify the issues for trial.

    b. **The number and timing of motions for summary judgment or partial summary judgment:** The parties propose that Plaintiffs be limited to one motion for summary judgment or partial summary judgment and that the Secretary and House of Representatives should be limited to one motion for summary judgment or partial summary judgment each. Plaintiffs propose an 8/1/25 deadline to file motions for summary judgment. Defendants propose a deadline that is 190 days after the Florida Supreme Court's issuance of the *BVM* decision.

E. **The necessity or desirability of amendments to the pleadings:** Further amendments to the Complaint are unlikely. Defendants have not yet filed answers to the Complaint.

F. **The possibility of obtaining admissions of fact and of documents, electronically stored information or things which will avoid unnecessary proof, stipulations regarding authenticity of documents, electronically stored information or things, and the need for advance rulings from the Court on admissibility of evidence:** The parties will work to obtain admissions of fact and of documents, ESI, and stipulations on authenticity. Advance rulings from the Court on the admissibility of evidence may streamline each party's trial presentation.

G. **Suggestions for the avoidance of unnecessary proof and of cumulative evidence:** The parties will work to avoid unnecessary proof and cumulative evidence. To that end, the parties discussed negotiating stipulations regarding redistricting maps and data and the extent of the Executive Office of the Governor's involvement in the development of the challenged districts. The parties will also discuss stipulations regarding the authenticity and admissibility of relevant documents in the legislative record.

H. **Suggestions on the advisability of referring matters to a Magistrate Judge or master:** Plaintiffs defer to the Court on whether to refer pretrial and discovery matters to a Magistrate Judge. Defendants oppose referral of matters to a Magistrate Judge or master but note that certain matters may be decided by a single member of the three-judge court. *See* 28 U.S.C. § 2284(b)(3). The parties agree that dispositive motions should not be referred.

I. **A preliminary estimate of the time required for trial:** 5 days.

J. **Requested date or dates for:**

    a. **Conferences before trial:** Plaintiffs request a scheduling conference at the Court's convenience, preferably by videoconference.

    b. **Plaintiffs' disclosure of alternative maps that Plaintiffs intend to offer either as evidence or as a proposed remedy:**

        i. **Defendants' Position:** Defendants propose a deadline that requires Plaintiffs to disclose all alternative maps that Plaintiffs intend to offer as evidence or as a proposed remedy no later than Plaintiffs' deadline to serve initial expert disclosures. Defendants contend that this deadline is necessary to afford their expert witnesses an opportunity to evaluate and opine on the alternative maps that Plaintiffs intend to present to the Court as evidence that the Legislature could and should have drawn the challenged districts differently. Unlike most evidence, alternative maps are ordinarily created for purposes of litigation. Unless Plaintiffs timely disclose their alternative maps, the Court may be denied the benefit of full expert analysis of key evidence. Plaintiffs have had nearly three years to analyze the enacted districts and to prepare their alternative maps. Given that alternative maps are easy to produce, the proposed deadline promotes fairness and a resolution of this case according to its merits, while no good reason supports the disclosure of alternative maps in the late stages of litigation, after Defendants' expert-disclosure deadline.

        ii. **Plaintiffs' Position:** Plaintiffs oppose introducing any special deadline to disclose alternative maps for either evidentiary or remedial purposes. Plaintiffs do not intend to wait until "the late stages of litigation" to disclose alternative maps. Indeed, Plaintiffs already disclosed multiple alternative maps in September in response to a request for production, and have subsequently answered detailed questions about those maps in interrogatory responses. But Plaintiffs believe there is no need for any early, special map-related deadlines. Plaintiffs will continue to disclose the evidence they will rely upon in the ordinary course of discovery. *See Alexander v. S.C. State Conf. of NAACP*, 602 U.S. 1, 37 (2024) (faulting plaintiffs for lack of "explan[ation of] why, if such

a map can be created, the [plaintiffs'] experts did not produce one *during the trial*" (emphasis added)). Moreover, it is premature to set deadlines for a potential post-trial remedial phase.

K. **Any issues about:**

   a. **Disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced**: For document productions, the parties agree to provide an index that identifies each document's producing party as well as production in color and in a text-searchable PDF format. The parties also agree to produce documents with the following metadata fields: Document Type; Author; Custodian; Last modified by; Date Created; Date Modified; To; From; Recipient (CC; BCC); Subject; File Size; and Title/File Name.

   b. **Claims of privilege or of protection as trial-preparation materials, including – if the parties agree on a procedure to assert those claims after production – whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502:** The parties have discussed Defendants' assertions of legislative privilege protecting members of the legislature and their staff, and members of the Executive Office of Governor DeSantis, from compelled testimony. The parties will work to resolve these privilege claims and limit the scope of compelled testimony without Court intervention. The parties have discussed Plaintiff Cubanos Pa'lante's assertion of First Amendment associational privilege shielding information about its members. To resolve that assertion of privilege, the parties agreed to the stipulation filed at ECF No. 86.

   c. **When the parties have agreed to use the ESI Checklist available on the Court's website, matters enumerated on the ESI Checklist:** The parties have not agreed to use the ESI Checklist.

L. **Any other information that might be helpful to the Court in setting the case for status or pretrial conference:** Plaintiffs believe it will be helpful for the Court to be aware that a ruling after trial (if it is in Plaintiffs' favor) must come with sufficient time "to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting

10

a substitute measure"[2] and for the Court to resolve any objections Plaintiffs raise to that proposed remedy.[3] Plaintiffs also believe it will be helpful to know the date by which a remedial plan is needed in time to be implemented for the 2026 elections. Plaintiffs note that, at a deposition in *Nord Hodges v. Albritton*, No. 8:24-cv-879 (M.D. Fla.), a racial-gerrymandering challenge to Florida Senate districts, the Director of the Florida Division of Elections testified on behalf of the Secretary of State that April 1, 2026 was a "safe harbor deadline" by which election administrators could implement a new map. Additionally, Plaintiffs note that in *BVM*, the Secretary of State and House both agreed to a remedial-phase schedule which would have resolved Florida's congressional map by the end of April 2024.[4] Plaintiffs also note that under Florida law, in redistricting years, the candidate qualifying period for Congress is the same, later period for legislative office.[5]

Defendants note that the deadline to establish new districts in advance of the 2026 elections depends not only on the Florida Division of Elections, but also on the sixty-seven Supervisors of Elections who administer elections at the county level. Defendants further note that, because the candidate-qualifying period for candidates for Congress begins 49 days earlier than the candidate-qualifying period for candidates for state-legislative office,

---

[2] *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) ("When a federal court declares an existing apportionment scheme unconstitutional, it is [] appropriate, whenever practicable, to afford a reasonable opportunity for the legislature to meet constitutional requirements by adopting a substitute measure rather than for the federal court to devise and order into effect its own plan.").

[3] *See, e.g.*, *Agee v. Benson*, No. 1:22-cv-272 (W.D. Mich. Jan. 11, 2024), ECF No. 156 (giving state redistricting commission 22 days to propose draft remedial plan and 50 days to propose final plan, and scheduling remedial hearing); *Singleton v. Allen*, No. 2:21-cv-1291 (N.D. Ala. June 20, 2023), ECF No. 135 (giving legislature 30 days to propose remedial plan and scheduling remedial hearing), *stay of court-ordered remedy denied sub nom. Allen v. Caster*, 144 S. Ct. 476 (2023) (mem.); *Harris v. McCrory*, 159 F. Supp. 3d 600, 627 (M.D.N.C. 2016) (giving legislature two weeks to propose remedial plan), *aff'd sub nom. Cooper v. Harris*, 581 U.S. 285 (2017); *Larios v. Cox*, 300 F. Supp. 2d 1320, 1356 (N.D. Ga.) (20 days), *aff'd*, 542 U.S. 947 (2004); *Vieth v. Pennsylvania*, 195 F. Supp. 2d 672, 679 (M.D. Pa. 2002) (21 days); *Johnson v. Mortham*, 926 F. Supp. 1460, 1494 (N.D. Fla. 1996) (35 days, but legislature passed plan in 15).

[4] Jt. Stip. to Narrow Issues for Resolution at 3–4, *BVM*, No. 2022-CA-666 (Fla. 2d Jud. Cir. Ct. Aug. 11, 2023), https://www.lwv.org/sites/default/files/2023-08/2023-08-11_Circuit-Court_joint-stipulation-narrow-issues.pdf.

[5] Fla. Stat. § 99.061(9); Fla. Dep't of State Directive 15-01 (Aug. 14, 2015), https://files.floridados.gov/media/695355/sos_directive_2015-01.pdf (concluding this provision was invoked after court invalidated congressional districts).

*see* Fla. Stat. § 99.061(1), the same "safe harbor" deadline does not apply to congressional districts. Put another way, the Director of the Division of Election's deposition testimony in another case that does not concern congressional districts must be read in context. Finally, Defendants note that Plaintiffs' proposal contemplates no time for appellate review before new districts take effect.

Lead counsel for the Florida House of Representatives, Andy Bardos, is scheduled to be in trial beginning December 1, 2025, on behalf of the Florida Agency for Health Care Administration. *See Grant v. Weida*, No. 4:24-cv-384 (N.D. Fla.) (ECF No. 19). Trial preparations in *Grant*, which challenges Florida's administration of its long-term care managed care program—a Medicaid waiver program—will require especially heavy time commitments throughout October and November 2025. Plaintiffs' proposed October 27 trial date would conflict with counsel's obligations in *Grant*.

Lead counsel for the Secretary of State has a state-court trial set for the week of September 15, 2025.

Respectfully submitted February 21, 2025,

| | |
|---|---|
| /s/ Nicholas L.V. Warren | /s/ Andy Bardos |
| Nicholas L.V. Warren (FBN 1019018) | Andy Bardos (FBN 822671) |
| Daniel B. Tilley (FBN 102882) | andy.bardos@gray-robinson.com |
| Caroline A. McNamara (FBN 1038312) | **GrayRobinson, P.A.** |
| **ACLU Foundation of Florida** | 301 South Bronough Street, Suite 600 |
| 4343 West Flagler Street, Suite 400 | Tallahassee, FL 32301 |
| Miami, FL 33134 | (850) 577-9090 |
| (786) 363-1769 | |
| nwarren@aclufl.org | Jesus M. Suarez (FBN 60086) |
| dtilley@aclufl.org | Jsuarez@continentalpllc.com |
| cmcnamara@aclufl.org | Carmen Manrara Cartaya (FBN 73887) |
| | Ccartaya@continentalpllc.com |
| Jorge L. Vasquez, Jr.* | **Continental PLLC** |
| **Vasquez Attorneys at Law, PC** | 255 Alhambra Circle, Suite 640 |
| 141 Parkway Road, Suite 14 | Coral Gables, Florida 33134 |
| Bronxville, NY 10708 | Telephone: 305-677-2707 |
| (212) 752-8408 | |
| jorge@vasquezpc.com | Christopher M. Kise (FBN 855545) |
| | Ckise@continentalpllc.com |
| Andrew J. Frackman* | **Continental PLLC** |
| **O'Melveny & Myers LLP** | 101 North Monroe Street, Suite 750 |

12

| | |
|---|---|
| 1301 Avenue of the Americas, 17th Floor<br>New York, NY 10019<br>(212) 326-2000<br>afrackman@omm.com<br><br>Brian P. Quinn*<br>Patrick J. Jones*<br>Emily Murphy*<br>Gabrielle S. Jackson*<br>Andrea Ojeda*<br>**O'Melveny & Myers LLP**<br>1625 Eye Street NW<br>Washington, DC 20006<br>(202) 383-5300<br>bquinn@omm.com<br>pjones@omm.com<br>emurphy@omm.com<br>gjackson@omm.com<br>aojeda@omm.com<br><br>* *Admitted pro hac vice*<br><br>*Counsel for Plaintiffs* | Tallahassee, Florida 32301<br>Telephone: 850-270-2211<br><br>*Counsel for Defendant Florida House of Representatives*<br><br> /s/ Mohammad O. Jazil          <br><br>Bradley R. McVay (FBN 79034)<br>brad.mcvay@dos.myflorida.com<br>Joseph S. Van de Bogart (FBN 84764)<br>joseph.vandebogart@dos.myflorida.com<br>Ashley Davis (FBN 48032)<br>ashley.davis@dos.myflorida.com<br>**Florida Department of State**<br>R.A. Gray Building<br>500 South Bronough Street<br>Tallahassee, FL 32399<br>(850) 245-6536<br><br>Mohammad O. Jazil (FBN 72556)<br>mjazil@holtzmanvogel.com<br>Michael Beato (FBN 1017715)<br>mbeato@holtzmanvogel.com<br>zbennington@holtzmanvogel.com<br>**Holtzman Vogel Baran**<br>**Torchinsky & Josefiak PLLC**<br>119 South Monroe Street, Suite 500<br>Tallahassee, FL 32301<br>(850) 270-5938<br><br>*Counsel for Defendant Florida Secretary of State* |