IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:24-21983-CIVIL BECERRA/TORRES

CUBANOS PA'LANTE, et al.,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF REPRESENTATIVES,
et al.,

    *Defendants*.

_____/

## **DEFENDANTS' MOTION TO STAY**

Defendants ask this Court for a short stay of this case pending the resolution of *Black Voters Matter Capacity Building Institute v. Byrd*, SC2023-1671, a Florida Supreme Court case that was argued on September 12, 2024. *BVM* concerns the non-diminishment standard in article III, section 20(a) and 21(a) of the Florida Constitution—just as in this case. Waiting for the Florida Supreme Court to opine on the Florida Constitution's non-diminishment standard would provide this Court with a better framework to assess the State's actions and the feasibility of any remedy (should that become necessary). *See generally Growe v. Emison*, 507 U.S. 25, 34 (1993) (explaining that states are primarily responsible for redistricting, and deferring to a state court's efforts to draw districts).

### **Background**

**A.** The Florida Constitution imposes redistricting standards on congressional and state legislative districts. They are article III, sections 20 and 21 of the Florida Constitution. Section 20 applies to congressional districts, and section 21 applies to state legislative districts. Of note are section 20(a)'s and section 21(a)'s non-dilution and non-diminishment standards. Both sections have the same non-dilution and non-diminishment standards:

> . . . districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process [the non-dilution standard] or to diminish their ability to elect representatives of their choice [the non-diminishment standard] . . .

Fla. Const. art. III, §§ 20(a), 21(a).

Between 2012 and 2015, the Florida Supreme Court provided guidance on these standards. The non-dilution standard, the court explained, adopts the analytical framework of Section 2 of the Voting Rights Act. *In re Sen. Joint Res. of Legislative Apportionment 1176*, 83 So. 3d 597, 619 (Fla. 2012). To establish a Section 2 claim, so-called *Gingles* preconditions must be met: that "(1) a minority population is 'sufficiently large and geographically compact to constitute a majority in a single-member district'; (2) the minority population is 'politically cohesive'; and (3) the majority population 'votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate.'" *Id.* at 622 (quoting *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986)).

The non-diminishment standard, in turn, adopts the analytical framework of Section 5 of the Voting Rights Act. *Id.* at 619. To establish a Section 5 claim, a functional analysis must be conducted, "requiring consideration not only of the minority population in the districts, or even the minority voting-age population in those districts, but of political data and how a minority population group has voted in the past." *Id.* at 625. A functional analysis gauges whether a minority population's ability to elect its candidate of choice diminished from one map to another. *Id.* It compares a pre-existing "benchmark" district to a new, redrawn district.

Among the issues in *BVM* is whether the *Gingles* preconditions matter for purposes of the Florida Constitution's non-diminishment standard.

**B.** *BVM* began immediately after the 2022 redistricting cycle. In that case, among other things, the plaintiffs alleged a violation of the non-diminishment standard. The claim arose from the reconfiguration of a congressional district in north Florida.

In response, the Secretary (but not the House) argued that the first *Gingles* precondition must be satisfied before the Florida Constitution's non-diminishment standard can apply to a district. The trial court disagreed with the Secretary. But the First District Court of Appeal reversed and ultimately agreed with the Secretary's arguments that the first *Gingles* precondition is relevant. 375 So. 3d 335, 338 (Fla. 1st DCA 2023) (en banc). The First District said:

> In asserting their rights under the [Florida Constitution], the plaintiffs must establish *they are part of a 'geographically compact' community (rather than several 'farflung' ones artificially brought together). From there, they must demonstrate that the naturally occurring community of which they are a part achieved some cohesive voting power under a legally enforceable district.* . . . To prove their diminishment claim under the [Florida Constitution], they will have to bring forward evidence that shows that the community's voting power decreased under the new districting enactment.

*Id.* at 355-56 (emphasis added).

2

The First District's decision was then appealed to the Florida Supreme Court. Oral argument was held on September 12, 2024. All parties in *BVM* recognize that the case turns on the non-diminishment standard's scope.[1] A decision is impending.

**C.** Two years after the 2022 redistricting cycle, Plaintiffs filed this case. Doc.1 (filed May 23, 2024). They are challenging one congressional and several State House districts under the federal Equal Protection Clause. As part of that challenge, Plaintiffs argue that this Court must assess whether the State appropriately used the non-diminishment standard when drawing the challenged districts. The Florida Constitution's non-diminishment standard also becomes relevant when considering any alternative maps, particularly if some remedy is needed. Yet the Florida Supreme Court is still considering what the non-diminishment standard requires. With the contours of the non-diminishment standard still being drawn, this Court's already difficult task of assessing the same *state*-law standard becomes even harder.

Under the circumstances, a stay is appropriate.

## Legal Standard

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In deciding whether a stay is appropriate, a court can look to several factors, like "(1) whether a stay will simplify the issues and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and the court; and (3) whether the stay will unduly prejudice the non-moving party." *Hershenhorn v. Am. Home Assur. Co.*, 2:21-cv-897, 2024 U.S. Dist. LEXIS 200701, at *1-2 (M.D. Fla. Nov. 5, 2024) (cleaned up). A stay may also be appropriate when it's "neither 'immoderate' nor indefinite," and when it promotes "the interest of judicial convenience." *Harte Hanks, Inc. v. Castaneda*, 19-cv-62134, 2021 U.S. Dist. LEXIS 48536, at *3-4 (S.D. Fla. Mar. 16, 2021) (cleaned up).

Relevant here, a stay is appropriate when a pending state supreme court decision "may be instructive in resolving the parties' dispute." *Hershenhorn*, 2:21-cv-897, 2024 U.S. Dist. LEXIS 200701, at *5; *see also Harte Hanks*, 19-cv-62134, 2021 U.S. Dist. LEXIS 48536, at *4 (same for pending U.S. Supreme Court decisions).

---

[1] The parties' briefs are available here: https://acis.flcourts.gov/portal/court/68f021c4-6a44-4735-9a76-5360b2e8af13/case/4d6c4c76-2f0b-4b0d-93f2-5e43c7606ad8.

3

**Argument**

It's appropriate to stay this case pending the Florida Supreme Court's resolution of *BVM*. Three reasons warrant a stay.

*First*, as explained above, the Florida Constitution's non-diminishment standard is critical to Plaintiffs' framing of their claims. The Florida Supreme Court is poised to announce what that standard requires. It should (soon) provide that definitive guidance. Of course, the Florida Supreme Court is the ultimate arbiter of matters of state law.

*Second*, and relatedly, federalism principles favor a stay. Redistricting "is primarily the duty and responsibility of the State through its" political branches and state judiciary. *Growe*, 507 U.S. at 34 (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). "Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state" redistricting "nor permit federal litigation to be used to impede it." *Id.* Here, the state judiciary is resolving an issue of state redistricting law. Plus, when the Florida Supreme Court renders its decision, the political branches of the State may react to it. Given that uncertainty, and to provide the state judiciary and political branches some breathing room, a stay here is warranted.

*Third*, the stay factors are met. The *BVM* decision would simplify and clarify the non-diminishment standard—the central issue framed by Plaintiffs' operative complaint. By not having to redo expert discovery or dispositive motion briefing, a stay would reduce the burden of litigation on the parties and this Court. Plaintiffs, moreover, wouldn't be unduly prejudiced by a stay. They can't claim any harm due to a stay, since they waited two years after the redistricting cycle to file this lawsuit. During that time, the congressional and state legislative maps have been in place for two election cycles (2022 and 2024), and the congressional map withstood two lawsuits (*BVM* and *Common Cause Florida v. Byrd*, 726 F. Supp. 3d 1322 (N.D. Fla. 2024) (three-judge court)). As a practical matter, a stay is also unlikely to be long. *BVM* was briefed and argued more than five months ago. If past high-profile Florida Supreme Court cases are any indication, a decision should be reached soon. *E.g.*, *DeSantis v. Dream Defenders*, SC2023-0053 (decision about eight months after oral argument); *Worrel v. DeSantis*, SC2023-1246 (decision about six months after oral argument); *Planned Parenthood of Sw. & Cent. Fla. v. Florida*, SC2022-1050 (decision about seven months after oral argument); *W. Flagler Assocs., Ltd. v. DeSantis*, SC2023-1333 (decision about three months after reply brief).

Any stay issued would not "subject the parties to an immoderate delay." *Indian Harbor Ins. Co. v. Pelican's Roost on Bay, LLC*, 3:06-cv-00295, 2007 WL 1491294, at *2 n.1 (N.D. Fla. May 21, 2007). In the time since the filing of this case, and consideration of the motions to dismiss, "appellate proceedings" "in the state court cases" are now "nearing conclusion." *Id.* A stay issued at this time would allow all to benefit from the Florida Supreme Court's perspective.

Meanwhile, without a stay, the parties would be compelled to begin expert disclosures almost immediately, without certainty as to the legal standards that the experts must address, and at the risk of having to redo them—or having wasted their efforts. "Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency." *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, 10-cv-61987, 2011 WL 1544860, at *5 (S.D. Fla. Apr. 15, 2011).

Thus, the "most prudent course of action" is "to await" the Florida Supreme Court's "forthcoming decision" in *BVM. Harte Hanks*, 19-cv-62134, 2021 U.S. Dist. LEXIS 48536, at *4.

*   *   *

Under Local Rule 7.1(a)(2), the undersigned certify that on February 19, 2025, the parties conferred over Zoom and discussed the scheduling order. During the conferral, and in a good-faith effort, the Secretary and the House informed Plaintiffs of their position on a stay. Plaintiffs oppose a stay.

*   *   *

Dated: February 21, 2025

/s/ Andy Bardos
Andy Bardos (FBN 822671)
andy.bardos@gray-robinson.com
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301-1724
Telephone: 850-577-9090

Jesus M. Suarez (FBN 60086)
jsuarez@continentalpllc.com
Carmen Manrara Cartaya (FBN 73887)
ccartaya@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
Telephone: 305-677-2707

Christopher M. Kise (FBN 855545)
ckise@continentalpllc.com
CONTINENTAL PLLC
101 North Monroe Street, Suite 750
Tallahassee, Florida 32301
Telephone: 850-270-2211

*Counsel for Florida House of Representatives*

Respectfully submitted by,

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

*Counsel for the Secretary*

## LOCAL RULE 7.1(c) CERTIFICATION

The undersigned certifies that this motion does not exceed twenty pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil.