**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:24-21983-CIVIL BECERRA/TORRES**

CUBANOS PA'LANTE, et al.,

*Plaintiffs*,

v.

FLORIDA HOUSE OF REPRESENTATIVES,
et al.,

*Defendants*.
_______________________________________/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY**

A stay is appropriate despite Plaintiffs' response. Plaintiffs concede that any stay would be short because *Black Voters Matter Capacity Building Institute v. Byrd*, No. SC2023-1671 (Fla.) ("*BVM*"), was briefed and argued months ago. Yet they take an unduly constrained view of *BVM* in arguing that a decision in that case will prove unhelpful to this Court and irrelevant to expert discovery in this case. On the contrary, the *BVM* decision could be dispositive of Plaintiffs' claims. Plaintiffs also claim prejudice by citing the expense incurred in routine (and limited) written fact discovery between themselves and the House—ignoring their own failure to serve initial expert reports by the deadline they said they would. And they generally ignore the continued public interest in a stay.

***First*, the brevity of any stay.** Plaintiffs acknowledge that "briefing in *BVM* began on February 28, 2024 and concluded on June 5, 2024," and that the Florida Supreme Court "heard arguments on September 12, 2024." Doc.96 at 3. Plaintiffs also don't disagree with Defendants' statement that an opinion could come any day given the Florida Supreme Court's actions in other high-profile cases. Doc.93 at 4. Taken together, this is a recognition that any stay will likely be for a short period of time.

***Second*, the helpfulness of a decision in *BVM*.** As explained in Defendants' motion, the *BVM* decision will likely address the contours of the Florida Constitution's non-diminishment standard—and, by extension, Plaintiffs' non-diminishment arguments. The comprehensive decision on non-diminishment would thus be more than "instructive in resolving the parties'

dispute" in this case. *Hershenhorn v. Am. Home Assur. Co.*, No. 2:21-cv-897, 2024 U.S. Dist. LEXIS 200701, at *5 (M.D. Fla. Nov. 5, 2024).

In arguing otherwise, Plaintiffs take too cramped a reading of *BVM*. In their telling, *BVM* is only about whether the first *Gingles* precondition (minority group compactness and numerosity) applies in a non-diminishment claim under the Florida Constitution. Doc.96 at 2-3. Not so.

One of the broader questions in *BVM* is whether a plaintiff seeking relief under the Florida Constitution's non-diminishment standard must first establish a valid and legally enforceable benchmark district. Florida's First District Court of Appeal answered that question in the affirmative. The First District held that a "legally enforceable" benchmark district is a prerequisite to a non-diminishment claim. *Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, 375 So. 3d 335, 354-56 (Fla. 1st DCA 2023) (en banc). It added that a valid, legally enforceable benchmark is one that is "geographically compact," has a minority group that has "collective voting power" or can achieve "some cohesive voting power," and has a "naturally occurring community" with "common interests and a shared history and socioeconomic experience." *Id.* Though the First District's test resembles the first two *Gingles* preconditions, Doc.96 at 1, it's also different. The naturally-occurring-community prong is an example of the difference. The First District's test also doesn't adopt the third *Gingles* precondition—white bloc voting—and implies that any cohesion precondition is not particularly demanding. *See* 375 So. 3d at 355 (requiring only "some cohesive voting power").

In reviewing the First District's decision, the Florida Supreme Court will likely address the Florida-specific test for non-diminishment. It's that Florida-specific test that, in Plaintiffs' telling, will be used to judge whether the State had a compelling reason for the alleged race-based decisions that it made. *See*, *e.g.*, Doc.58 ¶ 191.

Indeed, the implications of *BVM* might be even more far reaching. The Florida Supreme Court could use *BVM* to declare the Fair Districts Amendments unconstitutional, declare the legislature's actions unconstitutional, or do something in between. Take, for example, two portions of Chief Justice Muniz's colloquy with counsel at oral argument.[1] In one, Chief Justice Muniz questioned whether Florida's non-diminishment standard incorporates *any* of the federal Voting

[1] *See* Gavel to Gavel Video Portal, https://wfsu.org/gavel2gavel.

Rights Act framework, let alone the *Gingles* preconditions developed under section 2 of the Voting Rights Act:

> A couple of Justices have expressed some concern about baking all of the Voting Rights Act stuff into the Fair Districts Amendment. It seems like you are . . . not only baking Voting Rights Act stuff into it, but you're baking section 2 Voting Rights Act law into section 5, where it seems like this is complicated enough without making the benchmark thing super complicated. I mean, this is very mechanical: you look at the existing plan, you look at how it performs, and then you see what you have to do from there. It just doesn't seem like that would be a sensible way for us to resolve this.

Later, Chief Justice Muniz questioned whether the non-diminishment standard is even facially compatible with the federal Equal Protection Clause, and, if not, whether the non-diminishment standard is severable from the remainder of the Fair Districts Amendments:

> I am not saying—this isn't like . . . telegraphing anything . . . . But it seems like in this litigation, . . . the government has been . . . trying to walk a fine line between facial and as applied. Some of the arguments seem like they are inevitably heading down the path to we're going to have to . . . decide, can [the Fair Districts Amendments] work, when it . . . on its face requires non-diminishment . . . and prioritizing one set of racial groups over another . . . . If it ever were to come to the point that we thought that . . . non-diminishment essentially does not work here, would the whole [Fair Districts Amendments] have to go? Because it seems like this was part of a package deal.

Under the circumstances, since Plaintiffs have waited years already to bring this suit, it makes sense to wait a little longer for the Florida Supreme Court to decide *BVM*. Knowing state law is better than guessing. A brief stay might avoid the expenditure of substantial public funds on attorneys and expert witnesses, and will avoid the need to redo expert disclosures or summary-judgment briefing once *BVM* is decided.

    ***Third*, the (supposed) prejudice to Plaintiffs.** To level set, Plaintiffs waited years to file this case. Doc.96 at 7. They try to justify the delay by explaining that Plaintiff Luis Sorto "moved into a Challenged District just a few months before filing this case," and that Plaintiff FIU ACLU Club "did not even exist until a year and a half after the Challenged Districts were enacted." Doc.96 at 7. This isn't a good justification, though. Plaintiffs seem to forget that Mr. Sorto is one of four individual plaintiffs, and that the FIU ACLU Club is one of three organizational plaintiffs. Doc.58. Those other plaintiffs seek the same relief as Mr. Sorto and the FIU ACLU Club, and challenge the same districts. Doc.58 ¶¶ 23, 25. Mr. Sorto's and the FIU ACLU Club's challenges and legal arguments aren't unique. In fact, Mr. Sorto and the FIU ACLU Club might have already obtained

their sought-after relief had their co-plaintiffs filed this case at an earlier time. Instead, two election cycles have passed, and it's only now that Plaintiffs have found a new sense of haste. It is plain, moreover, that the ACLU of Florida—not Mr. Sorto or the FIU ACLU Club—is the driving force behind this litigation, and that this litigation could easily have been brought nearly three years ago.

Plaintiffs also could have moved this case along once they filed it. They chose not to do that, either. For example, Plaintiffs set the deadline for their initial expert disclosures as August 30, 2024. Doc.34 at 3. Yet they didn't serve their expert disclosures then, and still haven't served their expert disclosures.

Defendants, for their part, didn't ask for a stay sooner for two obvious reasons. Motions to dismiss were previously pending. And the *BVM* proceeding in the Florida Supreme Court was at a much earlier stage eight months ago, when the parties submitted their Joint Scheduling Report in this case. Doc.34.

Case law doesn't support Plaintiffs' claim of prejudice, either. Their cited cases were all post-trial merits orders that considered state defendants' laches affirmative defenses. Doc.96 at 7 (citing *Thomas v. Bryant*, 366 F. Supp. 3d 786, 803-04 (S.D. Miss. 2019); *Jeffers v. Clinton*, 730 F. Supp. 196, 202 (E.D. Ark. 1989) (three-judge court)). That's different from seeking a short stay when the pleadings have just closed, no depositions have been taken, and no discovery has been taken except written fact discovery.

The facts in *Thomas* and *Jeffers* are also inapposite. In *Thomas*, for example, the district court excused one plaintiff's delayed Voting Rights Act challenge, because the plaintiff ran for office in the challenged district, "in an attempt to prove that an African-American could win District 22 despite its boundaries." 366 F. Supp. 3d at 804. The plaintiff lost the race, but under the circumstances, the court considered his delayed legal challenge "excusable, if not laudable," since he "sought to remedy the problem through the political process." *Id.* Plaintiffs here, however, don't contend that similar circumstances exist. And, in *Jeffers*, the district court held that the delay was justified, in part, because *Thornburg v. Gingles* came out two years before the plaintiffs raised their redistricting arguments. 730 F. Supp. at 202. Yet Plaintiffs here don't argue that a recent landmark redistricting case justified their delay.

***Finally,* a stay remains in the public interest.** Once the Florida Supreme Court issues its decision in *BVM*, the State's political branches must react to it. This is as it should be because redistricting "is primarily the duty and responsibility of the State through its" political branches.

*Growe v. Emison*, 507 U.S. 25, 34 (1993) (cleaned up). With a decision imminent, it makes sense to let the opinion issue and let the political branches assess their positions. The federalism concerns in *Growe* point in that direction.

Even so, Plaintiffs do nothing more than raise red herrings in their response. They ask this Court to "follow the example" of the district courts in *Common Cause Florida v. Byrd* and *Hodges v. Albritton*. Doc.96 at 8. But neither case backs Plaintiffs' contentions.

In *Common Cause*, the Secretary moved to stay the case, as an alternative to his motion to dismiss. No. 4:22-cv-109, Doc.104 (N.D. Fla. June 8, 2022) (three-judge court). The arguments for the stay were that (1) *BVM* was advancing to the discovery phase of litigation and (2) the U.S. Supreme Court would be deciding *Allen v. Milligan*, 599 U.S. 1 (2023), an important redistricting case. No. 4:22-cv-109, Doc.104 at 22-27. The district court disagreed with these arguments, reasoning in part that (1) it did "not know exactly how the [*BVM*] action w[ould] proceed," and (2) *Allen* dealt with Voting Rights Act issues, while *Common Cause* dealt with a constitutional issue. No. 4:22-cv-109, Doc.115 at 14-16. That's different from this case. Here, *BVM* is far beyond the pleading stage. It's now before the Florida Supreme Court, having been argued six months ago. And unlike *Allen*, *BVM* concerns a critical part of this case—what the non-diminishment standard under the Florida Constitution requires.

*Hodges* similarly doesn't help Plaintiffs. That case is further along with discovery completed and fully-briefed motions for summary judgment pending on issues that shouldn't be affected by the Florida Supreme Court's decision in *BVM.* More specifically, the *Hodges* court will consider on summary judgment (1) whether plaintiffs have standing, No. 8:24-cv-879, Doc.74 at 11 (M.D. Fla. Jan. 2, 2025) (Senate Motion); (2) whether plaintiffs raise state-law claims masquerading as federal claims, *id.* at 14; (3) whether race-predominated in the drawing of certain Florida Senate districts, *id.* at 17; and (4) whether, setting aside racial predominance and compelling interest, plaintiffs can prevail on the narrow tailoring prong for an equal protection claim, No. 8:24-cv-879, Doc.75 at 15 (M.D. Fla. Jan. 2, 2025) (Secretary's Motion).

And, contrary to Plaintiffs' contention, no case precludes a stay in these circumstances. Doc.96 at 9.[2] In fact, Defendants cite in their motion two cases that dealt with stays pending Florida

[2] Plaintiffs rely on *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir. 1982), for the proposition that stays of unknown duration aren't allowed. That's wrong. *CTI* was a breach of contract case between two U.S. businesses. *Id*. at 1286-87. The defendant business

Supreme Court and U.S. Supreme Court decisions. Doc.93 at 3. Plaintiffs don't even mention or acknowledge those cases in their response.

* * *

All in all, a brief stay makes good, practical sense. With a *BVM* decision imminent, there's no reason to "charg[e] ahead" in this case, "only to later learn that Plaintiffs" and the Secretary and House "must return to square one (or, perhaps, that [Plaintiffs'] action is no longer viable)." *Benisek v. Lamon*, 266 F. Supp. 3d 799, 816 (D. Md. 2017) (three-judge court) (staying redistricting case pending the U.S. Supreme Court's decision in *Gill v. Whitford*).

---

"moved to implead Iran and IEL as third-party defendants." *Id*. at 1286. The United States then notified the district court that "litigation involving American nationals and Iranian entities[,] as a consequence of the Iran-United States Agreement that obtained the release of the American hostages in January 1981," would be sent to the Iran-United States Claims Tribunal. *Id*. The district court didn't decide the impleader motion. It just stayed the whole case "pending determination by the Iran-United States Claims Tribunal of its jurisdiction to hear these claims." *Id*.

The Eleventh Circuit disagreed to an extent. It upheld the district court's action "as it pertains to the stay of the third party action," but ruled that the main case between the two U.S. businesses should go on. *Id*. at 1288. It reasoned that the plaintiff business would have to wait "an indefinite period of time" for the Iran-United States Claims Tribunal to resolve the pending claim. *Id*.

But here, unlike *CTI*, the state supreme court isn't the Iran-United States Claims Tribunal. While the U.S. businesses in *CTI* didn't know what the tribunal would do, whether it would accept jurisdiction, or how the claims would proceed, we know that the Florida Supreme Court will reach a decision in *BVM* very soon. That's not like the "indefinite period of time" in *CTI*.

Dated: March 12, 2025

Respectfully submitted by,

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph S. Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

*Counsel for the Secretary*

/s/ Andy Bardos
Andy Bardos (FBN 822671)
andy.bardos@gray-robinson.com
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301-1724
Telephone: 850-577-9090

/s/ Carmen M. Cartaya
Jesus M. Suarez (FBN 60086)
jsuarez@continentalpllc.com
Carmen Manrara Cartaya (FBN 73887)
ccartaya@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
Telephone: 305-677-2707

Christopher M. Kise (FBN 855545)
ckise@continentalpllc.com
CONTINENTAL PLLC
101 North Monroe Street, Suite 750
Tallahassee, Florida 32301
Telephone: 850-270-2211

*Counsel for Florida House of Representatives*

**LOCAL RULE 7.1(c) CERTIFICATION**

The undersigned certifies that this reply to stay does not exceed ten pages inclusive of all parts.

/s/ Mohammad O. Jazil
Mohammad O. Jazil