**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

     *Plaintiffs*,

v.

FLORIDA HOUSE OF
REPRESENTATIVES, et al.,

     *Defendants*.

_____/

<u>**PLAINTIFFS' STATEMENT OF MATERIAL FACTS**</u>

     Plaintiffs respond to the House's Statement of Material Facts (ECF No. 123) below. Attached exhibits, cited herein and in the Response to Motion for Summary Judgment, are as follows:

| Ex. | Description | Citation Abbrev. |
|---|---|---|
| 1 | Sep. 22, 2021 House Redistricting Committee Transcript | 9/22 Tr. |
| 2 | Nov. 16, 2021 Senate Reapportionment Committee Transcript | 11/16 S. Tr. |
| 3 | Dec. 2, 2021 House Congressional Redistricting Subcommittee Transcript | 12/2 Tr. |
| 4 | Dec. 3, 2021 House Legislative Redistricting Subcommittee Transcript | 12/3 Tr. |
| 5 | Jan. 13, 2022 Senate Reapportionment Committee Transcript | 1/13 S. Tr. |
| 6 | Jan. 21, 2022 House Legislative Redistricting Subcommittee Transcript | 1/21 Tr. |
| 7 | Jan. 26, 2022 House Redistricting Committee Transcript | 1/26 Tr. |
| 8 | Feb. 1, 2022 House Session Transcript | 2/1 Tr. |
| 9 | Feb. 2, 2022 House Session Transcript | 2/2 Tr. |
| 10 | Feb. 18, 2022 House Congressional Redistricting Subcommittee Transcript | 2/18 Tr. |
| 11 | Apr. 19, 2022 House Congressional Redistricting Subcommittee Transcript | 4/19 H. Tr. |
| 12 | Apr. 19, 2022 Senate Reapportionment Committee Transcript | 4/19 S. Comm. Tr. |
| 13 | Apr. 19. 2022 Senate Session Transcript | 4/19 S. Sess. Tr. |
| 14 | Apr. 20, 2022 House Session Transcript | 4/20 H. Tr. |
| 15 | Apr. 21, 2022 House Session Transcript | 4/21 Tr. |
| 16 | Expert Report of Dr. Cory McCartan | McCartan Rep. |
| 17 | Rebuttal Expert Report of Dr. Cory McCartan | McCartan Rebuttal Rep. |
| 18 | Expert Report of Dr. Carolyn Abott | Abott Rep. |
| 19 | Rebuttal Expert Report of Dr. Carolyn Abott | Abott Rebuttal Rep. |
| 20 | Expert Report of Dr. Hannah Walker | Walker Rep. |

| 21 | Stipulation re Executive Office of the Governor's Involvement in Developing the 2022 Congressional Plan | Stip. re EOG |
|----|----|----|
| 22 | Pet. App'x, *In re SJR of Legis. Apportionment 100* (*In re SJR 100*), No. SC2022-131 (Fla. Feb. 9, 2022), pp. 430, 477 | *In re SJR 100* Pet. App'x Excerpt |
| 23 | Maps of Congressional Plans 8002, 8004, 8040, and 8060 | |

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed as to second sentence. Disputed as to first sentence. Poreda did not follow redistricting standards set forth in article III, sections 20 and 21 of the Florida Constitution. ECF No. 123-3 ("Poreda Dep.") 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5, 285:21–24; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/13 Tr. 12:23–13:9; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

5.      Undisputed.

6.      Disputed. HCS's functional analysis did not comport with the Florida Supreme Court's direction in all respects, including by ignoring and inadequately analyzing minority cohesion. Poreda Dep. 241:22–248:4, 273:19–275:2, 275:9–23; Walker Rep. ¶ 77.

7.      Disputed. HCS subordinated Tier Two standards to Tier One. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5, 285:21–24; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/13 Tr. 12:23–13:9; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

8.      Disputed. HCS subordinated Tier Two standards to Tier One. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6,

175:10–176:8, 177:9–10, 180:24–181:9, 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5, 285:21–24; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/13 Tr. 12:23–13:9; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

9.      Undisputed.

10.     Undisputed that HCS *believed* the NDC applied to the Challenged HDs. Disputed that the NDC actually applied to those districts. Walker Rep. ¶ 77.

11.     Disputed. HCS not only considered race while drawing the Challenged HDs but focused on racial considerations. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

12.     Disputed. HCS did not set race aside when drawing the Challenged HDs. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

13.     Undisputed.

14.     Disputed. HCS drew the districts with attention to race. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

15.     Disputed. HCS considered the NDC before and during its drawing of the districts. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

16.     Disputed. HCS drew the Challenged HDs with race in mind. Poreda Dep. 128:18–

129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    Disputed. The Challenged HDs were drawn to achieve a majority Hispanic voting-age population. 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 68:22–23.

21.    Disputed. Poreda recalled that the functional analysis performed on the other Challenged HDs may have required changes. Poreda Dep. 268:18–269:6, 269:21–270:3.

22.    Disputed. Poreda recalled maybe making other race-based adjustments to Challenged HDs besides District 115. Poreda Dep. 268:18–269:6, 269:21–270:3.

23.    Undisputed.

24.    Undisputed.

25.    Undisputed.

26.    Disputed that HCS's decision to maintain the boundary between Broward and Miami-Dade Counties was one of the key drivers of the configuration of districts in MDC. McCartan ¶¶ 12–14, 30–49; 2/1 Tr. 46:18–53:13.

27.    Undisputed.

28.    Undisputed.

29.    Undisputed.

30.    Undisputed.

31.    Undisputed.

32.    Undisputed.

33.    Disputed that HCS's sole or predominant objective with District 113 was to anchor the district in the City of Miami. ECF No. 58 (SAC) ¶ 96;[1] Poreda Dep. 169:4–24, 268:18–269:6, 269:21–270:3.

34.    Undisputed.

---

[1]    For brevity, citations to the Second Amended Complaint (SAC) encompass the corresponding paragraphs in the House's Answer, ECF No. 94.

35.     Undisputed.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Undisputed.

42.     Undisputed as to the first and second sentences. Disputed that enclosing Coral Gables required District 114 to assume a north-south orientation. McCartan Rep. ¶¶ 12–22, 30–49.

43.     Undisputed.

44.     Undisputed.

45.     Undisputed.

46.     Disputed. The need to achieve the ideal population of a State House district was not the only other consideration that shaped District 114's configuration. SAC ¶ 91; 2/1 Tr. 46:18–53:13; Abott Rep. ¶¶ 36–37, 54; Poreda Dep. 268:18–269:6, 269:21–270:3; McCartan Rep. ¶¶ 12–22, 30–49.

47.     Undisputed.

48.     Undisputed.

49.     Undisputed.

50.     Undisputed.

51.     Undisputed.

52.     Undisputed.

53.     Undisputed.

54.     Undisputed.

55.     Disputed. District 114 could have been made more compact without overpopulating neighboring districts, making districts less compact or adherent to political and geographical boundaries, or splitting Coral Gables. SAC ¶ 91; McCartan Rep. ¶¶ 12–22, 30–49.

56.     Disputed. HCS had racial considerations in mind in drawing District 112. Poreda Dep. 56:12–14; McCartan Rep. ¶¶ 17–18; Abott Rep. ¶¶ 36–37, 54.

57.     Disputed. The municipalities of Cutler Bay, Palmetto Bay, and Pinecrest were not the primary factors in determining District 115's shape. SAC ¶ 90; Poreda Dep. 168:2–169:3,

268:18–269:6, 269:21–270:3; McCartan Rep. ¶¶ 12–22, 30–49; 2/1 Tr. 46:18–53:13.

58.    Undisputed.

59.    Undisputed.

60.    Undisputed.

61.    Undisputed.

62.    Disputed. HCS does not extend "slightly" to the north, and the effects on District 115's neighbors, District 114 and 116, are not "incidental." SAC ¶¶ 90–92; Poreda Dep. 164:6–165:3, 166:25–169:3, 180:24–181:9, 268:18–269:6, 269:21–270:3; ECF No. 123-1 at 3–4 (maps); 2/1 Tr. 46:18–53:13.

63.    Disputed. Racial considerations drove the adjustments to District 115. Poreda Dep. 164:6–165:3, 166:25–169:3, 180:24–181:9, 268:18–269:6, 269:21–270:3.

64.    Undisputed.

65.    Undisputed.

66.    Disputed. Racial considerations predominated in the drawing of House District 115. Poreda Dep. 164:6–165:3, 166:25–169:3, 180:24–181:9, 268:18–269:6, 269:21–270:3; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

67.    Disputed. District 116 is not an "especially boxy" or "compact district." District 116 is not "essentially a rectangle bounded by well-known political and geographical boundaries" SAC ¶ 92; ECF No. 123-1 at 3–4 (maps); 2/1 Tr. 46:18–53:13; McCartan Rep. ¶¶ 38–40.

68.    Undisputed.

69.    Disputed. District 116 extended to the north for racial reasons, at least in part. 2/1 Tr. 46:18–53:13.

70.    Undisputed.

71.    Undisputed.

72.    Undisputed as to the first sentence. Disputed as to the second sentence. Districts 118 and 119 do not have regular, compact shapes. SAC ¶¶ 88–89; ECF No. 123-1 at 3–4 (maps).

73.    Disputed. Districts 118 and 119 do not only follow major roadways. ECF No. 123-1 at 3–4 (maps); McCartan Rep. ¶¶ 38–40.

74.    Disputed. The boundary between Districts 118 and 119 does not only track recognizable features. ECF No. 123-1 at 3–4 (maps); McCartan Rep. ¶¶ 38–40.

75.     Undisputed.

76.     Undisputed.

77.     Disputed that Districts 118 and 119 are compact, have regular, understandable shapes, or that they are compact simply because they're rectangles. Disputed that they do not have bizarre shapes. SAC ¶¶ 88–89; ECF No. 123-1 at 3–4 (maps); Poreda Dep. 128:18–129:22, 131:13–132:6, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10.

78.     Disputed that all the listed districts are vertically oriented, and that their orientations have nothing to do with race. ECF No. 123-1 at 3–4 (maps); 2/1 Tr. 18:23–20:18, 21:8–22:12.

79.     Undisputed.

80.     Undisputed.

81.     Undisputed.

82.     Undisputed.

83.     Undisputed.

84.     Undisputed.

85.     Undisputed that Poreda considered the vertical configurations of Districts 118 and 119 to be at least comparable in compactness to the alternative configurations. Disputed that they are actually comparable, and that a correct functional analysis would have concluded that the vertical configuration better assured the ability of Hispanic voters to elect candidates of their choice. ECF No. 123-1 at 3–4 (maps); Walker Rep. ¶ 77.

86.     Disputed that the vertical configuration was visually appropriate and balanced all redistricting criteria. ECF No. 123-1 at 3–4 (maps); 2/1 Tr. 46:18–53:13; Walker Rep. ¶ 77.

87.     Disputed. Race predominated in drawing these districts. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–23.

88.     Disputed that these districts that perform for Black voters drive the overall configuration of MDC's districts much more than the majority-Hispanic districts. Poreda Dep. 128:18–129:22, 131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13,

68:22–23; McCartan Rep. ¶¶ 13–14, 30–49.

89.     Undisputed as to Poreda's beliefs. Disputed that the HCS balanced all legal require-
ments and that no single requirement predominated over others. Poreda Dep. 128:18–129:22,
131:13–132:6, 136:2–139:16, 164:6–165:3, 166:25–169:24, 170:13–17, 172:17–173:6, 175:10–
176:8, 177:9–10, 180:24–181:9, 285:21–24; 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14,
52:18–53:6; 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 8:12–14, 22:8–12, 46:18–53:13, 68:22–
23.

90.     Disputed that a combination of factors drove HCS's decision to connect portions of
Miami-Dade and Collier Counties for Congressional District 26. Poreda Dep. 204:18–21, 209:18–
210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–
7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–
56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr.
80:18–81:12; 4/21 Tr. 53:11–18.

91.     Undisputed.

92.     Undisputed as to the first sentence. Disputed that, in drawing congressional dis-
tricts, HCS's configuration of Central Florida heavily influenced its configuration of South Florida.
Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7,
235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15,
43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15;
4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18; .

93.     Undisputed.

94.     Undisputed.

95.     Undisputed.

96.     Undisputed.

97.     Undisputed.

98.     Undisputed.

99.     Undisputed.

100.    Undisputed.

101.    Disputed that it was impossible to configure MDC without a district that crossed
into Collier County and that population considerations in MDC and Monroe Counties drove CD
26's configuration. McCartan Rep. ¶¶ 12–14, 23–29; Poreda Dep. 204:18–21, 209:18–210:12,

213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

102. Disputed. Tier two priorities were not the primary reason CD 26 extends into Collier County. Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18 .

103. Disputed. The Legislature could have drawn a district that did not extend into Collier County. McCartan Rep. ¶¶ 12–14, 23–29.

104. Undisputed.

105. Disputed. The Legislature could have drawn the districts without forcing District 21 to the west or having it cross the state to greater degree than CD 26. McCartan Rep. ¶¶ 12–14, 23–29.

106. Disputed. District 25 could have been configured in a more compact way. McCartan Rep. ¶¶ 12–14, 23–29.

107. Undisputed as to the first sentence. Disputed that HCS concluded that the tier-two compliance of South Florida districts was worse when CD 26 did not cross into Collier County for the reasons described above, or that that conclusion drove the Legislature's decisions. Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

108. Undisputed.

109. Disputed. The functional analysis was critical to HCS's decision to extend a district to Collier County. Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

110. Undisputed that CD 26 utilizes political and geographical boundaries along 91% of

its perimeter. Disputed that HCS adhered to the race-neutral Tier Two principles in drawing CD 26. Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

111.    Undisputed.

112.    Undisputed.

113.    Undisputed.

114.    Undisputed that CD 26 follows the listed roads on its western boundary, among others. Disputed that CD 26 only follows these or major boundaries. ECF No. 123-1 at 17–20 (maps); McCartan Rep. ¶ 41.

115.    Undisputed that CD 26 follows the boundaries listed along its eastern boundary, among others Disputed that CD 26 exclusively follows these or major boundaries. ECF No. 123-1 at 17–20 (maps); McCartan Rep. ¶ 41.

116.    Undisputed.

117.    Disputed. Lawmakers had an HVAP target in drawing CD 26. Poreda Dep. 204:18–21, 209:18–210:12, 213:6–22, 215:14–217:22, 229:22–230:3, 231:3–7, 235:11–236:5; 11/16 Tr. 29:4–7, 34:4–7, 36:2–5; 1/13 Tr. 12:23–13:9; 2/18 Tr. 38:10–39:15, 43:11–44:12, 45:17–46:3, 47:4–48:7, 55:17–56:7, 57:7–16; 4/19 S. Sess. Tr. 66:16–19, 67:13–15; 4/19 H. Tr. 73:2–74:4, 75:8–17; 4/20 Tr. 80:18–81:12; 4/21 Tr. 53:11–18.

118.    Disputed. HCS rejected draft versions of CD 26 to ensure CD 26's compliance with the NDC. Poreda Dep. 229:22–230:3, 231:3–7.

119.    Undisputed.

120.    Undisputed.

121.    Undisputed.

122.    Undisputed.

123.    Undisputed.

124.    Undisputed.

125.    Undisputed.

126.    Undisputed.

127.    Undisputed.

## ADDITIONAL FACTS

### Background

128.    Florida House Redistricting Committee Chair Tom Leek, Congressional Redistricting Subcommittee Chair Tyler Sirois, and Legislative Subcommittee Chair Cord Byrd oversaw the House's redistricting process, with assistance by their committee staff, including Staff Director Leda Kelly, Chief Map Drawer Jason Poreda, and Analysts Kyle Langan and Sam Wagner. Poreda Dep. 28:19–6, 31:13–18; 9/22 Tr. 4:7–18.

129.    The Senate had no role in developing the Enacted House Plan. Poreda Dep. 101:22–24.

130.    For the Enacted Congressional Plan, District 26 was largely the House's work product, with some adjustments to District 26's border in Collier County made by Deputy Chief of Staff Alex Kelly with the Executive Office of the Governor (EOG). Stip. re EOG ¶¶ 5–7; 4/19 H. Tr. 20:4–7, 20:23–21:4; Poreda Dep. 106:8–14, 107:3–6, 111:18–25.

131.    The draft congressional maps the Senate Congressional Reapportionment Subcommittee discussed on November 16, 2021 (Plans 8002 and 8004) had identical configurations for CD 25 (later renumbered 26). ECF No. 58 (SAC) ¶ 105.

132.    CD 25 in Plans 8002 and 8004 were similar to later Senate drafts, and to CD 26 in the enacted plan. SAC ¶¶ 109, 116–117; Ex. 23 (Maps of Congressional Plans 8002, 8004, 8040, 8060); ECF No. 123-1 at 18–19 (maps of Enacted CD 26).

### Statements from the Legislative Record

133.    On multiple occasions, members of the Florida Legislature stated a desire to preserve the Challenged Districts as "Tier One-protected majority-minority Hispanic districts," 12/3 Tr. 37:20; 1/26 Tr. 30:16–20, 2/1 Tr. 8:3–14, 22:9–12; 2/18 Tr. 23:4–5.

134.    On November 16, 2021 and January 13, 2022, Senate Reapportionment Committee Staff Director Jay Ferrin explained how racial Tier One considerations influenced the boundary of CD 26 (then numbered 25 in Senate drafts). 11/16 Tr. 29:4–7, 34:4–7. 36:2–5; 1/13 Tr. 12:23–13:1, 8–9.

135.    On December 2 and December 3, 2021, Staff Director Leda Kelly explained the Tier One considerations took priority in drawing the House maps, and that other considerations were secondary. 12/2 Tr. 25:15–17, 29:6–11; 12/3 Tr. 44:11–14, 52:18–53:6.

136.    On January 1, January 26, and February 1, 2022, Defendant then-Legislative

Subcommittee Chair Cord Byrd introduced the Challenged House Districts as "performing His-panic districts protected by Tier One of the Florida Constitution" that were drawn "to maintain existing majority-minority districts." 1/21 Tr. 23:17–22; 1/26 Tr. 30:15–20; 2/1 Tr. 22:8–10.

137.    On January 21 and January 26, 2022, Chair Byrd noted the "Hispanic voting-age population" in the districts and their similarity to other districts. 1/21 Tr. 23:20–21; 1/26 Tr. 30:18–19.

138.    On February 1, 2022, Redistricting Committee Chair Tom Leek said, "[I]f your primary concern, as it should be, is Tier One compliance . . . Tier Two is Tier Two for a reason. So when it's a protected district, we focus much less on Tier Two." 2/1 Tr. 68:22–23.

139.    On February 1, 2022, Chair Leek said, "These districts are also drawn . . . to main-tain existing majority-minority districts." 2/1 Tr. 8:12–14.

140.    That same day, Chair Leek, Chair Byrd, and Representative Fentrice Driskell had a colloquy about the compactness and shape of House Districts 114, 115, 116, 118, and 119, during which Leek and Byrd explained that Tier One—race—was the reason these districts are shaped the way they are, and feature the Tier Two deficiencies Driskell inquired about. 2/1 Tr. 46:18–53:13.

141.    On February 18, 2022, Reps. Dotie Joseph, Tom Fabricio, and Tyler Sirois, and staff members Leda Kelly and Jason Poreda, engaged in colloquies about the nature and reason for the shape of Congressional District 26, in which Sirois, Kelly, and Poreda explained that race was the reason for its shape and explained its "infirmities" with regard to race-neutral criteria. 2/18 Tr. 38:10–57:16.

142.    On April 19, 2022, Chair Rodrigues stated a "[b]ig consideration in drafting CD 26 . . . is that 26 is a Tier One protected district." 4/19 S. Tr. 66:16–19. He also stated, "District 26 retains its minority-majority status, and that particular seat is a minority-majority district for His-panics. It was under both of the maps that we passed previously. It remains in this map as well." *Id.* 67:13–15.

143.    That same day, the Governor's Deputy Chief of Staff, Alex Kelly explained to the House Redistricting Subcommittee and the Senate Reapportionment Committee how the fact that CD 26 needed to be a majority-minority Hispanic seat drove his adjustments to that district. 4/19 H. Tr. 15:2–47:8, 21:6–7, 73:2–75:17; 4/19 S. Comm. Tr. 10:25–9:1.

144.    On April 20, 2022, in the Florida House, Chair Leek stated he drew the

Congressional and House maps "based on race in the areas that are protected." 4/20 Tr. 80:18–25; 81:4–12.

145.    On April 21, 2022, House Legislative Subcommittee Vice Chair and Committee Member Will Robinson, said, "I couldn't help notice yesterday there were a lot of questions about whether we elevated Tier Two standards over Tier One standards. We also heard this line of questioning in the subcommittee, and I want to say firmly that that has never been the case. Tier One always outranks Tier Two. And in my opinion, that is firmly true in this map before us." 4/21 Tr. 53:11–18.

### *Poreda's Deposition Testimony*

146.    Poreda testified that before he began drawing maps, the House identified where the Tier One protected districts would be drawn. Poreda Dep. 141:15–25.

147.    Knowing the number of benchmark Hispanic protected districts in Miami-Dade "was certainly kind of a baseline where we started from." *Id.* 143:3–4.

148.    The House's "overall goal" was to ensure the districts were drawn to "elect[] a Hispanic candidate" in several of the Challenged House Districts. *Id.* 269:5–6, 269:21–270:3.

149.    Poreda explained the House's general approach, "obviously if we had a situation where [] there was some problem with Tier 1, then fixing that problem became a priority over fixing whatever other problems with Tier 2 that may have existed." *Id.* 285:21–24.

150.    The House concluded Hispanic voters had to control both party primaries in HDs 113–115 to satisfy the "functional analysis" and perform for Hispanic voters. *Id.* 268:18–21.

151.    HD 115 was originally drafted more compactly, but after staff performed a "functional analysis" to check for Hispanic performance, staff concluded they needed to change the district to ensure the district would perform for Hispanic voters. *Id.* 164:6–165:3, 166:25–169:3.

152.    Poreda testified that "ensuring Tier 1 compliance is the reason why 115 extended as far north as it does," and "why the border between 115 and 116 is where it is." *Id.* 168:2–169:3.

153.    Those adjustments "to make sure that you could elect a Republican and a Democrat Hispanic candidate" prompted adjustments to HD 115's border with HD 114, too. *Id.* 167:24–25, 168:16–17.

154.    Staff may have made similar changes to draft maps to improve Hispanic performance in HD 113, too. *Id.* 169:4–14, :22–24.

155.    Poreda testified that the configuration of HDs 118 and 119 was selected because it

"had the petter performance numbers, to ensure that both of those district would elect an Hispanic candidate;" "ensuring that an Hispanic would be elected in either district [] was the primary focus;" and those race-based goals explain those districts' shapes. *Id.* 128:18–129:22, 131:13–132:6, 155:1, 170:13–17, 172:17–173:6, 175:10–176:8, 177:9–10.

156.    Poreda testified Tier 1 considerations were "our reason" for the way the City of Miami was split between CD 26 and other districts, "was a large contributing factor in the way the City of Miami was split" and "certainly a large concern." *Id.* 209:22, 210:6–7, :10–12.

157.    Poreda testified that the border of CDs 24 and 26 was due to concerns about impacting the Tier One compliance of CD 26 and the other Hispanic protected districts. *Id.* 215:14–217:22.

158.    Poreda acknowledged that CD 26 had lower compactness scores at least in part because of Tier One compliance, that CD 26's compactness scores "were certainly secondary" to Tier One concerns, and that staff "scrapped" a draft configuration that did not extend CD 26 into Collier County in part because it "would have negatively impacted Hispanic ability to elect in District 26 and one of District 27 and 28." *Id.* 213:6–12, 18–22; 231:3–7.

159.    Besides Tier One, the only other reason for CD 26's shape Poreda could name was equal population, id. 209:25–210:4. Equal population and the region's Tier One considerations were "what primarily governs the shapes of those districts down there." *Id.* 235:11–236:5.

***Circumstantial Evidence of Racial Predominance***

160.    HDs 112, 113, and 114 split Miami into more parts than necessary. McCartan Rep. ¶¶ 17–18.

161.    HDs 114, 115, 116, 118, and 119 are all noncompact districts drawn to form long, skinny shapes running north-south, and have low compactness and "boundary analysis" scores. ECF No. 123-1 at 3 (map); SAC ¶¶ 88–92, 95–96.

162.    CD 26 is also an outlier on compactness compared to the rest of the districts in the Enacted Congressional Plan. SAC ¶ 171.

163.    CD 26 crosses the state to connect Miami-Dade to Collier County, unnecessarily splits the City of Miami, breaches the Miami-Dade County line more times than necessary, and splits the region along racial lines. McCartan Rep. ¶¶ 24–29; Abott Rep. ¶¶ 16–29.

164.    In contrast to CD 26, the House eliminated a historic majority-Hispanic House district that crossed from Miami-Dade into Collier County. Poreda Dep. 221:1–222:8; 1/21 Tr. 6:23–

7:2; Ex. 22 (*In re SJR 100* Pet. App'x Excerpt).

165.   On February 2, 2022, Legislative Subcommittee member and Southwest Florida Rep. Jenna Persons Mulicka praised the elimination of that district, noting the House map "do[es]n't have that coast-to-coast district, but rather only two districts [] cross the Miami-Dade County line" (one to include Monroe and one into Broward). 2/2 Tr. 31:5–6.

166.   Alternative maps drawn by Dr. Cory McCartan demonstrate that the Legislature's choices were not simply natural consequences of Florida's demographics and geography, but rather made for racial reasons. McCartan Rep. ¶¶ 13–14, 32–33, 36, 38–47; Walker Rep. ¶¶ 78–117.

167.   Dr. Carolyn Abott's analysis of the Challenged Districts' shapes and demographics provides further support that race drove the Legislature's line-drawing. Abott Rep. ¶¶ 18, 22, 27–29, 37, 54.

Respectfully submitted August 19, 2025,


 /s/ Nicholas L.V. Warren

Andrew Frackman*
**O'Melveny & Myers LLP**
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
(212) 326-2000
afrackman@omm.com

Brian P. Quinn*
Patrick J. Jones*
Emily Murphy*
Gabrielle S. Jackson*
Andrea Ojeda*
**O'Melveny & Myers LLP**
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bquinn@omm.com
pjones@omm.com
emurphy@omm.com
gjackson@omm.com
aojeda@omm.com

Nicholas L.V. Warren (FBN 1019018)
Daniel B. Tilley (FBN 102882)
Caroline A. McNamara (FBN 1038312)
**ACLU Foundation of Florida, Inc.**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
dtilley@aclufl.org
cmcnamara@aclufl.org

Jorge L. Vasquez, Jr.*
**Vasquez Attorneys at Law, PC**
141 Parkway Road, Suite 14
Bronxville, NY 10708
(212) 752-8408
jorge@vasquezpc.com

*Admitted pro hac vice*

*Counsel for Plaintiffs*