UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    Plaintiffs,

v.

FLORIDA HOUSE OF REPRESENTATIVES
and CORD BYRD, in his official capacity as
Florida Secretary of State,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR CONTINUANCE OF TRIAL PENDING THE DECISION IN *LOUISIANA V. CALLAIS*

Defendants, the Florida House of Representatives and the Secretary of State, respectfully move this Court for a brief continuance of trial (and related pretrial deadlines) until the Supreme Court issues a decision in *Louisiana v. Callais*, No. 24-109.[1]

### INTRODUCTION

The Supreme Court's impending decision in *Callais* will likely change the redistricting landscape, substantially impacting the issues to be tried in this case. Whatever path the Supreme Court might take in *Callais*—whether it addresses the equal-protection inquiry, the Voting Rights Act, or both—it is likely that the *Callais* decision will affect this Court's analysis in deciding this case. At a minimum, the *Callais* decision would focus the issues for trial. It could also completely obviate the need for trial if the enacted maps are legislatively redrawn in a post-*Callais* landscape.

---

[1] Pursuant to Local Rule 7.6, attached as Exhibit 1 is a Declaration of Andy Bardos in support of this motion.

If this Court proceeds with the trial as planned—without the *Callais* decision—then it runs the risk of issuing a ruling before a potential change in the governing legal framework and creating unnecessary challenges and complications on appeal. There is no urgency nor prejudice in waiting a short time for a decision from the Supreme Court. But there is much to gain from waiting: clarity on the controlling law, conservation of judicial resources, and considered legislative action (if necessary).

Put more succinctly: During the summary judgment oral argument, this Court asked whether "continu[ing] trial till after we have *Callais*" was best. SJ Tr.59:2–4. It is. The pendency of a "federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues" before the Court is a good reason, "if not an excellent one," for a stay or a continuance. *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009).

## LEGAL STANDARD

"The decision whether to grant a continuance is within the sound discretion of the trial court." *Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1284, 1291 (S.D. Fla. 2010) (citations omitted); *see also SEC v. Levin*, 849 F.3d 995, 1005 (11th Cir. 2017) ("We . . . will not reverse a district court's ruling on a motion for continuance unless the ruling is arbitrary, unreasonable, and severely prejudicial."). Pursuant to Local Rule 7.6, a continuance of trial may be granted in "exceptional circumstances." Exceptional circumstances are determined by a good-cause standard. *Flosports, Inc. v. Loud & Live Fitness, Ltd. Liab. Co.*, No. 21-21740-CIV, 2022 WL 3682068, at *3–4 (S.D. Fla. Feb. 17, 2022).

## ARGUMENT

Defendants seek a brief continuance of trial to account for the uncertainty—and a potential impending shift—in the redistricting legal framework. While Plaintiffs do not believe that *Callais*

will impact this case, *Callais*' unusual procedural posture suggests a change in the law—possibly a fundamental one—is forthcoming. *Callais* was first argued on March 24, 2025, was re-listed for a second argument on June 27, 2025, and was re-argued on October 15, 2025. *See* Supreme Court Docket, No. 24-109. Past cases re-argued before the Supreme Court include *Brown v. Board of Education*, 347 U.S. 483 (1954) (segregation); *Roe v. Wade*, 410 U.S. 113 (1973) (abortion); and *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010) (campaign finance). Each is a landmark decision. The re-listing and re-argument of *Callais* suggests that it may be one as well. *See* Stephen Wermiel, *Asked and Answered*, SCOTUSBLOG (Oct. 17, 2025), https://www.scotusblog.com/2025/10/asked-and-answered (explaining that *Callais* "may determine the extent to which the Constitution allows the use of race in drawing congressional district lines"); v SCOTUSBLOG (Aug. 27, 2025), https://www.scotusblog.com/2025/08/the-future-of-voting-rights/ ("In fact, . . . *Louisiana v. Callais* . . . could bring a radical undermining of many important federal and state civil rights laws.").

Before the re-argument, on August 1, 2025, the Supreme Court also asked the parties to brief the following question: "Whether [Louisiana's] intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution." *See* Bardos Decl. at Ex. A, Aug. 1, 2025 Order. This is an issue the Supreme Court has confronted in the past, *compare Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 275 (2015) (declining to express a view on "whether the intentional use of race in redistricting, even in the absence of proof that traditional districting principles were subordinated to race, triggers strict scrutiny"), *with League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 517 (2006) (Scalia, J., concurring in judgment in part and dissenting in part) ("[W]hen a legislature intentionally creates a majority-minority district, race is necessarily its predominant motivation[,]

3

and strict scrutiny is therefore triggered."), and appears to be prepared to decide in *Callais*—with implications for this case and redistricting laws nationwide.

The Supreme Court may answer the question in several ways. It could hold that *any* consideration of race in redistricting violates the Constitution. It could more clearly define the boundary between permissible race-consciousness and racial predominance. The Chief Justice suggested as much at re-argument in *Callais*. Tr. 17:16–22 ("CHIEF JUSTICE ROBERTS: You've said several times that [race is] playing an outsized—outsized role. Is there—what's the proper size? In other words, what—are we—is it wiggle room we're talking about or a significant percentage? What is meant by 'outsized'?").[2] The Supreme Court's ruling could reconsider its Voting Rights Act precedent; after all, the United States said in *Callais* that the governing VRA standard is "vague," "too malleable," and in need of replacement. USA Supp. Br. at 14; *see also id.* at 14–31. That too would affect this case because, under current precedent, an attempt to comply with the Voting Rights Act helps to satisfy strict scrutiny, *see*, *e.g.*, *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 195–96 (2017), and Plaintiffs take the position that the same is true of attempts to comply with Florida's legal protections for minority voters, *see* ECF No. 58 ¶ 191 ("Compliance with the Voting Rights Act and corollary requirements like the Fair Districts Amendments' non-retrogression standard can justify the predominant consideration of race."); *see also id.* ¶ 221, which were patterned after the VRA, *see Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State*, 415 So. 3d 180, 187 (Fla. 2025) (explaining that, in interpreting Florida's tier-one standards, the Florida Supreme Court "relied heavily on jurisprudence interpreting Sections 2 and 5 of the federal Voting Rights Act").

---

[2] The transcript is available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-109_5i36.pdf.

4

Setting trial aside, *Callais* may complicate any appeal from this Court's decision. "The general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision." *Thorpe v. Hous. Auth. of City of Durham*, 393 U.S. 268, 281 (1969). Thus, if this Court enters its final order after a trial in January, and the Supreme Court decides *Callais* in the weeks or months that follow, then the Supreme Court will apply whatever standards come out of *Callais* regardless of the fact that this Court (and the Parties) did not have the benefit of that standard. And if the Supreme Court ultimately vacates this Court's judgment and remands for further consideration in light of *Callais*, then this Court will have expended needless judicial labor. *See Rucho v. Common Cause*, 585 U.S. 1012 (2018) (vacating a judgment in a redistricting case and remanding for further consideration in light of intervening Supreme Court precedent). Or if the Supreme Court decides *Callais* before this Court issues its judgment, then any new legal principles announced in *Callais* might warrant supplemental briefing or additional evidence and postpone a resolution to the same extent as a brief continuance would have done. As is usually the case, it is best here to measure twice and cut once.

The Supreme Court's contemporaneous consideration of redistricting during the pendency of this case—accompanied by indications that it might be on the verge of issuing a groundbreaking decision—constitutes exceptional circumstances warranting a brief continuance. Defendants have been diligently preparing for trial and have filed their pretrial disclosures under Federal Rule of Civil Procedure 26(a)(3). Moreover, Plaintiffs will not be prejudiced by a brief continuance to allow the litigants and the Court to know the applicable legal standards that will be clarified by the Supreme Court's impending ruling. After all, Plaintiffs filed this action in May 2024, more than two years after the challenged districts were enacted. Plaintiffs' own delay refutes any claim of urgency.

The *Callais* decision will crystallize redistricting law, and this Court and the parties would benefit from knowing the relevant standards that will guide judicial review and the next stages of this litigation. Given this backdrop, it is in the interest of judicial economy and a correct resolution of Plaintiffs' claims to grant a brief continuance.

## CONCLUSION

For these reasons, Defendants respectfully request the Court to grant a brief continuance of trial and related pretrial deadlines pending the Supreme Courts' issuance of the *Callais* decision.

## RULE 7.1(a)(3) CERTIFICATION

Prior to filing this motion, Counsel for the House conferred with Plaintiffs via e-mail on December 1–2, 2025. Plaintiffs oppose the relief sought in this motion.

Dated: December 2, 2025.                    Respectfully submitted,

*/s/ Andy Bardos*  
Andy Bardos (FBN 822671)  
andy.bardos@gray-robinson.com  
GRAYROBINSON, P.A.  
301 South Bronough Street, Suite 600  
Tallahassee, Florida 32301-1724  
Telephone: 850-577-9090  

*/s/ Carmen Manrara Cartaya*  
Jesus M. Suarez (FBN 60086)  
jsuarez@continentalpllc.com  
Carmen Manrara Cartaya (FBN 73887)  
ccartaya@continentalpllc.com  
Jennifer M. Hernandez (FBN 1018836)  
jhernandez@continentalpllc.com  
CONTINENTAL PLLC  
245 Alcazar Avenue,  
Coral Gables, Florida 33134  
Telephone: 305-677-2707  

Christopher M. Kise (FBN 855545)  
ckise@continentalpllc.com  
CONTINENTAL PLLC  
101 North Monroe Street, Suite 750  
Tallahassee, Florida 32301  
Telephone: 850-270-2211  

*Attorneys for the House*

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

*Attorney for the Secretary*