IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF
REPRESENTATIVES, *et al.*,

    *Defendants*.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION TO CONTINUE TRIAL PENDING *LOUISIANA V. CALLAIS***

    One month before trial commences and five months since the Supreme Court reset *Callais* for reargument, Defendants now ask the Court to halt these proceedings based on the ***possibility*** that *Callais* could "change the redistricting landscape" or cause "a ***potential*** impending shift . . . in the redistricting legal framework." ECF No. 157 (Mot.) at 1–2. Vague speculation about *Callais*'s impact on redistricting law is no basis to pause trial, particularly where the factual questions to be tried here—how the Challenged Districts were drawn, why the Florida Legislature did it, and whether legislators subordinated traditional districting criteria to race—will not be affected by any change in the law decided in *Callais*. If a change in the law might affect the Court's legal conclusions based upon the parties' factual presentations, the appropriate course would be for the Court to proceed to trial as planned and wait to issue its ruling until after the Supreme Court decides *Callais*, rather than a wholesale stay.

## BACKGROUND

    In 2022, voters and organizations sued Louisiana under Section 2 of the Voting Rights Act (VRA), alleging that the VRA required a second congressional district in which Black voters had an opportunity to elect candidates of their choice. The trial court granted a preliminary injunction. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766–68 (M.D. La.), *stay and cert. before judgment granted,* 142 S. Ct. 2892 (2022), *and stay vacated and cert. dismissed as improvidently granted*, 143 S. Ct. 2654, *and vacated and remanded*, 86 F.4th 574 (5th Cir. 2023). Louisiana eventually adopted a new map with a second majority-Black district, remedying the VRA violation. *Robinson v. Ardoin*, 731 F. Supp. 3d 711, 717 (M.D. La. 2024).

1

Different voters then challenged that remedial VRA district as a Fourteenth Amendment racial gerrymander. The trial court panel majority agreed, finding that race predominated in the drawing of the district, and that the use of race failed narrow tailoring, even assuming VRA compliance was a compelling interest. *Callais v. Landry*, 732 F. Supp. 3d 574, 606–07, 613 (W.D. La.), *stay granted*, 144 S. Ct. 1171, *and probable juris. noted*, 145 S. Ct. 434 (2024).

Louisiana and the *Robinson* plaintiffs (now defendant-intervenors) appealed. After hearing argument last term, on June 27, 2025, the Court restored the case to the calendar for reargument. *Callais*, 145 S. Ct. 2608 (2025). On August 1, 2025, the Supreme Court ordered supplemental briefing and reargument on this question: "Whether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution." *Callais*, 2025 WL 2180226 (U.S. Aug. 1, 2025). On October 15, 2025, the Court held the second oral argument.

## LEGAL STANDARD

Local Rule 7.6. provides that "[a] continuance of any trial . . . will be granted only on exceptional circumstances." A party seeking a continuance is required to "file[ ] at the earliest practical date prior to the trial" and support their request with an "affidavit setting forth a full showing of good cause." *Id.* "[T]he denial of a continuance is within the broad discretion of the district court and will not be overturned unless arbitrary or unreasonable." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1351 (11th Cir. 2003); *see also Robinson v. United States*, No. 1:20-cv-21615, 2022 WL 1812416, at *9 (S.D. Fla. Mar. 24, 2022) (recognizing the "general rule that trial courts have broad discretion to deny continuances"), *report and recommendation adopted*, 2022 WL 1801151 (S.D. Fla. June 2, 2022).

## ARGUMENT

### I. Defendants' request is not timely.

Defendants did not move for a continuance "at the earliest practical date prior to trial," as Local Rule 7.6 requires. Though the Supreme Court reset *Callais* in late June, Defendants waited until December 3—over five months after reargument was ordered and a month and a half after the reargument—to file their motion. Defendants make no effort to explain why they waited until now.

Defendants had ample opportunity to seek a continuance before the parties expended significant resources arguing this case at summary judgment (let alone preparing for trial) based

2

on the same legal standards Defendants now suggests are primed to be "fundamental[ly]" changed. Mot. at 3. Over a month after the Supreme Court reset *Callais* for reargument, the House moved for summary judgment (ECF No. 122). Relying on the same redistricting legal framework that it now fears will be disrupted, the House pursued summary judgment rather than seeking a continuance or stay. Even after the Court raised *Callais* at argument, Defendants did not move for a continuance or stay of proceedings. After the Court issued its summary-judgment order, Defendants waited nearly *two weeks* before notifying Plaintiffs of their intent to file a motion. Mot. at 6. All the while, they participated with Plaintiffs in the exchange of exhibit lists and other pre-trial preparations. When Defendants finally did move for a continuance, it was so close to the scheduled trial that the Court had to expedite Plaintiffs' response deadline by 11 days. ECF No. 159.

Meanwhile, Plaintiffs are preparing for trial, including arranging travel and lodging for witnesses and counsel (including lay witnesses who will be traveling from as far as Tallahassee and Vermont), planning needed accommodations for Plaintiffs' and their witnesses' work and school schedules, and issuing subpoenas to lay witnesses.[1]

## II. The questions to be tried are factual and will not be altered by *Callais*.

This trial will involve a fact-bound inquiry into racial predominance, regardless of any decision in *Callais*. Racial gerrymandering claims involve "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017). First, plaintiffs must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district," and "that the legislature subordinated traditional race-neutral districting principles . . . to racial considerations." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). Plaintiffs here argue that race predominated in the drawing of various districts.

*Callais* is unlikely to have any bearing on this first step. The Supreme Court reiterated its well-established racial predominance standard just last year. *Alexander v. S.C. State Conf. of NAACP*, 602 U.S. 1, 7–8 (2024) (citing, *inter alia*, *Cooper*, *Bethune-Hill*, *ALBC*, and *Miller*). The only parties seeking to change this standard in *Callais* argue the Court should go further and decide

---

[1] Plaintiffs' counsel must pay a non-refundable deposit of over $13,000 for their and their witnesses' hotel by December 9. Plaintiffs therefore respectfully request that if the Court grants the motion, it do so before that date.

that a race-predominant district is *always* unconstitutional, even when the VRA might require one. Appellees' Supp. Br. at 1–5 (Sep. 17, 2025); La.'s Supp. Br. at 1–5 (Sep. 17, 2025). Arguments also focus on narrowing the VRA's breadth. Appellees' Supp. Br. at 2–5; U.S.'s Supp. Br. at 2–4 (Sep. 24, 2025). Any such change to the racial predominance standard would not change the record evidence that the parties would present at trial: what criteria was applied when drawing the districts, where and how lines were drawn, and what the Legislature's stated and actual motivations were. Defendants have not even identified any evidence that they would introduce in the event of a change to the racial predominance standard that they are not introducing now or cannot introduce now.[2] Resolving factual issues now will neither be wasted nor mooted by *Callais*; they are indispensable findings under any plausible decision in *Callais*.

The second step in a racial gerrymandering case is strict scrutiny. *Alexander*, 602 U.S. at 6. Under existing law, the government can justify a race-predominant district by the need to comply with the VRA, but only if "it had 'a strong basis in evidence' for concluding that the statute required its action.'" *Cooper*, 581 U.S. at 292 (quoting *Ala. Legis. Black Caucus v. Alabama* (*ALBC*), 575 U.S. 254, 278 (2015)). As Defendants note, "Plaintiffs take the position that the same is true of attempts to comply with Florida's legal protections for minority voters." Mot. at 4. Plaintiffs argue that no "strong basis" existed to conclude that compliance with the VRA or Florida's requirements, because two of the three *Gingles* preconditions for triggering those provisions is absent.

If the Supreme Court adopts any of the sweeping arguments Louisiana and the *Callais* appellees advance to further heighten the strict scrutiny standard, Plaintiffs' task in this case will get easier, and Defendants' harder. But it is difficult to envision a changed standard altering the *evidence* the parties would offer at trial. Tellingly, Defendants do not explain any evidence they intend to introduce *now* to survive strict scrutiny—and, to date, Defendants have marshalled very little evidence on this point. And just as with evidence to rebut racial predominance, Defendants have not identified any proof they would introduce if the Supreme Court changes the strict scrutiny analysis. Nor again could they, with only one witness available to them who can testify to the

---

[2] Nor could they. Defendants have one fact witness: House Chief Map Drawer Jason Poreda. Every other potential fact witness who might develop further evidence of the legislative process for Defendants—committee and subcommittee chairs and other legislative staff—has asserted legislative privilege.

4

legislative process.

At bottom, *Callais*'s new question presented is about the limits on the use of race in remedying VRA violations. Since Plaintiffs here argue that there is no potential VRA violation to remedy and posit that the VRA and Florida Constitution do not require the Florida Legislature to consider race in its mapping at all, *Callais* is not likely to have a great impact on this case.

### III. An indefinite or open-ended continuance will prejudice Plaintiffs and is not in the public interest.

The Eleventh Circuit has recognized "the immense harm caused by racial gerrymandering," and it has declined to force voters to live under substantially likely unconstitutional districts pending protracted litigation. *Jacksonville Branch of NAACP v. City of Jacksonville*, 2022 WL 16754389, at *5 (11th Cir. Nov. 7, 2022). The longer this litigation is delayed, the greater the risk that upcoming electoral cycles will proceed under unlawful lines, further entrenching the very harms Plaintiffs challenge and imposing concrete burdens on voters.

Defendants assert there is "no urgency nor prejudice in waiting a short time for a decision from the Supreme Court." Mot. at 2. But they themselves admitted that "we don't know when [the decision is] coming out." ECF No. 145 at 59:21. The Supreme Court term ends more than six months from now. And, under Defendants' proposal, the *Callais* decision would only begin the delay. The parties and the Court would need to juggle various schedules to find a suitable time for trial, hold trial, and then conduct any remedial phase, if necessary.

### IV. The Court can address Defendants' concerns by ruling after *Callais*.

Defendants warn that "[i]f this Court proceeds with the trial as planned—without the *Callais* decision—then it runs the risk of issuing a ruling before a potential change in the governing legal framework and creating unnecessary challenges and complications on appeal." Mot. at 2. District courts always run this risk and usually proceed without grinding cases to a halt. Indeed, if every redistricting case was paused to await every potentially relevant pending Supreme Court decision, no redistricting case would ever go to trial.[3]

---

[3] *See Callais* (appeal filed May 1, 2024); *Alexander*, 602 U.S. 1 (appeal filed Jan. 27, 2023; decided May 24, 2024); *Allen v. Milligan*, 599 U.S. 1 (2023) (appeal filed Jan. 25, 2022; decided June 8, 2023); *Abbott v. Perez*, 585 U.S. 579 (2018) (appeal filed Aug. 18, 2017; decided June 25, 2018); *Cooper*, 581 U.S. 285 (appeal filed Feb. 8, 2016; decided May 22, 2017); *Bethune-Hill*, 580 U.S. 178 (appeal filed Oct. 26, 2015; decided Mar. 1, 2017); *ALBC*, 575 U.S. 254 (appeal filed Jan. 6, 2014; decided Mar. 25, 2015); *Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) (cert. granted Nov.

But, if the Court is concerned of this possibility, Plaintiffs propose a simple solution: the Court should wait to issue a ruling until the Supreme Court decides *Callais*. Then, with the full benefit of *Callais*, the Court could seek expeditious supplemental briefing or otherwise deliver its decision.

V. **The Court should follow the example of its sister courts adjudicating other racial gerrymandering and VRA cases.**

Notably, other racial gerrymandering cases around the country are proceeding rapidly while the Supreme Court considers *Callais*. A month ago, the Republican Party and voters challenged California's new congressional map as a racial gerrymander. *Tangipa v. Newsom*, No. 2:25-cv-10616 (C.D. Cal. Nov. 5, 2025), ECF No. 1. The United States intervened to allege racial gerrymandering and VRA Section 2 claims. *Tangipa* (Nov. 13, 2025), ECF No. 28-2. Far from pausing the case to await *Callais*, the court largely adopted the parties' proposed expedited briefing schedule and set a PI hearing for December 15. *Tangipa* (Nov. 14 and 21, 2025), ECF Nos. 38, 81. The United States and original plaintiffs oppose any delay and seek an injunction by December 19. *Tangipa* (Nov. 20, 2025), ECF No. 75 at 3.

Likewise, in Texas and North Carolina, racial gerrymandering challenges to new congressional maps are advancing quickly. The Texas panel acknowledged "the need to proceed as quickly as possible on the Plaintiffs' Preliminary Injunction Motions" and granted a PI two weeks ago. *LULAC v. Abbott*, No. 3:21-cv-259 (W.D. Tex. Aug. 28, 2025), ECF No. 1146 at 1; *LULAC*, 2025 WL 3215715 (W.D. Tex. Nov. 18, 2025), *administratively stayed*, 2025 WL 3251115 (U.S. Nov. 21, 2025) (Alito, J., in chambers). The North Carolina panel also expedited that case, holding a PI hearing two weeks ago over a map adopted in October, and setting pretrial deadlines in April and May. *Williams v. Hall*, 1:23-cv-1057 (M.D.N.C. Nov. 6, 2025), ECF No. 198. That court has already ruled on the PI motions against the 2025 congressional map, plus just issued a post-trial ruling on racial gerrymandering and VRA claims against North Carolina's 2023 State Senate and congressional maps, following a trial in June and July. *Williams*, 2025 WL 3296273 (M.D.N.C. Nov. 26, 2025); *Williams*, 2025 WL 3240456, at *30–57 (M.D.N.C. Nov. 20, 2025).

These cases' expedited schedules demonstrate that racial gerrymandering claims involve

---

9, 2012; decided June 25, 2013); *Perry v. Perez*, 565 U.S. 388 (2012) (stay app. filed Nov. 28, 2021; decided Jan. 20, 2012).

weighty and fundamental rights, and courts should not delay adjudication and enforcement of those rights. *See Jacksonville,* 2022 WL 16754389, at *5 ("[W]e decline to require the residents of Jacksonville to live for the next four years in districts defined by a map that is substantially likely to be unconstitutional."). For these reasons, the Court should not pause this case pending *Callais*.[4]

Respectfully submitted December 4, 2025,

| | |
|---|---|
| Andrew Frackman* <br> **O'Melveny & Myers LLP** <br> 1301 Avenue of the Americas, 17th Floor <br> New York, NY 10019 <br> (212) 326-2000 <br> afrackman@omm.com <br><br> Brian P. Quinn* <br> Patrick J. Jones* <br> Emily Murphy* <br> Gabrielle S. Jackson* <br> Helena M. Li* <br> **O'Melveny & Myers LLP** <br> 1625 Eye Street NW <br> Washington, DC 20006 <br> (202) 383-5300 <br> bquinn@omm.com <br> pjones@omm.com <br> emurphy@omm.com <br> gjackson@omm.com <br> hli@omm.com | /s/ *Nicholas L.V. Warren* <br> Nicholas L.V. Warren (FBN 1019018) <br> Caroline A. McNamara (FBN 1038312) <br> Daniel B. Tilley (FBN 102882) <br> **ACLU Foundation of Florida, Inc.** <br> 4343 West Flagler Street, Suite 400 <br> Miami, FL 33134 <br> (786) 363-1769 <br> nwarren@aclufl.org <br> cmcnamara@aclufl.org <br> dtilley@aclufl.org <br><br> Jorge L. Vasquez, Jr.* <br> **Vasquez Attorneys at Law, PC** <br> 141 Parkway Road, Suite 14 <br> Bronxville, NY 10708 <br> (212) 752-8408 <br> jorge@vasquezpc.com <br><br> **Admitted pro hac vice* |

*Counsel for Plaintiffs*

---

[4] Defendants mention in passing that *Callais* "could [] completely obviate the need for trial if the enacted maps are legislatively redrawn in a post-*Callais* landscape." Mot. at 1. Such a speculative allusion to "voluntary cessation" cannot justify a stay. Even more problematically for Defendants, the Florida Legislature can only alter state legislative districts in the second year following each decennial census. Fla. Const. Art. III, § 16(a).