IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF
REPRESENTATIVES, *et al.*,

    *Defendants*.

_____/

### JOINT PRETRIAL STIPULATION

The parties jointly submit this pretrial stipulation pursuant to Local Rule 16.1(e).

**(1) A short, concise statement of the case by each party in the action:**

**Plaintiffs**: Plaintiffs assert claims under 42 U.S.C. § 1983 alleging that Florida House Districts 115, 118, and 119 (the "Challenged House Districts") and Congressional District 26 (collectively, the "Challenged Districts") in Florida's congressional and State House plans adopted after the last census (Plan 109 or "Enacted Congressional Plan" and Plan 8013 or "Enacted House Plan") are racially gerrymandered in violation of the Equal Protection Clause.[1]

The Legislature drew each Challenged District predominantly based on racial considerations. The Legislature's use of race in drawing each Challenged District was not narrowly tailored to any compelling state interest. Plaintiffs request a declaratory judgment that each Challenged District is an unconstitutional racial gerrymander in violation of the Equal Protection Clause; a permanent injunction enjoining elections under them; and a remedial decree that ensures Plaintiffs live and vote in constitutional districts beginning with the 2026 elections or, if adequate relief is unavailable before then, in a special election. Plaintiffs also request reasonable attorneys' fees and costs.

**Defendants**: Defendants appropriately balanced all legal requirements in drawing the Challenged Districts, and no single requirement predominated over the others. Each Challenged District was drawn principally by district-specific, race-neutral considerations and external

---

[1] While only the House was granted summary judgment on Plaintiffs' claims against HDs 112, 113, 114, and 116, Plaintiffs now abandon those claims against the Secretary.

1

impacts that flowed from decisions made elsewhere in the map. Plaintiffs cannot overcome the presumption of legislative good faith that attaches to Defendants' map-drawing efforts and cannot otherwise carry their heavy burden of establishing that race predominated. Even if race predominated, the Legislature's use of race in drawing each Challenged District was narrowly tailored.

Defendants request an award of costs and such other relief as the Court deems appropriate.

**(2) The basis of federal jurisdiction:**

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States.

**(3) The pleadings raising the issues:**

1. Plaintiffs' Second Amended Complaint (ECF No. 58)
2. The House's Answer (ECF No. 94)
3. The Secretary's Answer (ECF No. 95)

**(4) A list of all undisposed of motions or other matters requiring action by the Court:**

1. Joint Motion to Permit Certain Persons to Bring Electronic Equipment to Trial (ECF No. 170)

**(5) A concise statement of uncontested facts which will require no proof at trial, with reservations, if any:**

1. Defendant Cord Byrd is the Florida Secretary of State and, in that capacity, is the head of the Florida Department of State. The Department of State has "general supervision and administration of the election laws," administers congressional and legislative candidate qualifying, receives congressional and legislative election returns from the county canvassing boards, and issues certificates of election to successful congressional and legislative candidates.

2. Before and during its 2022 regular session, the Florida House of Representatives and the Florida Senate held committee meetings and floor sessions to conduct the state legislative and congressional redistricting process. The Legislature held additional committee meetings and floor sessions regarding congressional redistricting as part of 2022 Special Session C.

3. The redistricting committees and subcommittees, the dates they met, and their

chairs and vice chairs were as follows:

| Florida House of Representatives | | |
|---|---|---|
| **Committee and Meeting Dates** | **Chair** | **Vice Chair** |
| Redistricting Committee<br>9/22/21, 10/12/21, 11/2/21, 1/13/22, 1/26/22, 2/25/22 | Tom Leek | Randy Fine |
| Congressional Redistricting Subcommittee<br>9/23/21, 10/13/21, 10/20/21, 11/3/21, 12/2/21, 1/11/22, 2/18/22, 4/19/22 | Tyler Sirois | Kaylee Tuck |
| State Legislative Redistricting Subcommittee<br>9/23/21, 10/13/21, 10/20/21, 11/3/21, 12/3/21, 1/11/22, 1/21/22 | Cord Byrd | Will Robinson |
| **Florida Senate** | | |
| **Committee and Meeting Dates** | **Chair** | **Vice Chair** |
| Committee on Reapportionment<br>9/20/21, 10/11/21, 10/18/21, 1/13/22, 4/19/22 | Ray Rodrigues | Doug Broxson |
| Select Subcommittee on Congressional Reapportionment<br>11/16/21, 11/29/21, 1/10/22 | Jennifer Bradley | — |
| Select Subcommittee on Legislative Reapportionment<br>11/17/21, 11/29/21, 1/10/22 | Danny Burgess | — |

4. The House was assisted by committee staff, including Leda Kelly, Staff Director of the House Redistricting Committee, Congressional Redistricting Subcommittee, and State Legislative Redistricting Subcommittee; Chief Map Drawer Jason Poreda; and Analysts Kyle Langan and Sam Wagoner.

5. The Senate was assisted by committee staff, including Staff Director Jay Ferrin, Special Counsel Jason Rojas, and Analysts Justin Eichermuller and Yen Le.

6. The 2020 decennial census showed Florida's population had grown to 21,538,187. As a result, the new ideal or mean population of a congressional district was 769,221 people, while the new ideal or mean population of a State House district was 179,485.

   A. *Development of the State House Plan*

7. At their meetings in September, October, and November 2021, the House Redistricting Committee and its two subcommittees received informational briefings on the census data, legal requirements governing redistricting, and the Legislature's online map-drawing application.

8. On December 3, 2021, the House State Legislative Redistricting Subcommittee workshopped two draft State House plans (H000H8005 and H000H8007, or "Workshop Option A" and "Workshop Option B").[2]

9. On January 11, 2022, both House subcommittees met to receive public comment.

10. On January 13, 2022, the House Redistricting Committee workshopped Plans 8005 and 8007.

11. On January 21, 2022, the House State Legislative Redistricting Subcommittee convened to discuss Plan 8009 and, by a 13-7 vote, favorably reported a proposed committee bill containing Plan 8009. That proposed committee bill was filed as House Joint Resolution ("HJR") 7501.

12. On January 26, 2022, the House Redistricting Committee considered HJR 7501 and, by a 17-7 vote, favorably reported a committee substitute[3] for HJR 7501 that replaced Plan 8009 with Plan 8013 (which would become the Enacted House Plan).

13. On February 1, 2022, the full House considered Committee Substitute for HJR 7501 (containing Plan 8013) on second reading. The House took up the companion legislation from the Senate containing the Senate's plan for its own districts (Senate Joint Resolution 100), which the Senate had previously passed by a 34-3 vote. By voice vote, the House adopted an amendment adding Plan 8013 to SJR 100.

14. On February 2, 2022, the House considered and debated SJR 100, including Plan 8013, on third reading. The House passed SJR 100 by a 77-39 vote.

15. On February 3, 2022, the Senate passed SJR 100 as amended by the House by a 37-0 vote, adopting Plan 8013.

16. State representatives are currently elected from the districts created by Plan 8013.

---

[2] In the redistricting process, each redistricting plan posted to Legislature's redistricting website received a 9-character identifier. The first character—"H," "S," or "P"—indicates whether the plan was offered by a member or staff of the House or Senate or by a member of the public. The next three characters indicate the district number of the member who offered the plan, or "000" if the plan was not offered by a member. The fifth character—"H," "S," or "C"—indicates whether the plan proposed House, Senate, or congressional districts. The last four digits are a unique numerical identifier. For simplicity, the parties may refer to plans simply by their unique, four-digit numerical identifiers.

[3] When a committee adopts amendments to or a proposed committee substitute for a bill, the underlying bill is refiled as a "committee substitute" for the original bill. A committee substitute is referred to in shorthand using the designation "CS/" before the bill number (e.g., "CS/HJR 7501").

### B. *Development of the Congressional Plan Through the 2022 Regular Session*

17. At their meetings in September, October, and November 2021, the House Redistricting Committee and its two subcommittees received informational briefings on the census data, legal requirements governing redistricting, and the Legislature's online map-drawing application.

18. On September 20 and October 11, 2021, the Senate Committee on Reapportionment received informational briefings on the census data and legal requirements governing redistricting.

19. On October 18, 2021, the Senate Committee on Reapportionment unanimously adopted directives establishing priorities and standards that would govern the drawing of district maps by Senate staff.

20. On November 16, 2021, the Senate Select Subcommittee on Congressional Reapportionment considered four draft congressional plans (Plans 8002, 8004, 8006, and 8008).

21. On November 29, 2021, the Senate Select Subcommittee on Congressional Reapportionment considered four new draft congressional plans (Plans 8018, 8020, 8022, and 8024).

22. On December 2, 2021, the House Congressional Redistricting Subcommittee workshopped two draft congressional plans (Plans 8001 and 8003, or "Workshop Option A" and "Workshop Option B").

23. On January 10, 2022, the Senate Select Subcommittee on Congressional Reapportionment convened for the final time and recommended advancing two plans (Plans 8038 and 8040) to the Senate Committee on Reapportionment.

24. On January 11, 2022, the Legislature convened for its 2022 regular session.

25. On January 13, 2022, the House Redistricting Committee workshopped Plans 8001 and 8003.

26. On January 13, 2022, the Senate Committee on Reapportionment considered Plan 8040 and favorably reported Senate Bill ("SB") 102 (including Plan 8040) by a 10-2 vote.

27. On January 19, 2022, the full Senate considered SB 102 on second reading and adopted as an amendment Plan 8060 by a voice vote.

28. On January 20, 2022, the Senate considered SB 102 (containing Plan 8060) on third reading and passed it by a 31-4 vote.

29. On February 18, 2022, the House Congressional Redistricting Subcommittee

considered Plan 8011 and, by a 14-7 vote, favorably reported a proposed committee bill containing Plan 8011. That proposed committee bill was filed as House Bill ("HB") 7503.

30. On February 25, 2022, the House Redistricting Committee considered HB 7503 and, by a 15-9 vote, favorably reported a committee substitute for HB 7503 that contained two congressional plans: a primary plan (Plan 8017) and a secondary plan (Plan 8015). These primary and secondary plans differed only in their configuration of districts in North Florida.

31. On March 3, 2022, the full House considered SB 102 on second reading and, by voice vote, amended SB 102 to replace Plan 8060 with a primary plan (Plan 8019) and a secondary plan (Plan 8015). These primary and secondary plans differed only in their configuration of districts in North Florida.

32. On March 4, 2022, the House considered and debated SB 102 (now containing Plans 8019 and 8015) on third reading. The House adopted SB 102 by a 67-47 vote.

33. The same day, the Senate passed SB 102, as amended by the House, by a 24-15 vote.

34. On March 29, 2022, Governor DeSantis vetoed SB 102 over disagreements with districts outside of South Florida.

### C. Development of the Congressional Plan in 2022 Special Session C

35. On April 19, 2022, the Legislature convened in 2022 Special Session C.

36. Also on April 19, 2022, the Senate Committee on Reapportionment and House Congressional Redistricting Subcommittee both met to consider Plan 109, which would become the Enacted Congressional Plan. The Senate Committee on Reapportionment favorably reported SB 2-C (containing Plan 109) by an 8-4 vote. The House Congressional Redistricting Subcommittee favorably reported HB 1-C (containing Plan 109) by a 15-7 vote.

37. Also on April 19, 2022, the full Senate heard SB 2-C on second reading.

38. On April 20, 2022, the Senate took up SB 2-C on third reading and passed it by a 24-15 vote.

39. Also on April 20, 2022, the full House considered HB 1-C on second reading and substituted the companion bill, SB 2-C, for HB 1-C.

40. On April 21, 2022, the House adopted SB 2-C (containing Plan 109) by a 68-38 vote.

41. On April 22, 2022, Governor DeSantis signed SB 2-C into law.

6

42. Members of Congress are currently elected from districts created by Plan 109.

### D. Benchmark Districts

43. The following chart lists each Challenged District and the corresponding "benchmark" district in the prior ("benchmark") redistricting plans against which diminishment in a protected minority group's ability to elect its preferred candidates was to be measured under Florida's non-diminishment provision. *See In re Senate Joint Resol. of Legis. Apportionment 1176*, 83 So. 3d 597, 625 (Fla. 2012).

| District in 2022 Enacted Plans | Benchmark District in Benchmark Plan |
|---|---|
| CD 26 | CD 25 |
| HD 115 | HD 115 |
| HD 118 | HD 118 |
| HD 119 | HD 119 |

**(6) A statement in reasonable detail of issues of fact which remain to be litigated at trial:[4]**

1. Whether "race was the predominant factor in the design of" each Challenged District. *Abbott v. Perez*, 585 U.S. 579, 620 (2018).

2. Whether, if the Court finds that race was the predominant factor in the design of any Challenged District, the use of race was narrowly tailored to compliance with the Florida Constitution's Non-Diminishment Clause.

**(7) A concise statement of issues of law on which there is agreement:**

1. The Court has jurisdiction over the parties and action.

2. A three-judge district court is required to hear and determine this action.

3. Venue is proper.

4. Racial gerrymandering claims involve "a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017).

5. First, plaintiffs must prove that "race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district,"

---

[4] If any of these issues of fact is more appropriately described as an issue of law, it is incorporated in Section (8) below.

and "that the legislature subordinated traditional race-neutral districting principles . . . to racial considerations." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017) (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). "The ultimate object of the inquiry . . . is the legislature's predominant motive for the design of the district as a whole." *Id*. at 192.

6. Second, "if racial considerations predominated over others, the design of the district must withstand strict scrutiny. The burden shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper*, 581 U.S. at 292.

**(8) A concise statement of issues of law which remain for determination by the Court:**

Whether, if the Court finds that race was the predominant factor in the design of any Challenged District, the use of race was narrowly tailored to compliance with the Florida Constitution's Non-Diminishment Clause.

**(9) Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including the basis of all objections to each document, electronically stored information and thing:**

The parties' joint exhibit list, and each side's exhibit list with the other side's objections, are attached.

**(10) Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to present and those whom the party may call if the need arises:**

| Plaintiffs' Witnesses | | |
|---|---|---|
| **Name** | **Likelihood of Testifying** | **Address** |
| 1. Cynthia Perez | Will call | c/o Plaintiffs' counsel |
| 2. Rebecca Pelham | Will call | c/o Plaintiffs' counsel |
| 3. Camila Suarez Melinkoff | Will call | c/o Plaintiffs' counsel |
| 4. Enrique Cruz | Will call | c/o Plaintiffs' counsel |
| 5. Cindy Polo | Will call | c/o Plaintiffs' counsel |
| 6. Genesis Castilla Falcon | Will call | c/o Plaintiffs' counsel |
| 7. Diana Belbruno | Will call | c/o Plaintiffs' counsel |

| | | |
|---|---|---|
| 8. Jason Poreda | Will call | c/o House's counsel |
| 9. Carolyn Abott (Expert) | Will call | c/o Plaintiffs' counsel |
| 10. Cory McCartan (Expert) | Will call | c/o Plaintiffs' counsel |
| 11. Hannah Walker (Expert) | Will call | c/o Plaintiffs' counsel |
| 12. Sen. Annette Taddeo | Will call | 7351 SW 90th St, Miami, FL |
| 13. Rep. Fentrice Driskell | Will call | 13220 N 56th St Ste A, Temple Terrace, FL |
| 14. Michael Rivero | May call | c/o Plaintiffs' counsel |
| 15. David Brito-Murphy | May call | c/o Plaintiffs' counsel |
| 16. Rep. Anna Eskamani | May call | 1507 E Concord St, Orlando, FL |
| **Defendants' Witnesses** | | |
| **Name** | **Likelihood of Testifying** | **Address** |
| 1. Jason Poreda | Will call | c/o undersigned counsel for the House |
| 2. Sean P. Trende, Ph.D. (Expert) | Will call | c/ undersigned counsel for Defendants |
| 3. Alfredo L. Gonzalez, Esq. (Expert) | Will call | c/o undersigned counsel for Defendants |
| 4. Alina Garcia | May call | 2700 NW 87th Ave, Miami, FL |
| 5. Records Custodian for the House | May call | c/o undersigned counsel for the House |
| 6. Records Custodian for the Secretary | May call | c/o counsel for the Secretary |
| 7. Records Custodian for Engage Miami, Inc. | May call | c/o counsel for Plaintiffs |
| 8. Records Custodian for Cubanos Pa'Lante | May call | c/o counsel for Plaintiffs |
| 9. Records Custodian for FIU ACLU Club | May call | c/o counsel for Plaintiffs |
| 10. Any witnesses required to authenticate documents at trial | May call | |

The parties designate the following deposition testimony of Xavier Pichs as corporate representative of the Miami-Dade County Supervisor of Elections Office, and will jointly file a notice attaching the transcript with the designated testimony highlighted.

Plaintiffs: 5:18–6:5, 18:7–19:15, 25:18–26:1, 27:6–28:18, 30:21–33:2, 46:19–47:10, 51:10–22, 56:19–57:20, 60:3–61:13, 63:19–64:10, 65:5–67:21, 68:19–73:15, 93:12–95:17, 104:4–

107:5, 109:6–110:17, 111:12–113:4, 114:20–119:22, 124:19–125:13.

Defendants: 4:13–16, 21:2–9, 22:12–23:2, 33:3–36:9, 36:17–42:14, 43:13–45:2, 47:11–21, 52:5–53:8, 55:6–56:6, 61:14–22, 67:22–68:9, 75:22–93:11, 97:15–101:3, 107:19–109:5, 113:12–114:10.

Each side reserves the right to call and cross-examine any witnesses listed on the other side's witness list and any other witnesses necessary for rebuttal or impeachment purposes.

**(11) Estimated trial time:** 5 days.

**(12) Where attorney's fees may be awarded to the prevailing party, an estimate of each party as to the maximum amount properly allowable:**

Plaintiffs estimate their attorneys' fees through the end of trial will be $3.2 million.

Respectfully submitted December 19, 2025,

Andrew Frackman*
**O'Melveny & Myers LLP**
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
(212) 326-2000
afrackman@omm.com

Brian P. Quinn*
Patrick J. Jones*
Emily Murphy*
Gabrielle S. Jackson*
Helena M. Li*
**O'Melveny & Myers LLP**
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
bquinn@omm.com
pjones@omm.com
emurphy@omm.com
gjackson@omm.com
hli@omm.com

/s/ Nicholas L.V. Warren
Nicholas L.V. Warren (FBN 1019018)
Caroline A. McNamara (FBN 1038312)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-1769
nwarren@aclufl.org
cmcnamara@aclufl.org
dtilley@aclufl.org

Jorge L. Vasquez, Jr.*
**Vasquez Attorneys at Law, PC**
141 Parkway Road, Suite 14
Bronxville, NY 10708
(212) 752-8408
jorge@vasquezpc.com

*Admitted pro hac vice

Counsel for Plaintiffs

| | |
|---|---|
| Jesus M. Suarez (FBN 60086)<br>Carmen Manrara Cartaya (FBN 73887)<br>Jennifer Marie Hernandez (FBN 1018836)<br>**Continental PLLC**<br>245 Alcazar Avenue<br>Coral Gables, FL 33134<br>(305) 677-2707<br>jsuarez@continentalpllc.com<br>ccartaya@continentalpllc.com<br>jhernandez@continentalpllc.com<br><br>Christopher M. Kise (FBN 855545)<br>**Continental PLLC**<br>101 North Monroe Street, Suite 750<br>Tallahassee, FL 32301<br>(850) 270-2211<br>ckise@continentalpllc.com | /s/ *Andy Bardos*<br>Andy Bardos (FBN 822671)<br>**GrayRobinson, P.A.**<br>301 South Bronough Street, Suite 600<br>Tallahassee, FL 32301<br>(850) 577-9090<br>andy.bardos@gray-robinson.com |

*Counsel for the House*

| | |
|---|---|
| Bradley R. McVay (FBN 79034)<br>Ashley Davis (FBN 48032)<br>**Florida Department of State**<br>R.A. Gray Building<br>500 South Bronough Street<br>Tallahassee, FL 32399<br>(850) 245-6536<br>brad.mcvay@dos.myflorida.com<br>ashley.davis@dos.myflorida.com | /s/ *Mohammad O. Jazil*<br>Mohammad O. Jazil (FBN 72556)<br>**Holtzman Vogel Baran**<br>**Torchinsky & Josefiak PLLC**<br>119 South Monroe Street, Suite 500<br>Tallahassee, FL 32301<br>(850) 270-5938<br>mjazil@holtzmanvogel.com<br>zbennington@holtzmanvogel.com |

*Counsel for the Secretary*