IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:24-21983-CIVIL BECERRA/TORRES

CUBANOS PA'LANTE, et al.,

    *Plaintiffs*,

v.

FLORIDA HOUSE OF REPRESENTATIVES,
et al.,

    *Defendants*.

_____/

**DEFENDANT SECRETARY OF STATE'S PRE-TRIAL BRIEF**

## Introduction

In the redistricting context, under current Supreme Court precedent, only racial predominance triggers strict scrutiny. *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017). Taking the law as it is, and not as it might be after *Louisiana v. Callais*, Case No. 24-109, the Secretary will prevail at trial. That's because Plaintiffs won't be able to carry their heavy burden of establishing racial predominance. Nor will the direct and circumstantial evidence they marshal be enough to overcome the presumption of legislative good faith to which the State is entitled. Plaintiffs' alternative maps also will not provide the kind of evidence needed to disentangle permissible from impermissible redistricting considerations.

Indeed, Plaintiffs' two most recent alternative maps should be stricken. They are late. They also prejudice the Secretary because there's insufficient time for the Secretary's expert to assess the two new maps (and their supporting data) before responding.

## Racial Predominance

"The Equal Protection Clause prohibits a State, without sufficient justification, from 'seperat[ing] its citizens into different voting districts on the basis of race.'" *Bethune-Hill*, 580 U.S. at 187 (alteration in original) (quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)). This requires a two-step analysis: (1) race must be the predominant factor used to draw the district, and (2) if race predominated, then the city's race-based actions must satisfy strict scrutiny. *See, e.g.*, *Cooper v. Harris*, 581 U.S. 285, 291-92 (2017).

Race predominates when it's "the criterion that" "could not be compromised," *Shaw v. Hunt*, 517 U.S. 899, 907 (1996), *subordinating* race-neutral districting criteria like "compactness, contiguity, and core preservation," *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 7 (2024). Plaintiffs must carry their burden of proving racial predominance through direct evidence, such as explicit legislative language making race predominant, *id.* at 8; circumstantial evidence, such as a district's bizarre shape explained by race alone, *id.* at 8-9; or circumstantial evidence presented through an assessment of the *Arlington Heights* factors, *see Jacksonville Branch of the NAACP v. City of Jacksonville*, 635 F. Supp. 3d 1229, 1244-45 (M.D. Fla. 2022) (collecting cases, including *Hunt v. Cromartie*, 526 U.S. 541, 546 (1999)).

The racial predominance standard is "demanding." *Easley v. Cromartie*, 532 U.S. 234, 241 (2001). It's not enough to show that the redistricting body was "aware of racial demographics," or used race as a criterion. *Miller*, 515 U.S. at 916. And the intentional creation of majority-minority

districts, or districts that perform for certain groups, isn't enough. *See Allen v. Milligan*, 599 U.S. 1, 31-32 (2023); *Bush v. Vera*, 517 U.S. 952, 958-62 (1996) (plurality); *but see League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 517 (2006) (Scalia, J., concurring in judgment in part and dissenting in part) ("[W]hen a legislature intentionally creates a majority-minority district, race is necessarily its predominant motivation and strict scrutiny is therefore triggered.").

### Legislative Good Faith

In addition, given the "sensitive nature of redistricting," *Miller*, 515 U.S. at 916, a "presumption that the legislature acted in good faith" attaches, meaning that there's a presumption race was *not* a predominant motive in the State's decision to draw the challenged districts as it did, *Alexander*, 602 U.S. at 6. This presumption applies at every stage of litigation from the pleadings through trial. *Miller*, 515 U.S. at 916-17. This "especially stringent" presumption "directs district courts to draw the inference that cuts in the legislature's favor when confronted with evidence that could plausibly support multiple conclusions." *Alexander*, 602 U.S. at 10-11; *see also League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1373-74 (11th Cir. 2022) (requiring same when assessing snippets from the record).

At its core, the presumption of good faith "ensures that 'race for its own sake, and not other districting principles, was the legislature's dominant and controlling rationale in drawing its district lines.'" *Alexander*, 602 U.S. at 10 (quoting *Miller*, 515 U.S. at 913). Importantly, the presumption avoids having the judicial branch be "quick to hurl" race-based "accusations at the political branches." *Id.* at 11.

### Alternative Maps

Another proposition that stands out from the Supreme Court's recent decision in *Alexander* is this: The party challenging a map must disentangle permissible from impermissible considerations, and the way to do that is to submit a viable, alternative map. *Id.* at 34-35. Only by disentangling the permissible from the impermissible can the challenger show that a rational legislature had the ability to draw a compliant map. *Id.* The Florida Supreme Court adopted much the same standard for Florida's redistricting-related constitutional provisions. *Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State*, 415 So. 3d 180, 198 (Fla. 2025) ("To establish the invalidity of the Enacted Plan, the plaintiffs bore the burden of proving the possibility

2

of drawing a North Florida district that is both non-diminishing and non-race-predominant. And the plaintiffs had to do so with an alternative map.").

Plaintiffs have provided several alternative maps in this case. None are demonstrably better than the State's maps. And, even if they were slightly better, that doesn't establish racial predominance either. *See, e.g.*, *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026, 1113, 1333 (M.D. Ala. 2017) (three-judge panel).

Two new maps are worth further discussion. On November 26, 2025, Plaintiffs disclosed for the first time new maps from their experts, McCartan and Abott, expressing new opinions on viable alternatives. This Court's order seemingly precluded a motion to strike these belated opinions through a pre-trial motion. *See* Doc.153 at 1-2. But the maps and associated opinions are more than five months late—they fly past the March 21, 2025, initial expert disclosure deadline and the June 20, 2025, rebuttal disclosure deadline. *See* Doc.98 at 1; Doc.101. Because court orders are orders and not mere recommendations, these late disclosures should be stricken. Allowing these late disclosures to stand, and the introduction of the maps as exhibits and opinions at trial, will prejudice the Secretary. His expert would then have to scramble to rebut the evidence.

Regardless, the evidence at trial won't be enough for Plaintiffs to establish racial predominance. The direct and circumstantial evidence, the alternative maps, and the presumption of good faith, all work against Plaintiffs.

## Conclusion

In sum, the evidence at trial won't be sufficient for Plaintiffs to prove their case. The Secretary will thus ask this Court to enter judgment for Defendants.

\*   \*   \*

| | |
|---|---|
| Dated: December 22, 2025 | Respectfully submitted by: |

Ashley Davis (FBN 48032)
  GENERAL COUNSEL
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, FL 32399
(850) 245-6536
ashley.davis@dos.fl.gov

<u>/s/ Mohammad O. Jazil</u>
Mohammad O. Jazil (FBN 72556)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
mjazil@holtzmanvogel.com
zbennington@holtzmanvogel.com

*Counsel for the Secretary*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil