# Journal

# of the

# S E N A T E

# State of Florida



SPECIAL SESSION C

April 19 - 22, 2022

At a Special Session of the Legislature convened by proclamations
of The Honorable Ron DeSantis, Governor, State of Florida

EXHIBIT
J26

# MEMBERS OF THE SENATE
*(24 Republicans, 16 Democrats)*

## SPECIAL SESSION C
### April 19-22, 2022

**District 1:** Doug Broxson (R), Pensacola**
Escambia, Santa Rosa, and part of Okaloosa

**District 2:** George B. Gainer (R), Panama City*
Bay, Holmes, Jackson, Walton, Washington, and part of Okaloosa

**District 3:** Loranne Ausley (D), Tallahassee**
Calhoun, Franklin, Gadsden, Gulf, Hamilton, Jefferson, Leon, Liberty, Madison, Taylor, and Wakulla

**District 4:** Aaron Bean (R), Fernandina Beach*
Nassau and part of Duval

**District 5:** Jennifer Bradley (R), Fleming Island**
Baker, Bradford, Clay, Columbia, Dixie, Gilchrist, Lafayette, Levy, Suwannee, Union, and part of Marion

**District 6:** Audrey Gibson (D), Jacksonville*
Part of Duval

**District 7:** Travis Hutson (R), St. Augustine**
Flagler, St. Johns, and part of Volusia

**District 8:** Keith Perry (R), Gainesville*
Alachua, Putnam, and part of Marion

**District 9:** Jason Brodeur (R), Sanford**
Seminole and part of Volusia

**District 10:** Wilton Simpson (R), Trilby*
Citrus, Hernando, and part of Pasco

**District 11:** Randolph Bracy (D), Ocoee**
Part of Orange

**District 12:** Dennis Baxley (R), Ocala*
Sumter and parts of Lake and Marion

**District 13:** Linda Stewart (D), Orlando**
Part of Orange

**District 14:** Tom A. Wright (R), New Smyrna Beach*
Parts of Brevard and Volusia

**District 15:** Victor M. Torres, Jr. (D), Orlando**
Osceola and part of Orange

**District 16:** Ed Hooper (R), Clearwater*
Parts of Pasco and Pinellas

**District 17:** Debbie Mayfield (R), Melbourne**
Indian River and part of Brevard

**District 18:** Janet Cruz (D), Tampa*
Part of Hillsborough

**District 19:** Darryl Ervin Rouson (D), St. Petersburg**
Parts of Hillsborough and Pinellas

**District 20:** Danny Burgess (R), Zephyrhills***
Parts of Hillsborough, Pasco, and Polk

**District 21:** Jim Boyd (R), Bradenton**
Manatee and part of Hillsborough

**District 22:** Kelli Stargel (R), Lakeland*
Parts of Lake and Polk

**District 23:** Joe Gruters (R), Sarasota**
Sarasota and part of Charlotte

**District 24:** Jeff Brandes (R), St. Petersburg*
Part of Pinellas

**District 25:** Gayle Harrell (R), Stuart**
Martin, St. Lucie, and part of Palm Beach

**District 26:** Ben Albritton (R), Wauchula*
DeSoto, Glades, Hardee, Highlands, Okeechobee, and parts of Charlotte, Lee, and Polk

**District 27:** Ray Wesley Rodrigues (R), Estero**
Part of Lee

**District 28:** Kathleen Passidomo (R), Naples*
Collier, Hendry, and part of Lee

**District 29:** Tina Scott Polsky (D), Boca Raton**
Parts of Broward and Palm Beach

**District 30:** Bobby Powell (D), West Palm Beach*
Part of Palm Beach

**District 31:** Lori Berman (D), Lantana**
Part of Palm Beach

**District 32:** Lauren Book (D), Plantation*
Part of Broward

**District 33:** Rosalind Osgood (D), Fort Lauderdale****
Part of Broward

**District 34:** Gary M. Farmer, Jr. (D), Lighthouse Point*
Part of Broward

**District 35:** Shevrin D. "Shev" Jones (D), West Park**
Parts of Broward and Miami-Dade

**District 36:** Manny Diaz, Jr. (R), Hialeah*
Part of Miami-Dade

**District 37:** Ileana Garcia (R), Miami**
Part of Miami-Dade

**District 38:** Jason W. B. Pizzo (D), North Miami Beach*
Part of Miami-Dade

**District 39:** Ana Maria Rodriguez (R), Miami**
Monroe and part of Miami-Dade

**District 40:** Annette Taddeo (D), Miami*
Part of Miami-Dade

\* Holdovers
\*\* Elected General Election, November 3, 2020, for a term of 2 years
\*\*\* Elected Special General Election, November 3, 2020, for a term of 2 years
\*\*\*\* Elected Special Election, March 8, 2022, to fill a vacancy for remainder of term

---

### OFFICERS OF THE SENATE

Wilton Simpson, *President*
Aaron Bean, *President Pro Tempore*
Debbie Mayfieled, *Majority (Republican) Leader*
Lauren Book, *Minority (Democratic) Leader*

### Nonmember Elected Officer

Debbie Brown, *Secretary of the Senate*

## MEMBERS AND OFFICERS OF THE SENATE
## THE 2020-2022 FLORIDA SENATE

**President**



Wilton Simpson (R)
Trilby
District 10

**President Pro Tempore**



Aaron Bean (R)
Fernandina Beach
District 4

**Majority (Republican) Leader**



Debbie Mayfield (R)
Melbourne
District 17

**Minority (Democratic) Leader**



Lauren Book (D)
Plantation
District 32



Ben Albritton (R)
Wauchula
District 26



Loranne Ausley (D)
Tallahassee
District 3



Dennis Baxley (R)
Ocala
District 12



Lori Berman (D)
Lantana
District 31



Jim Boyd (R)
Bradenton
District 21



Randolph Bracy (D)
Ocoee
District 11



Jennifer Bradley (R)
Fleming Island
District 5



Jeff Brandes (R)
St. Petersburg
District 24



Jason Brodeur (R)
Sanford
District 9



Doug Broxson (R)
Pensacola
District 1



Danny Burgess (R)
Zephyrhills
District 20



Janet Cruz (D)
Tampa
District 18



Manny Diaz, Jr. (R)
Hialeah
District 36



Gary M. Farmer, Jr. (D)
Lighthouse Point
District 34



George B. Gainer (R)
Panama City
District 2



Ileana Garcia (R)
Miami
District 37



Audrey Gibson (D)
Jacksonville
District 6



Joe Gruters (R)
Sarasota
District 23



Gayle Harrell (R)
Stuart
District 25



Ed Hooper (R)
Clearwater
District 16

## MEMBERS AND OFFICERS OF THE SENATE
## THE 2020-2022 FLORIDA SENATE


Travis Hutson (R)
St. Augustine
District 7


Shevrin D. "Shev" Jones (D)
West Park
District 35


Rosalind Osgood (D)
Fort Lauderdale
District 33


Kathleen Passidomo (R)
Naples
District 28


Keith Perry (R)
Gainesville
District 8


Jason W. B. Pizzo (D)
North Miami Beach
District 38


Tina Scott Polsky (D)
Boca Raton
District 29


Bobby Powell (D)
West Palm Beach
District 30


Ray Wesley Rodrigues (R)
Estero
District 27


Ana Maria Rodriguez (R)
Miami
District 39


Darryl Ervin Rouson (D)
St. Petersburg
District 19


Kelli Stargel (R)
Lakeland
District 22


Linda Stewart (D)
Orlando
District 13


Annette Taddeo (D)
Miami
District 40


Victor M. Torres, Jr. (D)
Orlando
District 15


Tom A. Wright (R)
New Smyrna Beach
District 14

Includes new member in District 33 elected at a special election on March 8, 2022

**Nonmember Elected Officer**


Debbie Brown
Secretary of the Senate


Damien Kelly
Sergeant at Arms



# Journal of the Senate

**Number 1—Special Session C**                  **Tuesday, April 19, 2022**

At a Special Session of the Florida Legislature convened under Article III, Section 3 of the Constitution of the State, as revised in 1968, and subsequently amended, at the Capitol, in the City of Tallahassee, on Tuesday, April 19, 2022, in the State of Florida.

## CONTENTS

Call to Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3
Certificate Received . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
Committees of the Senate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Election of Senator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Introduction and Reference of Bills . . . . . . . . . . . . . . . . . . . . . . . . 3
Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
Oath of Office Administered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Proclamation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
Recess . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3
Reports of Committees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Special Guests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
Special Order Calendar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Vetoed Bills . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## CALL TO ORDER

The Senate was called to order by President Simpson at 12:30 p.m. A quorum present—34:

| | | |
|---|---|---|
| Mr. President | Burgess | Osgood |
| Albritton | Cruz | Passidomo |
| Baxley | Diaz | Pizzo |
| Bean | Farmer | Polsky |
| Berman | Gainer | Powell |
| Book | Garcia | Rodrigues |
| Boyd | Gibson | Rouson |
| Bracy | Harrell | Stargel |
| Bradley | Hooper | Stewart |
| Brandes | Hutson | Torres |
| Brodeur | Jones | |
| Broxson | Mayfield | |

Excused: Senators Ausley, Gruters, Perry, and Wright

## PRAYER

The following prayer was offered by Senator Hooper:

Glorious Heavenly Father, thank you for this beautiful day you've created. We come to you today asking for your guidance, wisdom, and support as we begin and complete our work this week. Help us engage in meaningful discussion and debate. Remind us often that even though we have differences of political nature, we are the Senate family.

Lord, we pray for peace around the world. Please protect our military, our first responders, their families, and, Lord, protect our families. Thank you, Lord, for the privilege of serving Florida. We ask all these things in your holy name. Amen.

## PLEDGE

Senator Jones led the Senate in the Pledge of Allegiance to the flag of the United States of America.

## ELECTION OF SENATOR ROSALIND OSGOOD

### SPECIAL GUESTS

The President recognized Senator Osgood's daughter, Shennette Sparkes and son-in-law, Pastor Germaine Sparkes; son, Anthony Sheffield; grandchildren, Kyla and Gabriel Sparkes; and cousins, Trey Seay, Cheryl Lewis, and Sharon Barrian, who were present in the chamber. The President recognized Mickey Clayton, Senator Osgood's former FAMU basketball coach, and members of her sorority, Alpha Kappa Alpha, who were present in the gallery.

### OATH OF OFFICE ADMINISTERED

Senator Osgood was joined by her granddaughter, Kyla Sparkes, at the bar of the Senate where she was administered the oath of office by her son-in-law, Pastor Germaine Sparkes.

### CERTIFICATE RECEIVED

The Secretary announced The Honorable Laurel M. Lee, Secretary of State, had certified to the election of one Senator as follows:

### STATE OF FLORIDA
### DEPARTMENT OF STATE

I, **Laurel M. Lee**, Secretary of State of the State of Florida, do hereby certify that the following candidates were duly elected at the Special Election held on the 8th day of March, A.D., 2022, to the office of Member, State Senate, as shown by the records of this office:

| SENATE DISTRICT | ELECTED SENATOR |
|---|---|
| 33 | Rosalind Osgood |



GIVEN under my hand and the Great Seal of the State of Florida, at Tallahassee, the Capital, this 22nd day of March, A.D., 2022.

*Laurel M. Lee*
Secretary of State

By direction of the President, the Secretary read the following proclamations:

## PROCLAMATION

STATE OF FLORIDA

EXECUTIVE OFFICE OF THE GOVERNOR

TALLAHASSEE

TO THE HONORABLE MEMBERS OF THE
FLORIDA SENATE AND HOUSE OF REPRESENTATIVES

WHEREAS, Article III, Section 3 of the Florida Constitution permits the Governor to convene the Legislature in Special Session during which only such legislative business may be transacted as is within the purview of this Proclamation, or of a communication from the Governor, or as is introduced by consent of two-thirds of the membership of each house of the Legislature; and

WHEREAS, Article III, Section 3 of the Florida Constitution limits the duration of a Special Session to twenty (20) consecutive days; and

WHEREAS, on March 29, 2022, the Legislature presented to me CS/SB 102, an act relating to establishing the congressional districts of the State of Florida; and

WHEREAS, on March 29, 2022, pursuant to Article III, Section 8 of the Florida Constitution, I vetoed and transmitted my objection to CS/SB 102; and

WHEREAS, redistricting is primarily the duty and responsibility of the states, *see* U.S. Const. art. I, § 4, cl. 1; and

WHEREAS, the Legislature and Governor have an obligation every ten years to redraw Florida's congressional districts consistent with the most recent decennial census, *see* 2 U.S.C. §§ 2a-2c, and the one-person, one-vote requirement of the U.S. Constitution, *see Kirkpatrick v. Preisler,* 394 U.S. 526, 530-31 (1969); and

WHEREAS, the 2020 Census resulted in the apportionment to Florida of 28 representatives to the U.S. House of Representatives; and

WHEREAS, based on statewide population growth, the State of Florida gained an additional congressional seat when compared to the 2010 Census; and

WHEREAS, the qualifying period for election to the U.S. House of Representatives is June 13, 2022, to June 17, 2022, pursuant to Florida law; and

WHEREAS, the failure to redistrict the congressional districts of the State of Florida could result in confusion and chaos in the administration of Florida's congressional elections.

NOW, THEREFORE, I, RON DESANTIS, Governor of the State of Florida, by virtue of the power and authority vested in me by Article III, Section 3(c)(l) of the Florida Constitution, do hereby proclaim as follows:

Section 1. The Legislature of the State of Florida is convened in Special Session commencing at 12:00 p.m., Tuesday, April 19, 2022, and extending no later than 11:59 p.m., Friday, April 22, 2022.

Section 2. The Legislature of the State of Florida is convened in Special Session for the sole and exclusive purpose of considering legislation relating to the establishment of congressional districts for the State of Florida and any legal challenges thereto, including the appropriation of additional funding for pending and prospective redistricting litigation.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed to this Proclamation convening the Legislature in Special Session at the Capitol, this 29th day of March, 2022.

*Ron DeSantis*
GOVERNOR

ATTEST:

*Laurel M. Lee*
SECRETARY OF STATE

## PROCLAMATION

STATE OF FLORIDA

EXECUTIVE OFFICE OF THE GOVERNOR

TALLAHASSEE

TO THE HONORABLE MEMBERS OF THE
FLORIDA SENATE AND HOUSE OF REPRESENTATIVES

WHEREAS, the Florida Constitution of 1885 did not prohibit special laws granting privileges to private corporations; and

WHEREAS, the Florida Constitution was revised by the Florida electorate on November 5, 1968; and

WHEREAS, the Florida Constitution of 1968 generally disfavors special laws as opposed to general laws, but permits the creation of independent special districts that appropriately serve the public interest; and

WHEREAS, Article III, Section 11(a)(12) of the Florida Constitution of 1968 prohibits special laws granting privileges to private corporations; and

WHEREAS, independent special districts exist that were established prior to November 5, 1968, and that have not been re-established, ratified, or otherwise reconstituted by a special act or general law after November 5, 1968; and

WHEREAS, it is necessary to review such independent special districts to ensure that they are appropriately serving the public interest; and

WHEREAS, it is also necessary to consider whether such independent special districts should be subject to the special law requirements of the Florida Constitution of 1968; and

WHEREAS, it is further necessary to periodically review exceptions to generally applicable laws that are given to select corporations; and

WHEREAS, on May 24, 2021, Florida enacted the first-of-its-kind law to protect consumers from arbitrary censorship by social media platforms; and

WHEREAS, the law, Section 501.2041, Florida Statutes, exempts any company that owns and operates a theme park or entertainment complex from the definition of a "social media platform"; and

WHEREAS, on June 30, 2021, a federal court temporarily enjoined Section 501.2041, Florida Statutes, in part because such exemption would likely not survive under the First Amendment; and

WHEREAS, the federal court questioned whether it could sever the exemption for theme parks and entertainment complexes because the court concluded that (i) the Legislature was "apparently unwilling to subject favored Florida businesses to the statutes' onerous regulatory burdens" and (ii) the court could not "impose these burdens on the statutorily excluded entities when the Legislature has not passed, and the Governor has not signed, a statute subjecting these entities to these requirements," *NetChoice, LLC v. Moody,* 546 F. Supp. 3d 1082, 1094 (N.D. Fla. 2021); and

WHEREAS, Florida appealed this ruling to the United States Court of Appeals for the Eleventh Circuit in Case No. 21-12355; and

WHEREAS, oral argument before the Eleventh Circuit is scheduled to occur on April 28, 2022, and Florida must prevail in its position that a state can regulate the arbitrary and inconsistent censorship practices of social media platforms due to the platforms' unprecedented power over the free flow of information and ideas; and

WHEREAS, the law's exemption for theme parks and entertainment complexes is severable from and unnecessary to effectuate the law regulating social media platforms; and

WHEREAS, the Legislature should make clear that Florida intends to continue to protect consumers from the arbitrary and inconsistent

censorship of social media platforms in a viewpoint-neutral manner; and

WHEREAS, I have called a Special Session commencing at 12:00 p.m., Tuesday, April 19, 2022, and extending no later than 11:59 p.m., Friday, April 22, 2022; and

WHEREAS, it is prudent to expand the call for this Special Session.

NOW, THEREFORE, I, RON DESANTIS, Governor of the State of Florida, by virtue of the power and authority vested in me by Article III, Section 3(c)(l) of the Florida Constitution, do hereby proclaim as follows:

Section 1. The call to the Legislature of the State of Florida for this Special Session is expanded for the sole purpose of considering (a) legislation relating to independent special districts, and (b) legislation to amend Section 501.2041, Florida Statutes.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed to this Proclamation expanding the call to the Legislature in Special Session at the Capitol, this 19th day of April, 2022.

*Ron DeSantis*
GOVERNOR

ATTEST:

*Laurel M. Lee*
SECRETARY OF STATE

### INTRODUCTION AND REFERENCE OF BILLS INSIDE THE CALL

**FIRST READING**

By Senator Rodrigues—

**SB 2-C**—A bill to be entitled An act establishing the congressional districts of the state; amending s. 8.0001, F.S.; adopting the United States Decennial Census of 2020 as the official census of the state for use in redistricting the state's congressional districts; defining terms; amending s. 8.0002, F.S.; redistricting the state's congressional districts in accordance with the United States Decennial Census of 2020 (plan P000C0109); amending s. 8.0111, F.S.; providing for the inclusion of unlisted territory in contiguous districts in accordance with figures from the United States Decennial Census of 2020; reenacting s. 8.031, F.S., relating to the election of representatives to Congress; creating s. 8.051, F.S.; specifying that certain electronic maps serve as the official maps of the congressional districts of the state; providing for construction; requiring such maps to be made available to the public by the Office of Economic and Demographic Research within a specified timeframe; reenacting s. 8.0611, F.S., relating to severability; amending s. 8.07, F.S.; providing for applicability; repealing ss. 8.08, 8.081, 8.082, 8.083, 8.084, 8.085, 8.086, 8.087, and 8.088, F.S.; deleting obsolete and superseded provisions relating to congressional districts enacted in Special Session A of the 2014 Legislature; providing effective dates.

—was referred to the Committee on Reapportionment.

By Senator Bradley—

**SB 4-C**—A bill to be entitled An act relating to independent special districts; amending s. 189.0311, F.S.; dissolving certain independent special districts; authorizing the reestablishment of certain independent special districts; providing an effective date.

—was referred to the Committee on Community Affairs.

By Senator Bradley—

**SB 6-C**—A bill to be entitled An act relating to social media platforms; amending s. 501.2041, F.S.; revising the definition of the term "social media platform"; reenacting ss. 106.072(1)(c) and 287.137(1)(f), F.S., relating to social media deplatforming of political candidates and antitrust violations, denial or revocation of the right to transact business with public entities, and denial of economic benefits, respectively, to incorporate the amendment made to s. 501.2041, F.S., in references thereto; providing an effective date.

—was referred to the Committee on Community Affairs.

### MOTIONS

On motion by Senator Passidomo, the rules were waived and the following bills were placed on the Special Order Calendar this day: **SB 2-C**, **SB 4-C**, and **SB 6-C**.

### RECESS

On motion by Senator Passidomo, the Senate stood in recess at 1:07 p.m. for the purpose of holding committee meetings and conducting other Senate business to reconvene at 5:00 p.m., or upon call of the President.

### EVENING SESSION

The Senate was called to order by President Simpson at 5:27 p.m. A quorum present—39:

| | | |
|---|---|---|
| Mr. President | Burgess | Osgood |
| Albritton | Cruz | Passidomo |
| Ausley | Diaz | Perry |
| Baxley | Farmer | Pizzo |
| Bean | Gainer | Polsky |
| Berman | Garcia | Powell |
| Book | Gibson | Rodrigues |
| Boyd | Gruters | Rodriguez |
| Bracy | Harrell | Rouson |
| Bradley | Hooper | Stargel |
| Brandes | Hutson | Stewart |
| Brodeur | Jones | Torres |
| Broxson | Mayfield | Wright |

### SPECIAL ORDER CALENDAR

**MOTIONS**

Senator Passidomo moved **SB 2-C** be read the second time by two-thirds vote as required by Article III, Section 7 of the Florida Constitution. The motion was adopted.

**SB 2-C**—A bill to be entitled An act establishing the congressional districts of the state; amending s. 8.0001, F.S.; adopting the United States Decennial Census of 2020 as the official census of the state for use in redistricting the state's congressional districts; defining terms; amending s. 8.0002, F.S.; redistricting the state's congressional districts in accordance with the United States Decennial Census of 2020 (plan P000C0109); amending s. 8.0111, F.S.; providing for the inclusion of unlisted territory in contiguous districts in accordance with figures from the United States Decennial Census of 2020; reenacting s. 8.031, F.S., relating to the election of representatives to Congress; creating s. 8.051, F.S.; specifying that certain electronic maps serve as the official maps of the congressional districts of the state; providing for construction; requiring such maps to be made available to the public by the Office of Economic and Demographic Research within a specified timeframe; reenacting s. 8.0611, F.S., relating to severability; amending s. 8.07, F.S.; providing for applicability; repealing ss. 8.08, 8.081, 8.082, 8.083, 8.084, 8.085, 8.086, 8.087, and 8.088, F.S.; deleting obsolete and superseded provisions relating to congressional districts enacted in Special Session A of the 2014 Legislature; providing effective dates.

—was read the second time by title.

On motion by Senator Rodrigues, further consideration of **SB 2-C** was deferred.

**MOTIONS**

Senator Passidomo moved **SB 4-C** be read the second time by two-thirds vote as required by Article III, Section 7 of the Florida Constitution. The motion was adopted.

**SB 4-C**—A bill to be entitled An act relating to independent special districts; amending s. 189.0311, F.S.; dissolving certain independent special districts; authorizing the reestablishment of certain independent special districts; providing an effective date.

—was read the second time by title.

On motion by Senator Bradley, further consideration of **SB 4-C** was deferred.

**MOTIONS**

Senator Passidomo moved **SB 6-C** be read the second time by two-thirds vote as required by Article III, Section 7 of the Florida Constitution. The motion was adopted.

**SB 6-C**—A bill to be entitled An act relating to social media platforms; amending s. 501.2041, F.S.; revising the definition of the term "social media platform"; reenacting ss. 106.072(1)(c) and 287.137(1)(f), F.S., relating to social media deplatforming of political candidates and antitrust violations, denial or revocation of the right to transact business with public entities, and denial of economic benefits, respectively, to incorporate the amendment made to s. 501.2041, F.S., in references thereto; providing an effective date.

—was read the second time by title.

On motion by Senator Bradley, further consideration of **SB 6-C** was deferred.

On motion by Senator Rodrigues, the Senate resumed consideration of—

**SB 2-C**—A bill to be entitled An act establishing the congressional districts of the state; amending s. 8.0001, F.S.; adopting the United States Decennial Census of 2020 as the official census of the state for use in redistricting the state's congressional districts; defining terms; amending s. 8.0002, F.S.; redistricting the state's congressional districts in accordance with the United States Decennial Census of 2020 (plan P000C0109); amending s. 8.0111, F.S.; providing for the inclusion of unlisted territory in contiguous districts in accordance with figures from the United States Decennial Census of 2020; reenacting s. 8.031, F.S., relating to the election of representatives to Congress; creating s. 8.051, F.S.; specifying that certain electronic maps serve as the official maps of the congressional districts of the state; providing for construction; requiring such maps to be made available to the public by the Office of Economic and Demographic Research within a specified timeframe; reenacting s. 8.0611, F.S., relating to severability; amending s. 8.07, F.S.; providing for applicability; repealing ss. 8.08, 8.081, 8.082, 8.083, 8.084, 8.085, 8.086, 8.087, and 8.088, F.S.; deleting obsolete and superseded provisions relating to congressional districts enacted in Special Session A of the 2014 Legislature; providing effective dates.

—which was previously read this day.

Senator Rodrigues moved the following amendment which was adopted:

**Amendment 1 (470444) (with title amendment)**—Between lines 3568 and 3569 insert:

Section 7. Effective upon becoming a law, section 8.062, Florida Statutes, is created to read:

8.062 Limitation on choice of venue for actions challenging congressional districts.—Notwithstanding any other provision of law, state court actions challenging the state's congressional districts shall be brought only in Leon County.

Section 8. Effective upon becoming a law, section 8.063, Florida Statutes, is created to read:

8.063 Limitations on actions challenging congressional districts.—

(1) Actions challenging the state's congressional districts on state constitutional or state law grounds shall be brought exclusively in state court.

(2) A state court action challenging the state's congressional districts may raise any state constitutional or state law claims, and any federal constitutional or federal law claims, regarding the state's congressional districts that are within the jurisdiction of the circuit court.

(3) Nothing within this section shall be construed to preclude federal courts from deciding actions challenging the state's congressional districts on federal constitutional or federal law grounds.

And the title is amended as follows:

Delete line 21 and insert: F.S., relating to severability; creating s. 8.062, F.S.; requiring actions challenging the state's congressional districts to be brought in a specific venue; creating s. 8.063, F.S.; specifying limitations for actions challenging the state's congressional districts; providing for construction; amending s. 8.07,

The vote was:

Yeas—24

| | | |
|---|---|---|
| Mr. President | Broxson | Hutson |
| Albritton | Burgess | Mayfield |
| Baxley | Diaz | Passidomo |
| Bean | Gainer | Perry |
| Boyd | Garcia | Rodrigues |
| Bradley | Gruters | Rodriguez |
| Brandes | Harrell | Stargel |
| Brodeur | Hooper | Wright |

Nays—13

| | | |
|---|---|---|
| Ausley | Farmer | Rouson |
| Berman | Gibson | Stewart |
| Book | Pizzo | Torres |
| Bracy | Polsky | |
| Cruz | Powell | |

Vote after roll call:

Nay—Osgood

**SENATOR BEAN PRESIDING**

**MOTIONS**

On motion by Senator Passidomo, the rules were waived and the time of adjournment was extended until completion of today's order of business.

Senator Stargel moved the following amendment which was adopted:

**Amendment 2 (916844) (with title amendment)**—Between lines 3578 and 3579 insert:

Section 9. If any provision of this act is held invalid with respect to any person or circumstance, or if any congressional districts established in this act are held invalid, the invalidity does not affect other provisions or applications of the act or any other districts established in this act which can be given effect without the invalid provision or application, and to this end the provisions of this act are severable. This section shall take effect upon this act becoming a law.

Section 10. For the 2021-2022 fiscal year, the nonrecurring sum of $1 million from the General Revenue Fund is appropriated to the Depart-

ment of State for any litigation expenses relating to legal challenges pertaining to the establishment of congressional districts for the State of Florida. Any unexpended balance of these funds as of June 30, 2022, shall revert and is appropriated for the 2022-2023 fiscal year to the Department of State for the same purpose. This section shall take effect upon this act becoming a law.

And the title is amended as follows:

Between lines 26 and 27 insert:  providing for severability; providing an appropriation;

**THE PRESIDENT PRESIDING**

**SENATOR BEAN PRESIDING**

Pursuant to Rule 4.19, **SB 2-C**, as amended, was ordered engrossed and then placed on the calendar of Bills on Third Reading.

On motion by Senator Bradley, the Senate resumed consideration of—

**SB 4-C**—A bill to be entitled An act relating to independent special districts; amending s. 189.0311, F.S.; dissolving certain independent special districts; authorizing the reestablishment of certain independent special districts; providing an effective date.

—which was previously read this day.

Pursuant to Rule 7.1, there being no objection, consideration of the following late-filed amendment was allowed:

Senator Farmer moved the following amendment which failed:

**Amendment 1 (945716) (with title amendment)**—Delete everything after the enacting clause and insert:

Section 1.  *(1)  The Office of Program Policy Analysis and Government Accountability (OPPAGA) shall conduct a study to determine the full impact on state and local governments and the private sector if each independent special district established by a special act prior to the date of ratification of the Florida Constitution on November 5, 1968, and which was not reestablished, re-ratified, or otherwise reconstituted by a special act or general law after November 5, 1968, is dissolved by general law.*

*(2)  OPPAGA shall submit a report on its findings to the President of the Senate and the Speaker of the House of Representatives by December 31, 2022.*

Section 2.  This act shall take effect upon becoming a law.

And the title is amended as follows:

Delete everything before the enacting clause and insert:  A bill to be entitled An act relating to independent special districts; requiring the Office of Program Policy Analysis and Government Accountability (OPPAGA) to conduct a study to determine certain impacts if certain independent special districts are dissolved by general law; requiring OPPAGA to submit a report to the Legislature by a certain date; providing an effective date.

The vote was:

Yeas—16

| | | |
|---|---|---|
| Ausley | Farmer | Powell |
| Berman | Gibson | Rouson |
| Book | Jones | Stewart |
| Bracy | Osgood | Torres |
| Brandes | Pizzo | |
| Cruz | Polsky | |

Nays—23

| | | |
|---|---|---|
| Mr. President | Burgess | Mayfield |
| Albritton | Diaz | Passidomo |
| Baxley | Gainer | Perry |
| Bean | Garcia | Rodrigues |
| Boyd | Gruters | Rodriguez |
| Bradley | Harrell | Stargel |
| Brodeur | Hooper | Wright |
| Broxson | Hutson | |

**THE PRESIDENT PRESIDING**

Pursuant to Rule 4.19, **SB 4-C** was placed on the calendar of Bills on Third Reading.

On motion by Senator Bradley, the Senate resumed consideration of—

**SB 6-C**—A bill to be entitled An act relating to social media platforms; amending s. 501.2041, F.S.; revising the definition of the term "social media platform"; reenacting ss. 106.072(1)(c) and 287.137(1)(f), F.S., relating to social media deplatforming of political candidates and antitrust violations, denial or revocation of the right to transact business with public entities, and denial of economic benefits, respectively, to incorporate the amendment made to s. 501.2041, F.S., in references thereto; providing an effective date.

—which was previously read this day.

Pursuant to Rule 7.1, there being no objection, consideration of the following late-filed amendment was allowed:

Senator Farmer moved the following amendment which failed:

**Amendment 1 (778976)**—Delete line 37 and insert:
The term does not include *a platform that allows user interaction that is solely limited to feedback related to host-provided media content.* ~~any information service, system,~~

Pursuant to Rule 4.19, **SB 6-C** was placed on the calendar of Bills on Third Reading.

## REPORTS OF COMMITTEES

The Committee on Community Affairs recommends the following pass: SB 4-C; SB 6-C

The Committee on Reapportionment recommends the following pass: SB 2-C

**The bills were placed on the Calendar.**

## MESSAGES FROM THE GOVERNOR AND OTHER EXECUTIVE COMMUNICATIONS

**VETOED BILLS 2022 REGULAR SESSION**

Secretary Laurel Lee                                                                          March 29, 2022
Secretary of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399

Dear Secretary Lee:

By the authority vested in me as Governor of the State of Florida, under the provisions of Article III, Section 8 of the Constitution of Florida, I do hereby veto and transmit my objection to CS/SB 102, enacted during the 124th Session of the Legislature of Florida, during Regular Session 2022 and entitled:

**An act relating to establishing the congressional districts of the state**

As presented in both the primary and secondary maps enacted by the Legislature, Congressional District 5 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution for the reasons set forth in the attached memorandum. Although I understand the Legislature's desire to comply with the Florida Constitution, the Legislature is not absolved of its duty to comply with the U.S. Constitution. Where the U.S. and Florida Constitutions conflict, the U.S. Constitution must prevail.

Accordingly, I withhold my approval of CS/SB 102 and do hereby veto the same.

Sincerely,

*Ron DeSantis*
Governor

**The bill, together with the Governor's objections thereto, was referred to the Committee on Rules.**

MEMORANDUM

To: Ron DeSantis, Governor of Florida
From: Ryan Newman, General Counsel, Executive Office of the Governor
Date: March 29, 2022
Re: Constitutionality of CS/SB 102, An Act Relating to Establishing the Congressional Districts of the State

Congressional District 5 in both the primary and secondary maps enacted by the Legislature violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution because it assigns voters primarily on the basis of race but is not narrowly tailored to achieve a compelling state interest.

"Just as the State may not, absent extraordinary justification, segregate citizens on the basis of race in its public parks, buses, golf courses, beaches, and schools," the U.S. Supreme Court has made clear that the State also "may not separate its citizens into different voting districts on the basis of race." *Miller v. Johnson,* 515 U.S. 900, 911 (1995) (internal citations omitted). "When the State assigns voters on the basis of race," the Court explained, "it engages in the offensive and demeaning assumption that voters of a particular race, because of their race, 'think alike, share the same political interests, and will prefer the same candidates at the polls.'" *Id.* at 911-12 (quoting *Shaw v. Reno,* 509 U.S. 630, 647 (1993)).

For these reasons, the Court has interpreted the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution to prohibit state legislatures from using race as the "predominant factor motivating [their] decision to place a significant number of voters within or without a particular district," *id.* at 916, unless they can prove that their "race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end," *Cooper v. Harris,* 137 S. Ct. 1455, 1464 (2017) (citation omitted). That race was the predominant factor motivating a legislature's line-drawing decision can be shown "either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose." *Miller,* 515 U.S. at 916.

Although non-adherence to traditional districting principles, which results in anon-compact, unusually shaped district, is relevant evidence that race was the predominant motivation of a legislature, such evidence is not required to establish a constitutional violation. "Race may predominate even when a reapportionment plan respects traditional principles, if '[r]ace was the criterion that, in the State's view, could not be compromised,' and race-neutral considerations 'came into play only after the race-based decision had been made.'" *Bethune-Hill v. Va. State Bd. of Elections,* 137 S. Ct. 788, 798 (2017) (quoting *Shaw v. Hunt,* 517 U.S. 899, 907 (1996) (alteration in original)). "The racial predominance inquiry concerns the actual considerations that provided the essential basis for the lines drawn, not *post hoc* justifications the legislature in theory could have used but in reality did not." *Id.* at 799. A legislature "could construct a plethora of potential maps that look consistent with traditional, race-neutral principles," but "if race for its own sake is the overriding reason for choosing one map over others, race still may predominate." *Id.* It is the "racial purpose of state action, not its stark manifestation," that offends the Equal Protection Clause. *Miller,* 515 U.S. at 913.

In light of these well-established constitutional principles, the congressional redistricting bill enacted by the Legislature violates the U.S. Constitution. The bill contains a primary map and secondary map that include a racially gerrymandered district—Congressional District 5—that is not narrowly tailored to achieve a compelling state interest. *See generally* Fla. H.R. Comm. on Redist., recording of proceedings, at 0:00-2:55:19 (Feb. 25, 2022), https://thefloridachannel.org/videos/2-25-22-house-redistricting-committee/ (committee presentation and discussion of the maps later passed by the Legislature).

In the secondary map, which was the original map reported out of the House Congressional Redistricting Subcommittee, District 5 is a sprawling district that stretches approximately 200 miles from East to West and cuts across eight counties to connect a minority population in Jacksonville with a separate and distinct minority population in Leon and Gadsden Counties. The district is not compact, does not conform to usual political or geographic boundaries, and is bizarrely shaped to include minority populations in western Leon County and Gadsden County while excluding non-minority populations in eastern Leon County. Because this version of District 5 plainly subordinates traditional districting criteria to avoid diminishment of minority voting age population, there is no question that race was "the predominant factor motivating the legislature's decision" to draw this district. *Miller,* 515 U.S. at 916.

**District 5 in the Secondary Map**



In response to federal constitutional concerns about the unusual shape of District 5 as it was originally drawn, and which is now reflected in the secondary map, the House Redistricting Committee drew a new version of District 5, which is reflected in the primary map. This configuration of the district is more compact but has caused the adjacent district—District 4—to take on a bizarre doughnut shape that almost completely surrounds District 5. The reason for this unusual configuration is the Legislature's desire to maximize the black voting age population in District 5. The Chair of the House Redistricting Committee confirmed this motivation when he explained that the new District 5 was drawn to "protect[] a black minority seat in north Florida." Fla. H.R. Comm. on Redist., recording of proceedings, at 19:15-19:26 (Feb. 25, 2022).

**District 5 in the Primary Map**



Despite the Legislature's attempt to address the federal constitutional concerns by drawing a more compact district, the constitutional defect nevertheless persists. Where "race was the criterion that, in the State's view, could not be compromised, and race-neutral considerations came into play only after the race-based decision had been made," it

follows that race was the predominant factor, even though the district otherwise respects traditional districting principles. *Bethune-Hill,* 137 S. Ct. at 798 (cleaned up).

Such was the case here. Even for the more compact district, the Legislature believed (albeit incorrectly) that the Florida Constitution required it to ensure "a black minority seat in north Florida." Fla. H.R. Comm. on Redist., recording of proceedings, at 19:15-19:26 (Feb. 25, 2022). Specifically, according to the House Redistricting Chair, the primary map's version of District 5 is the House's "attempt at continuing to protect the minority group's ability to elect a candidate of their choice." *Id.* at 19:45-19:54. The Legislature thus used "an express racial target" for District 5 of a black voting age population sufficiently large to elect a candidate of its choice. *Bethune-Hill,* 137 S. Ct. at 800.

Because racial considerations predominated even in drawing the new District 5, the Legislature must satisfy strict scrutiny, the U.S. Supreme Court's "most rigorous and exacting standard of constitutional review." *Miller,* 515 U.S. at 920. And to satisfy strict scrutiny, the Legislature "must demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest." *Id.* That, the Legislature cannot do.

There is no good reason to believe that District 5 needed to be drawn as a minority-performing district to comply with Section 2 of the Voting Rights Act (VRA), because the relevant minority group is not sufficiently large to constitute a majority in a geographically compact area. In the primary map, the black voting age population of District 5 is 35.32%, and even in the secondary map, with the racially gerrymandered, non-compact version of District 5, the black voting age population increases only to 43.48%. *Compare* Fla. Redist. 2022, H000C8019, https://bit.ly/3uczOXb (available at floridaredistricting.gov/pages/submitted-plans) (last visited Mar. 28, 2022), *with* Fla. Redist. 2022, H000C8015, https://bit.ly/36hFRBB (available at floridaredistricting.gov/pages/submitted-plans) (last visited Mar. 28, 2022). "When a minority group is not sufficiently large to make up a majority in a reasonably shaped district, § 2 simply does not apply." *Cooper,* 137 S. Ct. at 1472 (citing *Bartlett v. Strickland,* 556 U.S. 1, 18-20 (2009) (plurality opinion)); *see also Thornburg v. Gingles,* 478 U.S. 30, 50 (1986) (explaining that one of the threshold conditions for proving vote dilution under Section 2 is that the minority group is "sufficiently large and geographically compact to constitute a majority").

Nor is there good reason to believe that District 5 is required to be drawn to comply with Section 5 of the VRA. Section 5 is no longer operative now that the U.S. Supreme Court invalidated the VRA's formula for determining which jurisdictions are subject to Section 5. *See Shelby Cnty. v. Holder,* 570 U.S. 529, 553-57 (2013); *see also Ala. Legis. Black Caucus v. Alabama,* 575 U.S. 254, 279 (2015) (suggesting that continued compliance with Section 5 may not remain a compelling interest in light of *Shelby County).* In any event, even before the coverage formula was invalidated, the State of Florida was not a covered jurisdiction subject to Section 5. *See In re Senate Joint Resolution of Legislative Apportionment 1176 (Apportionment I)*, 83 So. 3d 597, 624 (Fla. 2012). Only five counties in Florida were covered—Collier, Hardee, Hendry, Hillsborough, and Monroe—and none of them are in northern Florida where District 5 is located. *See id.*

The only justification left for drawing a race-based district is compliance with Article III, Section 20(a) of the Florida Constitution. But District 5 does not comply with this provision. Article III, Section 20(a) provides that "districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice." The Florida Supreme Court has noted that these "dual constitutional imperatives follow almost verbatim the requirements embodied in the Federal Voting Rights Act." *Id.* at 619 (cleaned up). The first imperative, which prohibits districts that deny or abridge the equal opportunity of minority groups to participate in the political process, is modeled after Section 2 of the VRA, and the second imperative, which prohibits districts that diminish the ability of minority groups to elect representatives of their choice, is modeled after Section 5. *Id.* at 619-20.

Like the VRA, these provisions of the Florida Constitution "aim[] at safeguarding the voting strength of minority groups against both impermissible dilution and retrogression." *Id.* at 620. Although judicial interpretation of the VRA is relevant to understanding the Florida Constitution's non-dilution and non-diminishment provisions, the Florida Supreme Court nonetheless recognizes its "independent constitutional obligation" to interpret these provisions. *Id.* at 621.

Relevant here is the Florida Constitution's non-diminishment requirement. Unlike Section 5 of the VRA, this requirement "applies to the entire state." *Id.* at 620. Under this standard, the Legislature "cannot eliminate majority-minority districts or weaken other historically performing minority districts where doing so would actually diminish a minority group's ability to elect its preferred candidates." *Id.* at 625. The existing districts "serve[] as the 'benchmark' against which the 'effect' of voting changes is measured." *Id.* at 624 (cleaned up). Where a voting change leaves a minority group "less able to elect a preferred candidate of choice" than the benchmark, that change violates the non-diminishment standard. *Id.* at 625 (internal quotation marks omitted); *see also id.* at 702 (Canady, C.J., concurring in part and dissenting in part) (noting that the dictionary definition of "diminish" means "to make less or cause to appear less" (citation omitted)).

The Florida Supreme Court has acknowledged that "a slight change in percentage of the minority group's population in a given district does not necessarily have a cognizable effect on a minority group's ability to elect its preferred candidate of choice." *Id.* at 625. The minority population percentage in each district need not be "fixed" in perpetuity. *Id.* at 627. But where the reduction in minority population in a given district is more than "slight," such that the ability of the minority population to elect a candidate of choice has been reduced (even if not eliminated), the Legislature has violated the Florida Constitution's non-diminishment requirement as interpreted by the Florida Supreme Court.

Given these principles, there is no good reason to believe that District 5, as presented in the primary map, complies with the Florida Constitution's non-diminishment requirement. The benchmark district contains a black voting age population of 46.20%, whereas the black voting age population of District 5 in the primary map is only 35.32%.[1] *Compare* Fla. Redist. 2022, FLCD2016, https://bit.ly/3Iv6FeW (available at floridaredistricting.gov/pages/submitted-plans) (last visited Mar. 28, 2022), *with* Fla. Redist. 2022, H000C8019, https://bit.ly/3uczOXb (available at floridaredistricting.gov/pages/submitted-plans) (last visited Mar. 28, 2022). This nearly eleven percentage point drop is more than slight, and while the House Redistricting Chair represented that the black population of the district could still elect a candidate of choice, *see* Fla. H.R. Comm. on Redist., recording of proceedings, at 59:44-1:00:17 (Feb. 25, 2022), there appears to be little dispute that the ability of the black population to elect such a candidate had nevertheless been reduced, *see id.* at 1:00:18-1:00:58 (noting that the benchmark district performed for the minority candidate of choice in 14 of 14 previous elections and that the new district would not perform for the minority candidate of choice in one-third of the same elections).

Moreover, the House Redistricting Chair claimed that the only criterion that mattered was whether the new district still performed at all. *See id.* at 1:06:09-1:06:30 ("It is not a diminishment unless the district does not perform."); *see also id.* at 1:05:05-1:05:13 ("Is it less likely to perform? Honestly, I don't know."). But that view is plainly inconsistent with the Florida Supreme Court precedent described above, which prohibits any voting change that leaves a minority group "less able to elect a preferred candidate of choice." *Apportionment I,* 83 So. 3d at 625 (internal quotation marks omitted). In sum, because the reduction of black voting age population is more than slight and because such reduction appears to have diminished the ability of black voters to elect a candidate of their choice, District 5 does not comply with the non-diminishment requirement of Article III, Section 20(a) of the Florida Constitution. Therefore, compliance with the Florida Constitution cannot supply the compelling reason to justify the Legislature's use of race in drawing District 5 in the primary map.

In the secondary map, by contrast, District 5 complies with the Florida Constitution's non-diminishment requirement, but in doing so, it violates the Equal Protection Clause of the Fourteenth Amendment to

the U.S. Constitution. The U.S. Supreme Court has warned that a "reapportionment plan that includes in one district individuals who belong to the same race, but who are otherwise widely separated by geographical and political boundaries, and who may have little in common with one another but the color of their skin, bears an uncomfortable resemblance to political apartheid." *Shaw,* 509 U.S. at 647. As described earlier, District 5 in the secondary map does precisely this.

That the district is believed to be necessary to comply with the Florida Constitution's non-diminishment requirement does not alone suffice to justify the use of race in drawing bizarre, non-compact district boundaries for the sole purpose of cobbling together disparate minority populations from across northern Florida to form a minority-performing district. Mere compliance with a state constitutional requirement to engage in race-based districting is not, without more, a compelling interest sufficient to satisfy strict scrutiny. The Fourteenth and Fifteenth Amendments to the U.S. Constitution and the VRA, which enforces the Fifteenth Amendment, exist to *prevent* states from engaging in racially discriminatory electoral practices. Indeed, one such weapon that states long used, and that the VRA was designed to combat, "was the racial gerrymander—the deliberate and arbitrary distortion of district boundaries for racial purposes." *Id.* at 640 (cleaned up).

Here, the Florida Constitution's non-diminishment standard would be satisfied only by a sprawling, non-compact district that spans 200 miles and repeatedly violates traditional political boundaries to join minority communities from disparate geographic areas. Such a district is not narrowly tailored to achieve the compelling interest of protecting the voting rights of a minority community in a reasonably cohesive geographic area. As applied to District 5 in the secondary map, therefore, the Florida Constitution's non-diminishment standard cannot survive strict scrutiny and clearly violates the U.S. Constitution.

For the foregoing reasons, Congressional District 5 in both maps is unlawful.

---

[1] The benchmark district itself is a sprawling, non-compact racial gerrymander that connects minority communities from two distinct regions of the State; however, for purposes of this point, I assume that the district can be used as a valid benchmark against which to judge the new maps.

## COMMITTEES OF THE SENATE
(With Revisions)

### Agriculture
Senator Rouson, Chair; Senator Bradley, Vice Chair; Senators Ausley, Boyd, Burgess, Perry, Polsky, and Rodriguez

### Appropriations
Senator Stargel, Chair; Senator Bean, Vice Chair; Senators Albritton, Baxley, Book, Bracy, Brandes, Broxson, Diaz, Gainer, Gibson, Hooper, Hutson, Mayfield, Passidomo, Perry, Pizzo, Powell, Rouson, and Stewart

### Appropriations Subcommittee on Agriculture, Environment, and General Government
Senator Albritton, Chair; Senator Rodrigues, Vice Chair; Senators Ausley, Berman, Boyd, Bradley, Brodeur, Garcia, Mayfield, and Stewart

### Appropriations Subcommittee on Criminal and Civil Justice
Senator Perry, Chair; Senator Wright, Vice Chair; Senators Baxley, Bracy, Gainer, Pizzo, Rodriguez, and Torres

### Appropriations Subcommittee on Education
Senator Broxson, Chair; Senator Diaz, Vice Chair; Senators Cruz, Gibson, Gruters, Hutson, Passidomo, and Polsky

### Appropriations Subcommittee on Health and Human Services
Senator Bean, Chair; Senator Rodriguez, Vice Chair; Senators Book, Brodeur, Burgess, Diaz, Farmer, Harrell, Jones, Rodrigues, and Rouson

### Appropriations Subcommittee on Transportation, Tourism, and Economic Development
Senator Gainer, Chair; Senator Hooper, Vice Chair; Senators Ausley, Boyd, Cruz, Garcia, Gibson, Mayfield, Perry, Taddeo, and Wright

### Banking and Insurance
Senator Boyd, Chair; Senator Broxson, Vice Chair; Senators Brandes, Burgess, Gruters, Passidomo, Rodrigues, Rouson, Stargel, Stewart, and Taddeo

### Children, Families, and Elder Affairs
Senator Garcia, Chair; Senator Book, Vice Chair; Senators Albritton, Brodeur, Harrell, Rouson, Torres, and Wright

### Commerce and Tourism
Senator Hooper, Chair; Senator Wright, Vice Chair; Senators Diaz, Garcia, Gruters, Hutson, Pizzo, Powell, Taddeo, and Torres

### Community Affairs
Senator Bradley, Chair; Senator Garcia, Vice Chair; Senators Albritton, Baxley, Cruz, Farmer, Hooper, Hutson, and Polsky

### Criminal Justice
Senator Pizzo, Chair; Senator Brandes, Vice Chair; Senators Baxley, Burgess, Gainer, Hooper, Perry, Powell, and Taddeo

### Education
Senator Gruters, Chair; Senator Jones, Vice Chair; Senators Berman, Bradley, Broxson, Diaz, Hutson, Passidomo, and Polsky

### Environment and Natural Resources
Senator Brodeur, Chair; Senator Stewart, Vice Chair; Senators Albritton, Ausley, Bean, and Perry

### Ethics and Elections
Senator Baxley, Chair; Senator Taddeo, Vice Chair; Senators Berman, Bracy, Bradley, Broxson, Gainer, Garcia, and Polsky

### Finance and Tax
Senator Rodriguez, Chair; Senator Cruz, Vice Chair; Senators Berman, Harrell, Hooper, Jones, Rodrigues, and Wright

### Governmental Oversight and Accountability
Senator Brandes, Chair; Senator Gruters, Vice Chair; Senators Farmer, Mayfield, Stargel, and Torres

### Health Policy
Senator Diaz, Chair; Senator Brodeur, Vice Chair; Senators Albritton, Baxley, Bean, Book, Cruz, Garcia, Jones, and Powell

### Judiciary
Senator Burgess, Chair; Senator Gibson, Vice Chair; Senators Baxley, Boyd, Bradley, Broxson, Mayfield, Polsky, Rodrigues, and Rouson

### Military and Veterans Affairs, Space, and Domestic Security
Senator Wright, Chair; Senator Harrell, Vice Chair; Senators Burgess, Cruz, Gibson, Rodriguez, and Torres

### Reapportionment
Senator Rodrigues, Chair; Senator Broxson, Vice Chair; Senators Bean, Bracy, Bradley, Brodeur, Burgess, Gibson, Harrell, Rodriguez, Rouson, Stargel, and Stewart

### Select Subcommittee on Congressional Reapportionment
Senator Bradley, Chair; Senators Bean, Harrell, Rouson, and Stewart

### Select Subcommittee on Legislative Reapportionment
Senator Burgess, Chair; Senators Bracy, Gibson, Rodriguez, and Stargel

### Regulated Industries
Senator Hutson, Chair; Senator Book, Vice Chair; Senators Albritton, Gruters, Hooper, Passidomo, Rodrigues, Rouson, and Stewart

### Rules
Senator Passidomo, Chair; Senator Garcia, Vice Chair; Senators Albritton, Baxley, Bean, Book, Boyd, Bracy, Brandes, Diaz, Farmer, Gibson, Gruters, Hutson, Mayfield, Powell, and Stargel



# Journal of the Senate

Number 2—Special Session C <span style="float:right">Wednesday, April 20, 2022</span>

## CONTENTS

Bills on Third Reading .................................. 10
Call to Order ........................................... 10

## CALL TO ORDER

The Senate was called to order by President Simpson at 10:00 a.m. A quorum present—39:

| | | |
|---|---|---|
| Mr. President | Burgess | Osgood |
| Albritton | Cruz | Passidomo |
| Ausley | Diaz | Perry |
| Baxley | Farmer | Pizzo |
| Bean | Gainer | Polsky |
| Berman | Garcia | Powell |
| Book | Gibson | Rodrigues |
| Boyd | Gruters | Rodriguez |
| Bracy | Harrell | Rouson |
| Bradley | Hooper | Stargel |
| Brandes | Hutson | Stewart |
| Brodeur | Jones | Torres |
| Broxson | Mayfield | Wright |

## PRAYER

The following prayer was offered by Senator Perry:

Father God, we come before you today and acknowledge your sovereignty and your goodness to each of us and collectively to our state. We know from scripture that you ordained the institutions of the church, the family, and the government. We are humbled that we have the opportunity to serve in the government of this great state. Thank you for the collective experience, talent, and diversity represented by the men and women serving here today. Each of us has a unique story that has led us here and we are strengthened by the gifts that each legislator brings to this body. We acknowledge that even with our individual successes we have blind spots. We ask that in spite of our biases, our backgrounds, and our politics that you bless the work that we do here, that you use each of us to bring about your purpose in our state. In Proverbs, it says that, "The king's heart is a stream of water in the hand of the Lord; he turns it wherever he will." We ask that you direct our hearts that we can make decisions, that we are wise, and that we truly serve the communities of this state; that we represent and promote liberty and justice for all and allow for all the citizens of this state to have an opportunity to live lives full of your blessings. Grant us unity in spite of our diversity, humility in spite of our successes, clarity in spite of the many distractions, and wisdom in spite of our humanity. I pray in the name of Jesus, all these things. Amen.

## PLEDGE

Senator Osgood led the Senate in the Pledge of Allegiance to the flag of the United States of America.

## BILLS ON THIRD READING

**SB 2-C**—A bill to be entitled An act establishing the congressional districts of the state; amending s. 8.0001, F.S.; adopting the United States Decennial Census of 2020 as the official census of the state for use in redistricting the state's congressional districts; defining terms; amending s. 8.0002, F.S.; redistricting the state's congressional districts in accordance with the United States Decennial Census of 2020 (plan P000C0109); amending s. 8.0111, F.S.; providing for the inclusion of unlisted territory in contiguous districts in accordance with figures from the United States Decennial Census of 2020; reenacting s. 8.031, F.S., relating to the election of representatives to Congress; creating s. 8.051, F.S.; specifying that certain electronic maps serve as the official maps of the congressional districts of the state; providing for construction; requiring such maps to be made available to the public by the Office of Economic and Demographic Research within a specified timeframe; reenacting s. 8.0611, F.S., relating to severability; creating s. 8.062, F.S.; requiring actions challenging the state's congressional districts to be brought in a specific venue; creating s. 8.063, F.S.; specifying limitations for actions challenging the state's congressional districts; providing for construction; amending s. 8.07, F.S.; providing for applicability; repealing ss. 8.08, 8.081, 8.082, 8.083, 8.084, 8.085, 8.086, 8.087, and 8.088, F.S.; deleting obsolete and superseded provisions relating to congressional districts enacted in Special Session A of the 2014 Legislature; providing for severability; providing an appropriation; providing effective dates.

—as amended April 19, was read the third time by title.

**SENATOR BEAN PRESIDING**

**THE PRESIDENT PRESIDING**

On motion by Senator Rodrigues, **SB 2-C**, as amended, was passed and certified to the House. The vote on passage was:

Yeas—24

| | | |
|---|---|---|
| Mr. President | Broxson | Hutson |
| Albritton | Burgess | Mayfield |
| Baxley | Diaz | Passidomo |
| Bean | Gainer | Perry |
| Boyd | Garcia | Rodrigues |
| Bradley | Gruters | Rodriguez |
| Brandes | Harrell | Stargel |
| Brodeur | Hooper | Wright |

Nays—15

| | | |
|---|---|---|
| Ausley | Farmer | Polsky |
| Berman | Gibson | Powell |
| Book | Jones | Rouson |
| Bracy | Osgood | Stewart |
| Cruz | Pizzo | Torres |

**SB 4-C**—A bill to be entitled An act relating to independent special districts; amending s. 189.0311, F.S.; dissolving certain independent special districts; authorizing the reestablishment of certain independent special districts; providing an effective date.

—was read the third time by title.

On motion by Senator Bradley, **SB 4-C** was passed and certified to the House. The vote on passage was: