

# Congressional Redistricting Subcommittee

## Tuesday, April 19, 2022
## 3:30 – 6:30 PM
## 404 HOB

## Meeting Packet

EXHIBIT
J45

**Chris Sprowls**
**Speaker**

**Tyler Sirois**
**Chair**

# Committee Meeting Notice

## HOUSE OF REPRESENTATIVES

### Congressional Redistricting Subcommittee

**Start Date and Time:**      Tuesday, April 19, 2022  03:30 pm

**End Date and Time:**      Tuesday, April 19, 2022  06:30 pm

**Location:**      Sumner Hall (404 HOB)

**Duration:**      3.00 hrs

**Consideration of the following bill(s):**

HB 1C Establishing the Congressional Districts of the State by Leek

**NOTICE FINALIZED on 04/19/2022  9:44AM by Ellerkamp.Donna**

# Florida House of Representatives
# Congressional Redistricting Subcommittee

### Chair Tyler Sirois
*April 19, 2022*

# Proposed Congressional Map HB 1C
## *P000C0109*



**Proposed Congressional Districts**

Southeast Florida

Orlando

**HB 1C**
Plan: P000C0109
---
Submitted
4/13/2022

Tampa Bay

Jacksonville

Congressional Redistricting
Subcommittee Meeting
April 19, 2022
Page 2

# Statewide Snapshot

|  | Benchmark Map<br>*FLCD2016* | HB 1C<br>*P000C0109* |
|---|---|---|
| # of Districts | 27 | 28 |
| Ideal Population | 696,345 | 769,221 |
| Population Deviation | 1 | 1 |
| Counties Whole | 49 | 50 |
| Counties Split | 18 | 17 |
| Cities Whole | 373 | 396 |
| Cities Splits | 39 | 16 |
| Reock Score | 0.44 | 0.47 |
| Convex-Hull Score | 0.77 | 0.81 |
| Polsby-Popper Score | 0.36 | 0.43 |



# Districts with No Changes
## *Congressional Districts 1-2, 20-25, 27-28*



# Districts with Proposed Changes
## Congressional Districts 3-19, 26







FLORIDA
REDISTRICTING

## Congressional Redistricting Subcommittee
Rep. Tyler Sirois, Chair
850-717-5234
RedistrictingCommittee@myfloridahouse.gov
www.FloridaRedistricting.gov



# Proposed Congressional Districts

**HB 1C**

Plan: P000C0109

---

Submitted
4/13/2022

# P000C0109

| STATEWIDE SNAPSHOT | | | | | |
|---|---|---|---|---|---|
| Total State Population: | 21,538,187 | Total Counties: | 67 | Reock Avg. | |
| Ideal District Population: | 769,221 | Counties Split: | 17 | 0.47 | |
| Mean Deviation: | 0 | 0.00% | Counties Kept Whole: | 50 | Convex Hull Avg. |
| Max Deviation: | 0 | 0.00% | Total Cities: | 412 | 0.81 |
| Min Deviation: | -1 | 0.00% | Cities Split: | 16 | Polsby Popper Avg. |
| Overall Deviation Range: | 1 | 0.00% | Cities Kept Whole: | 396 | 0.43 |

| DISTRICT BREAKDOWN | | | | | | | |
|---|---|---|---|---|---|---|---|
| District | Population | | | Voting Age Population | | Compactness | |

| District | Total Population | Deviation From Ideal | % Deviation | BVAP % | HVAP % | Reock | Convex Hull | Polsby Popper |
|---|---|---|---|---|---|---|---|---|
| 1 | 769,221 | 0 | 0.00 | 13.54 | 6.69 | 0.54 | 0.87 | 0.48 |
| 2 | 769,221 | 0 | 0.00 | 23.09 | 6.42 | 0.46 | 0.82 | 0.48 |
| 3 | 769,221 | 0 | 0.00 | 15.88 | 10.64 | 0.57 | 0.90 | 0.50 |
| 4 | 769,221 | 0 | 0.00 | 31.66 | 7.82 | 0.38 | 0.76 | 0.32 |
| 5 | 769,221 | 0 | 0.00 | 12.80 | 10.86 | 0.56 | 0.89 | 0.52 |
| 6 | 769,221 | 0 | 0.00 | 11.22 | 9.78 | 0.74 | 0.92 | 0.48 |
| 7 | 769,221 | 0 | 0.00 | 10.53 | 18.97 | 0.47 | 0.83 | 0.40 |
| 8 | 769,221 | 0 | 0.00 | 9.68 | 10.05 | 0.32 | 0.78 | 0.45 |
| 9 | 769,221 | 0 | 0.00 | 13.02 | 50.04 | 0.49 | 0.86 | 0.47 |
| 10 | 769,221 | 0 | 0.00 | 25.98 | 28.63 | 0.41 | 0.75 | 0.37 |
| 11 | 769,221 | 0 | 0.00 | 12.76 | 17.09 | 0.52 | 0.82 | 0.36 |
| 12 | 769,221 | 0 | 0.00 | 5.29 | 11.72 | 0.45 | 0.75 | 0.38 |
| 13 | 769,221 | 0 | 0.00 | 7.09 | 9.56 | 0.51 | 0.93 | 0.58 |
| 14 | 769,221 | 0 | 0.00 | 19.13 | 25.97 | 0.48 | 0.83 | 0.47 |
| 15 | 769,221 | 0 | 0.00 | 15.40 | 22.74 | 0.58 | 0.88 | 0.58 |
| 16 | 769,221 | 0 | 0.00 | 11.98 | 18.67 | 0.45 | 0.73 | 0.45 |
| 17 | 769,221 | 0 | 0.00 | 5.56 | 11.54 | 0.28 | 0.77 | 0.39 |
| 18 | 769,221 | 0 | 0.00 | 13.21 | 23.68 | 0.42 | 0.82 | 0.42 |
| 19 | 769,221 | 0 | 0.00 | 6.07 | 16.22 | 0.33 | 0.78 | 0.39 |
| 20 | 769,221 | 0 | 0.00 | 50.11 | 22.98 | 0.50 | 0.77 | 0.28 |
| 21 | 769,221 | 0 | 0.00 | 12.48 | 15.14 | 0.50 | 0.82 | 0.49 |
| 22 | 769,220 | -1 | 0.00 | 15.88 | 24.65 | 0.44 | 0.74 | 0.42 |
| 23 | 769,221 | 0 | 0.00 | 13.17 | 20.51 | 0.50 | 0.79 | 0.29 |
| 24 | 769,221 | 0 | 0.00 | 42.17 | 38.46 | 0.48 | 0.90 | 0.48 |
| 25 | 769,221 | 0 | 0.00 | 17.52 | 42.26 | 0.42 | 0.81 | 0.38 |
| 26 | 769,221 | 0 | 0.00 | 6.92 | 73.22 | 0.29 | 0.77 | 0.33 |
| 27 | 769,221 | 0 | 0.00 | 7.07 | 74.18 | 0.71 | 0.95 | 0.73 |
| 28 | 769,221 | 0 | 0.00 | 10.32 | 73.35 | 0.22 | 0.55 | 0.24 |

# P000C0109

| DISTRICT | Proposed BVAP % | Black | | | | | Proposed HVAP % | Hispanic | | | | | DEM | | | | | REP | | | | | NPA | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2020 | 2018 | 2016 | 2014 | 2012 | | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 |
| 20 | 50.11 | 46.82 | 46.39 | 46.16 | 45.88 | 44.90 | 22.98 | 15.27 | 14.27 | 13.36 | 11.86 | 13.21 | 61.33 | 61.94 | 62.65 | 63.24 | 63.85 | 13.79 | 13.61 | 13.78 | 13.95 | 14.61 | 24.88 | 24.46 | 23.56 | 22.80 | 21.53 |
| 24 | 42.17 | 44.01 | 45.56 | 46.38 | 47.82 | 48.21 | 38.46 | 27.28 | 25.97 | 25.13 | 23.30 | 42.98 | 60.04 | 62.10 | 63.38 | 64.55 | 65.52 | 12.59 | 11.55 | 11.59 | 11.67 | 12.07 | 27.37 | 26.35 | 25.03 | 23.78 | 22.41 |
| 26 | 6.92 | 5.19 | 5.30 | 5.52 | 6.01 | 6.35 | 73.22 | 60.87 | 60.66 | 61.17 | 61.00 | 61.03 | 29.79 | 31.15 | 31.77 | 31.69 | 32.51 | 37.92 | 36.24 | 36.71 | 37.60 | 38.76 | 32.29 | 32.61 | 31.52 | 30.72 | 28.73 |
| 27 | 7.07 | 6.14 | 6.29 | 6.50 | 6.99 | 7.28 | 74.18 | 62.79 | 61.97 | 61.66 | 60.35 | 70.81 | 34.57 | 35.12 | 35.20 | 34.61 | 35.43 | 33.39 | 33.06 | 33.97 | 35.52 | 36.57 | 32.04 | 31.82 | 30.83 | 29.87 | 28.00 |
| 28 | 10.32 | 8.68 | 8.98 | 9.00 | 9.55 | 9.78 | 73.35 | 63.92 | 62.38 | 61.18 | 59.58 | 65.83 | 33.92 | 35.26 | 35.50 | 35.30 | 36.05 | 32.58 | 30.98 | 31.47 | 32.26 | 33.49 | 33.51 | 33.76 | 33.04 | 32.44 | 30.46 |

# P000C0109

| DISTRICT | Proposed BVAP % | Black | | | | | Proposed HVAP % | Hispanic | | | | | DEM | | | | | REP | | | | | NPA | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2020 | 2018 | 2016 | 2014 | 2012 | | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 | 2020 | 2018 | 2016 | 2014 | 2012 |
| 20 | 50.11 | 46.41 | 48.77 | 46.50 | 49.26 | 48.51 | 22.98 | 15.11 | 12.06 | 13.19 | 8.00 | 9.95 | 63.82 | 66.88 | 65.54 | 68.71 | 67.48 | 14.65 | 14.37 | 14.32 | 15.02 | 14.35 | 21.54 | 18.74 | 20.14 | 16.26 | 18.16 |
| 24 | 42.17 | 42.88 | 47.81 | 45.88 | 53.66 | 50.60 | 38.46 | 27.71 | 23.44 | 25.36 | 18.30 | 21.13 | 61.44 | 66.56 | 65.41 | 71.02 | 68.44 | 13.57 | 11.99 | 11.92 | 11.92 | 11.86 | 25.00 | 21.44 | 22.67 | 17.03 | 19.69 |
| 26 | 6.92 | 4.78 | 5.60 | 5.19 | 6.30 | 6.58 | 73.22 | 58.90 | 54.86 | 58.72 | 51.34 | 57.72 | 29.06 | 30.38 | 31.62 | 28.87 | 32.06 | 41.60 | 43.42 | 39.78 | 48.42 | 42.58 | 29.35 | 26.19 | 28.60 | 22.70 | 25.34 |
| 27 | 7.07 | 5.43 | 6.32 | 5.97 | 7.42 | 7.29 | 74.18 | 63.61 | 60.27 | 61.78 | 56.62 | 58.71 | 34.57 | 36.45 | 35.84 | 35.88 | 35.85 | 35.93 | 37.25 | 35.99 | 42.18 | 39.17 | 29.50 | 26.30 | 28.17 | 21.94 | 24.99 |
| 28 | 10.32 | 7.72 | 9.28 | 8.36 | 10.10 | 10.20 | 73.35 | 64.42 | 59.72 | 61.13 | 53.20 | 56.82 | 33.54 | 36.42 | 36.10 | 35.79 | 36.60 | 36.06 | 36.47 | 34.25 | 40.22 | 36.76 | 30.40 | 27.11 | 29.65 | 23.98 | 26.65 |

# P000C0109

| DISTRICT | 2020 President | | 2018 Governor | | 2018 AG | | 2018 CFO | | 2018 Ag Comm | | 2018 US Senate | | 2016 President | | 2016 US Senate | | 2014 Governor | | 2014 AG | | 2014 CFO | | 2014 Ag Comm | | 2012 President | | 2012 US Senate | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | R_Trump | D_Biden | R_DeSantis | D_Gillum | R_Moody | D_Shaw | R_Patronis | D_Ring | R_Caldwell | D_Fried | R_Scott | D_Nelson | R_Trump | D_Clinton | R_Rubio | D_Murphy | R_Scott | D_Crist | R_Bondi | D_Sheldon | R_Atwater | D_Rankin | R_Putnam | D_Hamilton | R_Romney | D_Obama | R_Mack | D_Nelson |
| 20 | 23.52 | 75.89 | 19.45 | 79.93 | 20.26 | 78.44 | 20.20 | 79.79 | 19.89 | 80.09 | 20.00 | 80.00 | 20.39 | 77.83 | 22.42 | 75.64 | 17.97 | 79.92 | 22.42 | 76.13 | 24.50 | 75.48 | 22.99 | 77.02 | 19.06 | 80.52 | 16.82 | 81.97 |
| 24 | 25.28 | 74.18 | 17.83 | 81.45 | 18.39 | 80.05 | 18.46 | 81.53 | 18.00 | 82.00 | 18.64 | 81.36 | 17.28 | 81.05 | 21.99 | 75.93 | 16.24 | 82.18 | 18.77 | 79.80 | 20.93 | 79.06 | 20.21 | 79.78 | 16.83 | 82.82 | 15.49 | 83.46 |
| 26 | 58.98 | 40.49 | 54.26 | 44.44 | 55.44 | 42.63 | 55.96 | 44.03 | 54.70 | 45.29 | 55.19 | 44.81 | 47.09 | 50.61 | 57.17 | 40.61 | 56.88 | 40.53 | 61.63 | 36.07 | 62.62 | 37.37 | 62.69 | 37.30 | 50.67 | 48.85 | 47.10 | 50.74 |
| 27 | 50.01 | 49.45 | 45.75 | 53.18 | 46.10 | 51.99 | 47.41 | 52.59 | 45.38 | 54.63 | 45.52 | 54.47 | 40.05 | 57.42 | 50.17 | 47.78 | 47.55 | 50.00 | 51.96 | 46.03 | 56.52 | 43.49 | 55.69 | 44.30 | 47.27 | 52.22 | 44.15 | 54.47 |
| 28 | 52.99 | 46.42 | 46.31 | 52.49 | 46.94 | 50.86 | 48.07 | 51.92 | 46.56 | 53.44 | 46.55 | 53.46 | 40.81 | 56.46 | 49.92 | 47.69 | 45.89 | 51.20 | 51.75 | 45.82 | 54.11 | 45.87 | 53.95 | 46.04 | 44.61 | 54.83 | 42.03 | 56.33 |

**ELECTION RESULTS**

# P000C0109

## 2020 General Election

| District | 2020 Census | | Total Registered Voters (RV) | | | | | DEM RV | | REP RV | | NPA RV | | Black RV | | | Hispanic RV | | | Total Voter Turnout (VT) | | | | | DEM VT | | REP VT | | NPA VT | | Black VT | | | Hispanic VT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BVAP | HVAP | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA |
| 20 | 50.11 | 22.98 | 61.33 | 13.79 | 24.88 | 46.82 | 15.27 | 62.20 | 11.47 | 8.57 | 19.25 | 30.08 | 22.41 | 81.47 | 2.53 | 15.98 | 46.07 | 17.38 | 36.51 | 63.82 | 14.65 | 21.54 | 46.41 | 15.11 | 61.73 | 11.18 | 6.68 | 19.59 | 27.98 | 23.65 | 84.88 | 2.11 | 12.98 | 47.21 | 18.99 | 33.70 |
| 24 | 42.17 | 38.46 | 60.04 | 12.59 | 27.37 | 44.01 | 27.28 | 60.56 | 19.19 | 8.52 | 44.78 | 24.03 | 36.98 | 82.62 | 2.44 | 14.94 | 42.23 | 20.67 | 37.09 | 61.44 | 13.57 | 25.00 | 42.88 | 27.71 | 59.69 | 19.08 | 6.48 | 46.20 | 21.27 | 38.87 | 85.54 | 2.05 | 12.40 | 42.31 | 22.62 | 35.07 |
| 26 | 6.92 | 73.22 | 29.79 | 37.92 | 32.29 | 5.19 | 60.87 | 13.33 | 59.08 | 0.60 | 57.90 | 3.03 | 65.98 | 76.51 | 4.41 | 18.86 | 28.91 | 36.07 | 35.00 | 29.06 | 41.60 | 29.35 | 4.78 | 58.90 | 13.04 | 56.68 | 0.47 | 56.20 | 2.65 | 64.88 | 79.30 | 4.09 | 16.27 | 27.96 | 39.69 | 32.32 |
| 27 | 7.07 | 74.18 | 34.57 | 33.39 | 32.04 | 6.14 | 62.79 | 13.97 | 50.91 | 0.68 | 73.27 | 3.38 | 64.68 | 78.63 | 3.69 | 17.62 | 28.03 | 38.96 | 33.00 | 34.57 | 35.93 | 29.50 | 5.43 | 63.61 | 12.81 | 50.58 | 0.50 | 74.07 | 2.76 | 66.11 | 81.58 | 3.32 | 15.02 | 27.49 | 41.84 | 30.66 |
| 28 | 10.32 | 73.35 | 33.92 | 32.58 | 33.51 | 8.68 | 63.92 | 19.84 | 54.23 | 0.92 | 69.60 | 4.89 | 68.19 | 77.57 | 3.44 | 18.87 | 28.78 | 35.48 | 35.75 | 33.54 | 36.06 | 30.40 | 7.72 | 64.42 | 18.63 | 53.57 | 0.69 | 70.06 | 4.00 | 69.69 | 80.92 | 3.20 | 15.76 | 27.89 | 39.22 | 32.88 |

*  All numbers denoted are percentages

## P000C0109

| 2020 Primary Election | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| District | 2020 Census | | Total Voter Turnout (VT) | | | | DEM VT | | REP VT | | Black VT | | Hispanic VT | | |
| | BVAP | HVAP | DEM | REP | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | DEM | REP | |
| 20 | 50.11 | 22.98 | 78.49 | 11.40 | 54.46 | 9.05 | 64.06 | 7.10 | 6.76 | 14.52 | 92.33 | 1.42 | 61.61 | 18.30 | |
| 24 | 42.17 | 38.46 | 74.37 | 11.09 | 50.95 | 22.17 | 62.70 | 14.86 | 6.39 | 50.98 | 91.52 | 1.39 | 49.86 | 25.51 | |
| 26 | 6.92 | 73.22 | 30.63 | 50.46 | 5.10 | 55.37 | 14.58 | 49.56 | 0.31 | 54.84 | 87.56 | 3.03 | 27.42 | 49.98 | |
| 27 | 7.07 | 74.18 | 40.97 | 39.65 | 6.73 | 60.67 | 14.62 | 43.01 | 0.41 | 76.17 | 89.02 | 2.41 | 29.05 | 49.79 | |
| 28 | 10.32 | 73.35 | 39.27 | 41.81 | 9.48 | 59.96 | 21.23 | 44.87 | 0.53 | 68.91 | 87.95 | 2.34 | 29.39 | 48.05 | |

*  *All numbers denoted are percentages*

# P000C0109

| District | 2020 Census | | Total Registered Voters (RV) | | | | | DEM RV | | REP RV | | NPA RV | | Black RV | | | Hispanic RV | | | Total Voter Turnout (VT) | | | | | DEM VT | | REP VT | | NPA VT | | Black VT | | | Hispanic VT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BVAP | HVAP | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA |
| 20 | 50.11 | 22.98 | 61.94 | 13.61 | 24.46 | 46.39 | 14.27 | 61.53 | 16.60 | 8.61 | 19.25 | 28.99 | 21.28 | 82.15 | 2.53 | 15.29 | 47.61 | 15.83 | 36.47 | 66.88 | 14.37 | 18.74 | 48.77 | 12.06 | 63.09 | 9.18 | 6.71 | 15.23 | 29.87 | 19.68 | 86.51 | 1.98 | 11.48 | 50.92 | 18.16 | 30.59 |
| 24 | 42.17 | 38.46 | 62.10 | 11.55 | 26.35 | 45.56 | 25.97 | 61.28 | 42.77 | 9.10 | 44.78 | 24.49 | 35.92 | 83.52 | 2.31 | 14.17 | 44.54 | 19.02 | 36.44 | 66.56 | 11.99 | 21.44 | 47.81 | 23.44 | 62.73 | 16.22 | 7.09 | 42.64 | 24.28 | 35.06 | 87.32 | 1.78 | 10.89 | 46.08 | 21.82 | 32.08 |
| 26 | 6.92 | 73.22 | 31.15 | 36.24 | 32.61 | 5.30 | 60.66 | 13.22 | 56.76 | 0.59 | 57.90 | 2.91 | 65.34 | 77.73 | 4.06 | 17.89 | 30.95 | 33.91 | 35.13 | 30.38 | 43.42 | 26.19 | 5.60 | 54.86 | 15.16 | 53.01 | 0.45 | 52.55 | 3.00 | 60.72 | 82.30 | 3.52 | 14.03 | 29.36 | 41.60 | 28.99 |
| 27 | 7.07 | 74.18 | 35.12 | 33.06 | 31.82 | 6.29 | 61.97 | 14.23 | 71.89 | 0.70 | 73.27 | 3.34 | 63.94 | 79.41 | 3.67 | 16.91 | 28.81 | 38.36 | 32.83 | 36.45 | 37.25 | 26.30 | 6.32 | 60.27 | 14.51 | 46.34 | 0.49 | 71.95 | 3.21 | 62.99 | 83.70 | 2.87 | 13.37 | 28.03 | 44.47 | 27.49 |
| 28 | 10.32 | 73.35 | 35.26 | 30.98 | 33.76 | 8.98 | 62.38 | 19.88 | 67.51 | 0.98 | 69.60 | 4.93 | 66.59 | 78.03 | 3.37 | 18.51 | 30.43 | 33.53 | 36.04 | 36.42 | 36.47 | 27.11 | 9.28 | 59.72 | 21.03 | 48.88 | 0.72 | 66.35 | 4.98 | 65.31 | 82.54 | 2.83 | 14.55 | 29.81 | 40.52 | 29.65 |

*  All numbers denoted are percentages

# P000C0109

| District | 2018 Primary Election | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2020 Census | | Total Voter Turnout (VT) | | | | DEM VT | | REP VT | | Black VT | | Hispanic VT | |
| | BVAP | HVAP | DEM | REP | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | DEM | REP |
| 20 | 50.11 | 22.98 | 76.65 | 14.84 | 53.05 | 7.09 | 64.24 | 5.54 | 5.60 | 11.08 | 92.81 | 1.57 | 59.86 | 23.20 |
| 24 | 42.17 | 38.46 | 77.62 | 11.43 | 54.96 | 17.55 | 65.63 | 11.72 | 6.73 | 43.38 | 92.68 | 1.40 | 51.81 | 28.25 |
| 26 | 6.92 | 73.22 | 31.08 | 54.64 | 6.09 | 48.90 | 17.60 | 43.02 | 0.36 | 49.20 | 89.87 | 3.20 | 27.34 | 54.97 |
| 27 | 7.07 | 74.18 | 43.27 | 43.47 | 8.03 | 56.59 | 16.98 | 37.10 | 0.39 | 73.64 | 91.51 | 2.10 | 28.37 | 56.57 |
| 28 | 10.32 | 73.35 | 41.39 | 44.86 | 10.76 | 51.96 | 23.58 | 36.94 | 0.57 | 63.73 | 90.69 | 2.37 | 29.42 | 55.02 |

\* *All numbers denoted are percentages*

# P000C0109

## 2016 General Election

| District | 2020 Census | | Total Registered Voters (RV) | | | | | DEM RV | | REP RV | | NPA RV | | Black RV | | | Hispanic RV | | | Total Voter Turnout (VT) | | | | | DEM VT | | REP VT | | NPA VT | | Black VT | | | Hispanic VT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BVAP | HVAP | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA |
| 20 | 50.11 | 22.98 | 62.65 | 13.78 | 23.56 | 46.16 | 13.36 | 61.13 | 10.40 | 8.72 | 15.56 | 28.18 | 19.88 | 82.97 | 2.60 | 14.38 | 48.78 | 16.05 | 35.07 | 65.54 | 14.32 | 20.14 | 46.50 | 13.19 | 61.32 | 10.25 | 6.78 | 15.33 | 26.39 | 21.10 | 86.44 | 2.09 | 11.43 | 50.94 | 16.64 | 32.21 |
| 24 | 42.17 | 38.46 | 63.38 | 11.59 | 25.03 | 46.38 | 25.13 | 61.86 | 17.92 | 9.26 | 42.92 | 24.37 | 35.13 | 84.53 | 2.31 | 13.15 | 45.20 | 19.79 | 35.00 | 65.41 | 11.92 | 22.67 | 45.88 | 25.36 | 61.29 | 17.92 | 7.14 | 43.70 | 21.73 | 37.13 | 87.39 | 1.85 | 10.74 | 46.21 | 20.54 | 33.19 |
| 26 | 6.92 | 73.22 | 31.77 | 36.71 | 31.52 | 5.52 | 61.17 | 13.79 | 60.25 | 0.61 | 58.17 | 2.86 | 65.57 | 79.39 | 4.05 | 16.34 | 31.29 | 34.91 | 33.79 | 31.62 | 39.78 | 28.60 | 5.19 | 58.72 | 13.50 | 58.39 | 0.47 | 55.18 | 2.52 | 64.01 | 82.26 | 3.59 | 13.86 | 31.44 | 37.38 | 31.17 |
| 27 | 7.07 | 74.18 | 35.20 | 33.97 | 30.83 | 6.50 | 61.66 | 14.81 | 50.08 | 0.71 | 71.72 | 3.38 | 63.77 | 80.21 | 3.69 | 16.01 | 28.59 | 39.51 | 31.89 | 35.84 | 35.99 | 28.17 | 5.97 | 61.78 | 13.87 | 49.38 | 0.51 | 71.98 | 2.88 | 64.51 | 83.27 | 3.09 | 13.60 | 28.64 | 41.93 | 29.42 |
| 28 | 10.32 | 73.35 | 35.50 | 31.47 | 33.04 | 9.00 | 61.18 | 19.97 | 52.44 | 1.01 | 66.69 | 4.80 | 65.32 | 78.76 | 3.52 | 17.63 | 30.43 | 34.30 | 35.27 | 36.10 | 34.25 | 29.65 | 8.36 | 61.13 | 19.08 | 51.83 | 0.77 | 66.29 | 4.07 | 66.47 | 82.39 | 3.16 | 14.43 | 30.61 | 37.14 | 32.25 |

\*  *All numbers denoted are percentages*

## P000C0109

| District | 2016 Primary Election | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2020 Census | | Total Voter Turnout (VT) | | | | DEM VT | | REP VT | | Black VT | | Hispanic VT | |
| | BVAP | HVAP | DEM | REP | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | DEM | REP |
| 20 | 50.11 | 22.98 | 78.75 | 13.93 | 54.65 | 5.78 | 65.25 | 4.34 | 6.22 | 10.05 | 94.03 | 1.59 | 59.22 | 24.23 |
| 24 | 42.17 | 38.46 | 76.09 | 12.97 | 54.07 | 19.48 | 66.37 | 11.46 | 6.13 | 51.18 | 93.40 | 1.47 | 44.75 | 34.08 |
| 26 | 6.92 | 73.22 | 26.58 | 57.80 | 4.89 | 53.24 | 16.49 | 46.12 | 0.31 | 53.67 | 89.71 | 3.68 | 23.02 | 58.26 |
| 27 | 7.07 | 74.18 | 36.74 | 47.25 | 6.96 | 61.52 | 17.42 | 38.64 | 0.36 | 76.72 | 91.98 | 2.42 | 23.08 | 58.92 |
| 28 | 10.32 | 73.35 | 36.78 | 46.40 | 8.47 | 56.29 | 20.84 | 38.68 | 0.49 | 66.74 | 90.48 | 2.71 | 25.28 | 55.01 |

\* *All numbers denoted are percentages*

# P000C0109

| District | 2020 Census | | Total Registered Voters (RV) | | | | | DEM RV | | REP RV | | NPA RV | | Black RV | | | Hispanic RV | | | Total Voter Turnout (VT) | | | | | DEM VT | | REP VT | | NPA VT | | Black VT | | | Hispanic VT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BVAP | HVAP | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA |
| 20 | 50.11 | 22.98 | 63.24 | 13.95 | 22.80 | 45.88 | 11.86 | 60.64 | 10.40 | 8.84 | 14.11 | 27.53 | 18.22 | 83.59 | 2.69 | 13.68 | 48.22 | 16.60 | 35.02 | 68.71 | 15.02 | 16.26 | 49.26 | 8.00 | 63.46 | 5.79 | 6.94 | 11.38 | 28.00 | 13.99 | 88.51 | 2.12 | 9.25 | 49.71 | 21.38 | 28.45 |
| 24 | 42.17 | 38.46 | 64.55 | 11.67 | 23.78 | 47.82 | 23.30 | 63.04 | 17.92 | 9.86 | 43.42 | 25.13 | 33.33 | 85.09 | 2.40 | 12.50 | 44.21 | 21.74 | 34.03 | 71.02 | 11.92 | 17.03 | 53.66 | 18.30 | 67.76 | 11.21 | 7.82 | 43.30 | 26.96 | 30.23 | 89.67 | 1.74 | 8.56 | 43.50 | 28.22 | 28.15 |
| 26 | 6.92 | 73.22 | 31.69 | 37.60 | 30.72 | 6.01 | 61.00 | 15.27 | 60.25 | 0.64 | 60.00 | 3.00 | 65.08 | 80.51 | 3.97 | 15.32 | 30.23 | 36.99 | 32.78 | 28.87 | 48.42 | 22.70 | 6.30 | 51.34 | 18.75 | 45.37 | 0.45 | 53.02 | 2.78 | 55.30 | 85.93 | 3.45 | 10.02 | 25.51 | 50.00 | 24.45 |
| 27 | 7.07 | 74.18 | 34.61 | 35.52 | 29.87 | 6.99 | 60.35 | 16.31 | 50.08 | 0.76 | 71.34 | 3.58 | 62.88 | 80.81 | 3.87 | 15.28 | 26.89 | 41.99 | 31.12 | 35.88 | 42.18 | 21.94 | 7.42 | 56.62 | 17.85 | 37.45 | 0.54 | 71.01 | 3.51 | 60.29 | 86.38 | 3.04 | 10.38 | 23.73 | 52.90 | 23.36 |
| 28 | 10.32 | 73.35 | 35.30 | 32.26 | 32.44 | 9.55 | 59.58 | 21.43 | 52.44 | 1.09 | 66.54 | 5.01 | 63.51 | 79.20 | 3.70 | 17.02 | 29.40 | 36.03 | 34.58 | 35.79 | 40.22 | 23.98 | 10.10 | 53.20 | 23.99 | 38.84 | 0.70 | 63.13 | 5.04 | 57.95 | 85.03 | 2.80 | 11.97 | 26.13 | 47.73 | 26.12 |

*  All numbers denoted are percentages

## P000C0109

| District | 2014 Primary Election |||||||||||||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2020 Census || Total Voter Turnout (VT) |||| DEM VT || REP VT || Black VT || Hispanic VT ||
| | BVAP | HVAP | DEM | REP | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | DEM | REP |
| 20 | 50.11 | 22.98 | 80.14 | 12.86 | 55.93 | 3.75 | 65.77 | 2.66 | 7.23 | 7.60 | 94.23 | 1.66 | 56.95 | 26.08 |
| 24 | 42.17 | 38.46 | 78.64 | 11.23 | 61.23 | 14.35 | 72.68 | 7.39 | 7.55 | 49.34 | 93.34 | 1.39 | 40.50 | 38.63 |
| 26 | 6.92 | 73.22 | 26.56 | 58.54 | 6.08 | 54.13 | 20.85 | 39.81 | 0.34 | 57.98 | 91.12 | 3.26 | 19.53 | 62.71 |
| 27 | 7.07 | 74.18 | 36.14 | 49.14 | 7.49 | 58.27 | 18.92 | 31.34 | 0.42 | 75.95 | 91.33 | 2.74 | 19.44 | 64.04 |
| 28 | 10.32 | 73.35 | 34.44 | 49.79 | 8.78 | 50.09 | 22.70 | 28.97 | 0.46 | 62.96 | 89.00 | 2.63 | 19.92 | 62.58 |

*  *All numbers denoted are percentages*

# P000C0109

## 2012 General Election

| District | 2020 Census | | Total Registered Voters (RV) | | | | | DEM RV | | REP RV | | NPA RV | | Black RV | | | Hispanic RV | | | Total Voter Turnout (VT) | | | | | DEM VT | | REP VT | | NPA VT | | Black VT | | | Hispanic VT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BVAP | HVAP | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA | DEM | REP | NPA | Black | Hisp. | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | NPA | DEM | REP | NPA |
| 20 | 50.11 | 22.98 | 63.85 | 14.61 | 21.53 | 44.90 | 11.06 | 59.22 | 8.54 | 9.04 | 13.21 | 26.69 | 16.97 | 84.23 | 2.94 | 12.80 | 49.31 | 17.45 | 33.05 | 67.48 | 14.35 | 18.16 | 48.51 | 9.95 | 62.43 | 7.50 | 7.71 | 12.86 | 28.92 | 16.60 | 86.85 | 2.28 | 10.83 | 50.82 | 18.55 | 30.29 |
| 24 | 42.17 | 38.46 | 65.52 | 12.07 | 22.41 | 48.21 | 22.40 | 62.94 | 15.32 | 10.36 | 42.98 | 25.52 | 32.03 | 85.54 | 2.59 | 11.86 | 44.81 | 23.15 | 32.03 | 68.44 | 11.86 | 19.69 | 50.60 | 21.13 | 64.90 | 14.07 | 8.72 | 43.77 | 26.06 | 32.00 | 87.79 | 2.04 | 10.14 | 45.57 | 24.57 | 29.83 |
| 26 | 6.92 | 73.22 | 32.51 | 38.76 | 28.73 | 6.35 | 60.94 | 16.00 | 57.00 | 0.66 | 61.03 | 3.09 | 65.25 | 81.88 | 4.01 | 13.97 | 30.40 | 38.81 | 30.77 | 32.06 | 42.58 | 25.34 | 6.58 | 57.72 | 17.35 | 53.39 | 0.49 | 57.93 | 3.13 | 62.77 | 84.49 | 3.18 | 12.06 | 29.66 | 42.74 | 27.56 |
| 27 | 7.07 | 74.18 | 35.43 | 36.57 | 28.00 | 7.28 | 59.25 | 16.78 | 45.38 | 0.81 | 70.81 | 3.70 | 61.72 | 81.63 | 4.09 | 14.21 | 27.14 | 43.70 | 29.17 | 35.85 | 39.17 | 24.99 | 7.29 | 58.71 | 17.14 | 43.12 | 0.61 | 71.05 | 3.63 | 61.71 | 84.27 | 3.26 | 12.44 | 26.33 | 47.40 | 26.26 |
| 28 | 10.32 | 73.35 | 36.05 | 33.49 | 30.46 | 9.78 | 58.37 | 21.72 | 48.03 | 1.17 | 65.83 | 5.10 | 62.40 | 80.07 | 3.99 | 15.89 | 29.67 | 37.77 | 32.56 | 36.60 | 36.76 | 26.65 | 10.20 | 56.82 | 23.14 | 44.76 | 0.92 | 65.03 | 5.22 | 62.03 | 83.00 | 3.30 | 13.64 | 28.83 | 42.06 | 29.09 |

*  All numbers denoted are percentages

## P000C0109

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2012 Primary Election** | | | | | | | | | | | | | | | |
| District | 2020 Census | | Total Voter Turnout (VT) | | | | DEM VT | | REP VT | | Black VT | | Hispanic VT | |
| | BVAP | HVAP | DEM | REP | Black | Hisp. | Black | Hisp. | Black | Hisp. | DEM | REP | DEM | REP |
| 20 | 50.11 | 22.98 | 75.23 | 16.98 | 52.73 | 3.77 | 65.20 | 2.61 | 6.08 | 6.83 | 93.02 | 1.96 | 52.12 | 30.78 |
| 24 | 42.17 | 38.46 | 76.47 | 12.91 | 59.93 | 15.91 | 72.72 | 7.92 | 7.57 | 50.27 | 92.79 | 1.63 | 38.04 | 40.78 |
| 26 | 6.92 | 73.72 | 23.95 | 61.25 | 5.67 | 56.12 | 21.26 | 44.17 | 0.38 | 57.91 | 89.78 | 4.09 | 18.85 | 63.20 |
| 27 | 7.07 | 74.18 | 33.42 | 51.14 | 7.87 | 60.40 | 21.45 | 33.56 | 0.40 | 75.89 | 91.14 | 2.57 | 18.57 | 64.25 |
| 28 | 10.32 | 73.35 | 35.03 | 48.72 | 9.57 | 53.03 | 24.43 | 31.63 | 0.66 | 64.72 | 89.40 | 3.34 | 20.90 | 59.45 |

\* *All numbers denoted are percentages*

P000C0109

| County Share of Population | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **County** | **District** | **Total Population** | **County** | **District** | **Total Population** | **County** | **District** | **Total Population** |
| Alachua | 3 | 278,468 | Lake | 6 | 117,124 | Seminole | 7 | 470,856 |
| Baker | 3 | 28,259 | Lake | 11 | 266,832 | St. Johns | 5 | 234,278 |
| Bay | 2 | 175,216 | Lee | 17 | 148,368 | St. Johns | 6 | 39,147 |
| Bradford | 3 | 28,303 | Lee | 19 | 612,454 | St. Lucie | 21 | 329,226 |
| Brevard | 8 | 606,612 | Leon | 2 | 292,198 | Sumter | 11 | 129,752 |
| Broward | 20 | 535,322 | Levy | 3 | 42,915 | Suwannee | 3 | 43,474 |
| Broward | 23 | 561,713 | Liberty | 2 | 7,974 | Taylor | 2 | 21,796 |
| Broward | 24 | 78,119 | Madison | 2 | 17,968 | Union | 3 | 16,147 |
| Broward | 25 | 769,221 | Manatee | 16 | 399,710 | Volusia | 6 | 255,178 |
| Calhoun | 2 | 13,648 | Marion | 3 | 206,835 | Volusia | 7 | 298,365 |
| Charlotte | 17 | 186,847 | Marion | 6 | 169,073 | Wakulla | 2 | 33,764 |
| Citrus | 12 | 153,843 | Marion | 12 | 0 | Walton | 1 | 47,648 |
| Clay | 4 | 218,245 | Martin | 21 | 158,431 | Walton | 2 | 27,657 |
| Collier | 18 | 4,861 | Miami-Dade | 24 | 691,102 | Washington | 2 | 25,318 |
| Collier | 19 | 156,767 | Miami-Dade | 26 | 555,097 | | | |
| Collier | 26 | 214,124 | Miami-Dade | 27 | 769,221 | | | |
| Columbia | 3 | 69,698 | Miami-Dade | 28 | 686,347 | | | |
| DeSoto | 18 | 33,976 | Monroe | 28 | 82,874 | | | |
| Dixie | 3 | 16,759 | Nassau | 4 | 90,352 | | | |
| Duval | 4 | 460,624 | Okaloosa | 1 | 211,668 | | | |
| Duval | 5 | 534,943 | Okeechobee | 18 | 39,644 | | | |
| Escambia | 1 | 321,905 | Orange | 7 | 0 | | | |
| Flagler | 6 | 115,378 | Orange | 8 | 2,821 | | | |
| Franklin | 2 | 12,451 | Orange | 9 | 326,695 | | | |
| Gadsden | 2 | 43,826 | Orange | 10 | 769,221 | | | |
| Gilchrist | 3 | 17,864 | Orange | 11 | 331,171 | | | |
| Glades | 18 | 12,126 | Osceola | 9 | 388,656 | | | |
| Gulf | 2 | 14,192 | Palm Beach | 20 | 233,899 | | | |
| Hamilton | 3 | 14,004 | Palm Beach | 21 | 281,564 | | | |
| Hardee | 18 | 25,327 | Palm Beach | 22 | 769,220 | | | |
| Hendry | 18 | 39,619 | Palm Beach | 23 | 207,508 | | | |
| Hernando | 12 | 194,515 | Pasco | 12 | 420,863 | | | |
| Highlands | 18 | 101,235 | Pasco | 15 | 141,028 | | | |
| Hillsborough | 14 | 579,335 | Pinellas | 13 | 769,221 | | | |
| Hillsborough | 15 | 510,916 | Pinellas | 14 | 189,886 | | | |
| Hillsborough | 16 | 369,511 | Polk | 9 | 53,870 | | | |
| Holmes | 2 | 19,653 | Polk | 11 | 41,466 | | | |
| Indian River | 8 | 159,788 | Polk | 15 | 117,277 | | | |
| Jackson | 2 | 47,319 | Polk | 18 | 512,433 | | | |
| Jefferson | 2 | 14,510 | Putnam | 6 | 73,321 | | | |
| Lafayette | 2 | 1,731 | Santa Rosa | 1 | 188,000 | | | |
| Lafayette | 3 | 6,495 | Sarasota | 17 | 434,006 | | | |

P000C0109

| City Split List | | |
|---|---|---|
| **City** | **District** | **Total Population** |
| **Deerfield Beach** | 20 | 27,968 |
| **Deerfield Beach** | 23 | 58,891 |
| **Fort Lauderdale** | 20 | 55,428 |
| **Fort Lauderdale** | 23 | 105,601 |
| **Fort Lauderdale** | 25 | 21,731 |
| **Jacksonville** | 4 | 459,228 |
| **Jacksonville** | 5 | 490,383 |
| **Lakeland** | 15 | 49,933 |
| **Lakeland** | 18 | 62,708 |
| **Longboat Key** | 16 | 2,746 |
| **Longboat Key** | 17 | 4,759 |
| **Margate** | 20 | 11,080 |
| **Margate** | 23 | 47,632 |
| **Miami** | 24 | 86,644 |
| **Miami** | 26 | 66,430 |
| **Miami** | 27 | 289,167 |
| **Miramar** | 24 | 56,729 |
| **Miramar** | 25 | 77,992 |
| **Oakland Park** | 20 | 15,037 |
| **Oakland Park** | 23 | 29,192 |
| **Orlando** | 9 | 81,845 |
| **Orlando** | 10 | 225,262 |
| **Orlando** | 11 | 466 |
| **Plantation** | 20 | 44,325 |
| **Plantation** | 25 | 47,425 |
| **Pompano Beach** | 20 | 49,811 |
| **Pompano Beach** | 23 | 62,235 |
| **Riviera Beach** | 20 | 29,204 |
| **Riviera Beach** | 21 | 8,400 |
| **St. Petersburg** | 13 | 82,168 |
| **St. Petersburg** | 14 | 176,140 |
| **Tampa** | 14 | 287,435 |
| **Tampa** | 15 | 97,524 |
| **West Palm Beach** | 20 | 59,919 |
| **West Palm Beach** | 21 | 21,937 |
| **West Palm Beach** | 22 | 35,559 |

| District | City Boundaries(%) | County Boundaries(%) | Road Boundaries(%) | Water Boundaries(%) | Rail Boundaries(%) | Non Geo/Pol Boundaries(%) |
|---|---|---|---|---|---|---|
| **Boundary Analysis** | | | | | | |
| Statewide Avg. | 14.21 | 56.29 | 17.89 | 39.43 | 0.75 | 11.50 |
| 1 | 8 | 78 | 10 | 53 | 0 | 3 |
| 2 | 5 | 84 | 7 | 49 | 0 | 3 |
| 3 | 6 | 85 | 7 | 32 | 0 | 5 |
| 4 | 8 | 86 | 2 | 55 | 0 | 2 |
| 5 | 16 | 48 | 7 | 79 | 0 | 13 |
| 6 | 16 | 42 | 17 | 32 | 2 | 15 |
| 7 | 22 | 68 | 9 | 40 | 2 | 8 |
| 8 | 0 | 89 | 7 | 44 | 0 | 4 |
| 9 | 2 | 61 | 25 | 27 | 0 | 12 |
| 10 | 13 | 26 | 35 | 2 | 1 | 37 |
| 11 | 14 | 49 | 27 | 26 | 2 | 13 |
| 12 | 7 | 84 | 13 | 63 | 0 | 8 |
| 13 | 15 | 75 | 12 | 67 | 0 | 3 |
| 14 | 12 | 19 | 46 | 21 | 1 | 13 |
| 15 | 3 | 1 | 61 | 4 | 0 | 32 |
| 16 | 1 | 73 | 21 | 32 | 1 | 2 |
| 17 | 9 | 84 | 5 | 39 | 0 | 6 |
| 18 | 6 | 77 | 8 | 21 | 0 | 9 |
| 19 | 11 | 65 | 12 | 59 | 0 | 10 |
| 20 | 28 | 37 | 15 | 13 | 3 | 22 |
| 21 | 9 | 68 | 7 | 48 | 0 | 16 |
| 22 | 36 | 24 | 18 | 36 | 0 | 24 |
| 23 | 29 | 28 | 16 | 38 | 9 | 20 |
| 24 | 36 | 36 | 32 | 46 | 0 | 10 |
| 25 | 64 | 29 | 12 | 20 | 0 | 15 |
| 26 | 11 | 54 | 28 | 13 | 0 | 9 |
| 27 | 10 | 18 | 34 | 59 | 0 | 7 |
| 28 | 1 | 88 | 8 | 86 | 0 | 1 |

**HOUSE OF REPRESENTATIVES STAFF ANALYSIS**

**BILL #:**　　　HB 1C　　Establishing the Congressional Districts of the State
**SPONSOR(S):** Leek
**TIED BILLS:**　　　　**IDEN./SIM. BILLS:**　SB 2-C

| REFERENCE | ACTION | ANALYST | STAFF DIRECTOR or BUDGET/POLICY CHIEF |
|---|---|---|---|
| 1) Congressional Redistricting Subcommittee | | Wagoner | Kelly |

### SUMMARY ANALYSIS

The U.S. Constitution requires the reapportionment of the U.S. House of Representatives every ten years, which includes the distribution of the House's 435 seats between the states, and the equalization of population between districts within each state.

The 2020 Census revealed an unequal distribution of growth across Florida's congressional districts. Therefore, districts must be adjusted to correct population differences.

On March 4, 2022, the Florida legislature passed CS/SB 102 reapportioning the Congressional Districts of the state. On March 29, 2022 Governor DeSantis vetoed CS/SB 102 and issued a proclamation calling the Legislature into Special Session from April 19-22, 2022 to address the redrawing of the state's congressional districts.

**Redistricting Plan P000C0109**: HB 1C reapportions the resident population of Florida into 28 single-member Congressional districts, as required by state and federal law.

This bill would substantially amend Chapter 8 of the Florida Statutes.

When compared to the existing 27 Congressional districts, this bill would:

- Reduce the number of cities split from 39 to 16;
- Reduce the number of counties split from 18 to 17;
- Improves the statewide averages of the Convex Hull, Reock and Polsby-Popper mathematical compactness scores, and
- Maintains a population deviation of one person.

The bill creates s. 8.062, F.S., and s. 8.063, F.S., which limit the choice of venue for state court actions challenging the state's congressional districts.

The bill appropriates $1 Million in nonrecurring funding from the General Revenue Fund to the Florida Department of State for any litigation related expenses incurred as a result of challenges to the state's congressional districts.

Upon approval by the Legislature, this bill is subject to the Governor's veto powers.

FULL ANALYSIS

## I. SUBSTANTIVE ANALYSIS

A.  EFFECT OF PROPOSED CHANGES:

**Current Situation**

**The 2020 Census**

According to Article I, Section 2 of the U.S. Constitution, the U.S. Census Bureau is required to do an "actual enumeration" of all people living in the United States every 10 years.[1] While the census results in many work products and data sets, the two most relevant to redistricting include the Apportionment Counts and Public Law 94-171 redistricting data (commonly referred to as the "P.L. Data") for each state. The redistricting dataset contains summary statistics on population, demographics and housing per census block. The included population data is categorized by total population and total population for individuals 18 years and older, both by race and Hispanic or Latino origin.

For the first time in its 40 years of modern data collection and distribution, the U.S. Census Bureau missed its statutory deadlines for delivering Apportionment Counts and the redistricting data to the states.[2] These delays were a result of wildfires, hurricanes, civil unrest, and the COVID-19 pandemic experienced during 2020.

The actual release date of each state's Apportionment Count was on April 26, 2021, close to four months behind its statutory deadline of December 31, 2020. And the official release date for the redistricting data was August 12, 2021, missing its statutory deadline of March 31, 2021 by close to six months. In an effort to get redistricting data released to the states as efficiently as possible, the data was first released in a "legacy file" format on August 12 while the official data release, deemed to be a more "user-friendly" format, occurred on September 30, 2021.

Although the U.S. Census Bureau faced unprecedented hurdles and timeline delays, Florida's enumeration was completed at a 99.9 percent rate.[3] Florida reached the same rate of completion as the national average, and this success was aided by traditional paper methods, in addition to the census being offered online for the first time in history.

**Results of the 2020 Census**

According to the 2020 Census, 21,538,187 people resided in Florida on April 1, 2020, which represents a population growth of 2,736,877 in Florida residents between the 2010 to 2020 censuses. This increase in population also resulted in Florida gaining a congressional district, bringing the total to 28 districts.

After the 2010 Census, the ideal population for each district in Florida was:

- Congressional: 696,345, based on 27 districts
- State Senate: 470,033, based on 40 districts
- State House: 156,678, based on 120 districts

---

[1] U.S. Const. art. 1, §2.
[2] 13 U.S.C. § 141 (1976).
[3] *2020 Census Response Rate Update: 99.98% Complete Nationwide*. U.S. Census Bureau (Oct. 19, 2020), 2020 Census Response Rate Update: 99.98% Complete Nationwide (last visited Jan.14, 2022).

After the 2020 Census, the ideal population for each district in Florida was:

- Congressional: 769,221, based on 28 districts
- State Senate: 538,455, based on 40 districts
- State House: 179,485, based on 120 districts

As in previous decades, the 2020 Census revealed an unequal increase and shift in population growth amongst the state's legislative and congressional districts. Therefore, districts must be adjusted to comply with "one-person, one vote," such that each district must be nearly as equal in population as practicable.

Table 1 below shows the changes in population for each of Florida's current Congressional districts and their subsequent deviation from the new ideal population of 769,221 residents.

### *Table 1. Florida Congressional Districts Change in Population from 2010 to 2020*

| NAME | 2010 Pop | 2020 Pop | Change | % Change | Over/Under Population | Over-Under Population % |
|---|---|---|---|---|---|---|
| 1 | 696,345 | 807,881 | 111,536 | 16.02% | 38,660 | 5.55% |
| 2 | 696,345 | 727,856 | 31,511 | 4.53% | -41,365 | -5.94% |
| 3 | 696,345 | 766,133 | 69,788 | 10.02% | -3,088 | -0.44% |
| 4 | 696,345 | 871,884 | 175,539 | 25.21% | 102,663 | 14.74% |
| 5 | 696,345 | 748,910 | 52,565 | 7.55% | -20,311 | -2.92% |
| 6 | 696,345 | 796,254 | 99,909 | 14.35% | 27,033 | 3.88% |
| 7 | 696,345 | 788,518 | 92,173 | 13.24% | 19,297 | 2.77% |
| 8 | 696,344 | 783,753 | 87,409 | 12.55% | 14,532 | 2.09% |
| 9 | 696,344 | 955,602 | 259,258 | 37.23% | 186,381 | 26.77% |
| 10 | 696,345 | 873,804 | 177,459 | 25.48% | 104,583 | 15.02% |
| 11 | 696,344 | 820,835 | 124,491 | 17.88% | 51,614 | 7.41% |
| 12 | 696,345 | 807,137 | 110,792 | 15.91% | 37,916 | 5.45% |
| 13 | 696,345 | 727,465 | 31,120 | 4.47% | -41,756 | -6.00% |
| 14 | 696,345 | 787,447 | 91,102 | 13.08% | 18,226 | 2.62% |
| 15 | 696,345 | 819,853 | 123,508 | 17.74% | 50,632 | 7.27% |
| 16 | 696,345 | 884,047 | 187,702 | 26.96% | 114,826 | 16.49% |
| 17 | 696,345 | 779,955 | 83,610 | 12.01% | 10,734 | 1.54% |
| 18 | 696,344 | 794,724 | 98,380 | 14.13% | 25,503 | 3.66% |
| 19 | 696,345 | 835,012 | 138,667 | 19.91% | 65,791 | 9.45% |
| 20 | 696,344 | 776,283 | 79,939 | 11.48% | 7,062 | 1.01% |
| 21 | 696,345 | 788,007 | 91,662 | 13.16% | 18,786 | 2.70% |
| 22 | 696,345 | 785,756 | 89,411 | 12.84% | 16,535 | 2.37% |
| 23 | 696,345 | 769,356 | 73,011 | 10.48% | 135 | 0.02% |
| 24 | 696,345 | 742,542 | 46,197 | 6.63% | -26,679 | -3.83% |
| 25 | 696,345 | 771,434 | 75,089 | 10.78% | 2,213 | 0.32% |
| 26 | 696,345 | 787,914 | 91,569 | 13.15% | 18,693 | 2.68% |
| 27 | 696,345 | 739,825 | 43,480 | 6.24% | -29,396 | -4.22% |

The law governing the reapportionment and redistricting of congressional and state legislative districts invokes the U.S. Constitution, the Florida Constitution, federal statutes, and a variety of state and federal case law. Therefore, all redistricting plans must comply with all requirements of the U.S. Constitution, the federal Voting Rights Act, the Florida Constitution, and applicable court decisions.

## U.S. Constitution

The U.S. Constitution requires the reapportionment of the U.S. House of Representatives every 10 years to distribute each of the House of Representatives' 435 seats between the states and to equalize population between districts within each state.

Article I, Section 4 of the U.S. Constitution provides that "[t]he Time, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators."  The U.S. Constitution thus delegates to state legislature's authority, subject to congressional regulation, to create congressional districts.

The requirement that each district be equal in population applies differently to congressional districts than to state legislative districts. The populations of congressional districts must achieve absolute mathematical equality, with no *de minimis* exception.[4]  Limited population variances are permitted if they are "unavoidable despite a good faith effort" or if a valid "justification is shown."[5]

In addition to state specific requirements, states are obligated to redistrict based on the principle interpreted by the Court as "one-person, one-vote."[6]  In *Reynolds*, the U.S. Supreme Court held that the 14th Amendment required that seats in state legislature be reapportioned on a population basis.  The Supreme Court concluded:

> …"the basic principle of representative government remains, and must remain, unchanged – the weight of a citizen's vote cannot be made to depend on where he lives. Population is, of necessity, the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies…The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races.  We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis."[7]

The Court went on to conclude that decennial reapportionment was a rational approach to readjust legislative representation to take into consideration population shifts and growth.[8]

In practice, congressional redistricting has strictly adhered to the requirement of exact mathematical equality.  In *Kirkpatrick v. Preisler* the Court rejected several justifications for violating this principle, including "a desire to avoid fragmenting either political subdivisions or areas with distinct economic and social interests, considerations of practical politics, and even an asserted preference for geographically compact districts."[9]

For state legislative districts, the courts have permitted a greater population deviation amongst districts. The populations of state legislative districts must be "substantially equal."[10] Substantial equality of population has come to generally mean that a legislative plan will not be held to violate the Equal Protection Clause if the difference between the least populous and most populous district is less than 10 percent.[11]  Nevertheless, any significant deviation (even within the 10 percent overall deviation

---

[4] *Kirkpatrick v. Preisler,* 394 U.S. 526, 531 (1969).
[5] Id.
[6] *Baker v. Carr*, 369 U.S. 186 (1962).
[7] *Reynolds v. Sims,* 377 U.S. 533, 568 (1964).
[8] *Reynolds v. Sims,* 377 U.S. at 584.
[9] *Kirkpatrick v. Preisler,* 394 U.S. at 531.
[10] *Reynolds v. Sims*, 377 U.S. at 568.
[11] *Chapman v. Meier,* 420 U.S. 1 (1975); *Connor v. Finch,* 431 U.S. 407, 418 (1977).

margin) must be "based on legitimate considerations incident to the effectuation of a rational state policy,"[12] including "the integrity of political subdivisions, the maintenance of compactness and contiguity in legislative districts, or the recognition of natural or historical boundary lines."[13]

However, states should not interpret this 10 percent standard to be a safe haven.[14] Additionally, nothing in the U.S. Constitution or case law prevents states from imposing stricter standards for population equality.

Florida's benchmark maps from the 2012 redistricting cycle have population deviation ranges of 3.97% for its State House districts, 1.98% for it State Senate districts,[15] and plus or minus one person for Congressional districts.[16] The Congressional districts proposed by the bill have a population deviation range of one person.

## The Voting Rights Act

Congress passed the Voting Rights Act (VRA) in 1965. The VRA protects the right to vote as guaranteed by the 15th Amendment to the U.S. Constitution. In addition, the VRA enforces the protections of the 14th Amendment to the U.S. Constitution by ensuring minority voters an equal opportunity to participate in the political process and to elect candidates of their choice.

## The Voting Rights Act – Section 2

Common challenges to congressional and state legislative districts generally arise under Section 2 of the Voting Rights Act. Section 2 provides: "No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State…in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the "guarantees" provided to language minorities.[17] This provision prohibits "vote-dilution," which was further defined in the *Gingles* case. The purpose of Section 2 is to ensure that minority voters have an equal opportunity along with other members of the electorate to participate in the political process and elect representatives of their choice.[18]

The Supreme Court set forth the criteria of a vote-dilution claim in *Thornburg v. Gingles*.[19] A plaintiff must show that:

1. A minority group is sufficiently large and geographically compact to constitute a majority in a single-member district;
2. The minority group is politically cohesive, and
3. White voters vote sufficiently as a bloc to enable them usually to defeat the candidate preferred by the minority group.

---

[12] *Reynolds,* 377 U.S. at 579.

[13] *Swann v. Adams,* 385 U.S. 440, 444 (1967).

[14] *Marylanders for Fair Representation Inc. vs. Schafer*, 849 F. Supp. 1022, 1032 (D. Md. 1994).

[15] Florida House of Representatives, Staff Analysis of 2012 Senate Joint Resolution 1176, p. 21 and 40 (March 9, 2012).

[16] Florida House of Representatives, Staff Analysis of 2012 Senate Bill 1174, p. 17 (March 9, 2012).

[17] 52 U.S.C. § 10301(a).

[18] 52 U.S.C. § 10301(b); *Voinovich v. Quilter*, 507 U.S. 146, 155 (1993).

[19] *Thornburg vs. Gingles,* 478 U.S. 30 (1986).

The three "*Gingles* factors" are necessary, but not sufficient, to show a violation of Section 2.[20] To determine whether minority voters have been denied an equal opportunity to participate in the political process and elect representatives of their choice, a court must examine the totality of the circumstances.[21]

This analysis requires consideration of the so-called "Senate factors," which assess historical patterns of discrimination and the success, or lack thereof, of minorities in participating in campaigns and being elected to office. [22]   Generally, these "Senate factors" were born in an attempt to distance Section 2 claims from standards that would otherwise require plaintiffs to prove "intent," which Congress viewed as an additional and largely excessive burden of proof, because "it diverts the judicial injury from the crucial question of whether minorities have equal access to the electoral process to a historical question of individual motives."[23]

In *Bartlett v. Strickland*, the Supreme Court provided a "bright line" distinction between majority-minority districts and other minority districts.  The Court "concluded that Section 2 does not require states to "draw election-district lines to allow a racial minority to join with other voters to elect the minority's candidate of choice, even where the minority is less than 50 percent of the voting-age population in in the district to be drawn."[24] However, the Court made clear that, where no other prohibition exists, states retain flexibility to implement crossover districts—districts in which minority voters are not a majority of the voting-age population, but, at least potentially, are large enough to elect the candidates of their choice with help from voters who are members of the majority, and who cross over to support the minority's preferred candidate. In the opinion of the Court, Justice Kennedy stated as follows:

> "Much like § 5, § 2 allows States to choose their own method of complying with the Voting Rights Act, and we have said that may include drawing crossover districts…When we address the mandate of § 2, however, we must note it is not concerned with maximizing minority voting strength…and, as a statutory matter, §2 does not mandate creating or preserving crossover districts.  Our holding also should not be interpreted to entrench majority-minority districts by statutory command, for that, too, could pose constitutional concerns…States that wish to draw crossover districts are free to do so where no other prohibition exists. Majority-minority districts are only required if all three *Gingles* factors are met and if § 2 applies based on a totality of the circumstances. In areas with substantial crossover voting it is unlikely that the plaintiffs would be able to establish the third *Gingles* precondition—bloc voting by majority voters." [25]

**The Voting Rights Act – Section 5**

*Section 5 of the VRA is no longer in effect as further described below. This section is provided for historical context.*

Section 5 of the Voting Rights Act was an independent mandate separate and distinct from the requirements of Section 2. As interpreted by the Supreme Court, the purpose of Section 5 was the means "designed by Congress to banish the blight of racial discrimination in voting, which had infected the electoral process."[26] These preclearance measures were intended to protect against retrogression. Section 5 originally applied to six whole states; additional states, as well as cities and counties, were later added to the pre-clearance requirements. In subsequent years, some states implemented their own retrogression standards to protect against retrogression similar to Florida's constitutional standards found in Article. III,  Section(s) 20 and 21.

---

[20] *Johnson v. De Grandy*, 512 U.S. 997, 1011-12 (1994).

[21] 52 U.S.C. § 10301(b); *Thornburg vs. Gingles*, 478 U.S. at 46.

[22] Senate Report Number 417, 97th Congress, Session 2 (1982).

[23] *Id.*

[24] *Bartlett v. Strickland,* 556 U.S. 1, 6 (2009).

[25] Id.

[26]  *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966).

Section 5 required states that were included in "covered jurisdictions" to obtain federal preclearance of any new enactment of or amendment to a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting."[27] This included redistricting plans.

Five Florida counties – Collier, Hardee, Hendry, Hillsborough, and Monroe – had been designated as covered jurisdictions under Section 5 pre-clearance process.[28] These five Florida counties were added to the Voting Rights Act in 1975 to provide protections for language minorities. However, in 2013, the U.S. Supreme Court declared in *Shelby County v. Holder* that the "coverage formula" in Section 4 of the VRA – the formula by which Congress selected the jurisdictions that Section 5 covered – exceeded Congress's enforcement authority under the 15th Amendment.[29] The Court further stated that Congress could update the coverage formula with new legislation, but Congress has since failed to do so. After *Shelby*, the preclearance process established by Section 5 of the VRA was no longer in effect nationwide. However, the *Shelby* decision did not affect the validity of the statewide diminishment standards in Florida's Constitution, which protect the ability of racial and language minorities in Florida to elect the representatives of their choice.

**Equal Protection – Racial Gerrymandering**

Racial gerrymandering is "the deliberate and arbitrary distortion of district boundaries...for (racial) purposes."[30] Racial gerrymandering claims are justiciable under equal protection.[31] In the wake of *Shaw v. Reno*, the Court rendered several opinions that attempted to harmonize the balance between "competing constitutional guarantees that: one, no state shall purposefully discriminate against any individual on the basis of race; and two, members of a minority group shall be free from discrimination in the electoral process."[32]

To make a *prima facie* showing of impermissible racial gerrymandering, the burden rests with the plaintiff to "show, either through circumstantial evidence of a district's shape and demographics or more direct evidence going to legislative purpose, that race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district."[33] Thus, the "plaintiff must prove that the legislature subordinated traditional race-neutral districting principles…to racial considerations."[34] If the plaintiff meets this burden, "the State must demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest."[35] The U.S. Supreme Court assumed in *Bethune-Hill vs. Virginia State Board of Elections* that complying with the requirements set forth in the VRA can be considered a compelling state interest.[36]

---

[27] 52 U.S.C. § 10304
[28] Some states were covered in their entirety.  In other states only certain counties or cities were covered.
[29] *Shelby County v. Holder,* 570 U.S. 529 (2013)
[30] *Shaw v. Reno,* 509 U.S. 630, 640 (1993)
[31] *Shaw v. Reno,* 509 U.S. at 642.
[32] *Shaw v. Reno, Id* at 630*; U.S. v. Hays,* 515 U.S. 737 (1995); *Miller v. Johnson,* 515 U.S. 900 (1995); *Bush v. Vera,* 517 U.S. 952 (1996); *Shaw v. Hunt (Shaw II),* 517 U.S. 899 (1996); *Lawyer v. Dept. of Justice,* 521 U.S. 567 (1997); *Hunt v. Cromartie,* 526 U.S. 541 (1999); *Easley v. Cromartie,* 532 U.S. 234 (2001).
[33] *Miller v. Johnson,* 515 U.S. 900, 916 (1995).
[34] *Id.*
[35] *Miller v. Johnson,* 515 U.S. at 920.
[36] *Bethune-Hill v. VA. State Board of Elections.,* 580 U.S. 13 (2017).

**Equal Protection – Partisan Gerrymandering**

Partisan gerrymandering is the practice of "drawing electoral district lines to intentionally benefit one political party over others."[37] As determined in the 2019 U.S. Supreme Court case of *Rucho vs. Common Cause*, partisan gerrymandering claims are nonjusticiable under the United States Constitution and are considered to be "political questions" outside the scope of judicial review.[38].  The Court went further in *Rucho,* stating that the fundamental difficulty in formulating a standard for adjudicating partisan gerrymandering claims is "determining what is fair" and that there is "extreme difficulty on settling on a clear, manageable and politically neutral test."[39]

**Florida Statutes – Chapters 8 and 10**

Under Florida law, chapters(s) 8 and 10 provide the structure for apportionment of Congressional and State Senate and House districts, respectively. These sections provide the basis for how Florida will use official census data and census blocks to draw districts. Census Blocks are the smallest geographical unit or area for the collection and tabulation of population data.[40]

**Florida Constitution – Article III, Section 16**

Article III, Section 16 of the Florida Constitution requires the Legislature, by joint resolution at its regular session in the second year after the Census is conducted, to apportion the State into senatorial districts and representative districts.

The Florida Constitution requires the legislature, by joint resolution, to reapportion the state into not less than 30 nor more than 40 consecutively numbered senate districts and into not less than 80 and no more than 120 consecutively numbered representative districts.[41]   Redistricting must occur in the second year after each decennial census.[42] Florida is currently apportioned into 40 single-member senate districts[43] and 120 single-member representative districts.[44]

The Florida Constitution is silent with respect to process for congressional redistricting.  Article I, Section 4 of the U.S. Constitution grants to each state legislature the authority to apportion seats designated to that state by providing the legislative bodies with the authority to determine the times, place and manner of holding elections for senators and representatives. Consistent there with, Florida has adopted its congressional apportionment plans by legislation subject to gubernatorial approval.[45] Congressional apportionment plans are not subject to automatic review by the Florida Supreme Court.

---

[37] *Redistricting Law 2020.*  National Conference of State Legislatures.  November 2019.  Page 99.
[38] *Rucho v. Common Cause*, No. 18-422, slip op. at 30.
[39] *Id.*
[40] U.S. Census Bureau, (2011, July 11). *What are census blocks?*, https://www.census.gov/newsroom/blogs/random-samplings/2011/07/what-are-census-blocks.html. (last visited Jan.4, 2022).
[41] Art. III, s. 16(a), Fla. Const.
[42] *Id.*
[43] Fla. HJR 1987 (2002).
[44] Fla. HJR 25-E (2003).
[45] *See generally* §8.0001, et seq., F. S. (2007).

**Florida Constitution - Article III, Sections 20 and 21**

Article III, Sections 20 and 21 of the Florida Constitution establish the following standards for congressional and state legislative redistricting, respectively:

> In establishing congressional and state legislative district boundaries:
>
> (a)   No apportionment plan or individual district shall be drawn with the intent to favor or disfavor a political party or an incumbent; and districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice; and districts shall consist of contiguous territory.
>
> (b)   Unless compliance with the standards in this subsection conflicts with the standards in subsection (a) or with federal law, districts shall be as nearly equal in population as is practicable; districts shall be compact; and districts shall, where feasible, utilize existing political and geographical boundaries.
>
> (c)   The order in which the standards within subsections (a) and (b) of this section are set forth shall not be read to establish any priority of one standard over the other within that subsection."

These standards are set forth in two tiers. The first tier, subparagraphs (a) above, contains provisions regarding political and incumbency favoritism, racial and language minorities, and contiguity.  The second tier, subparagraphs (b) above, contains provisions regarding equal population, compactness and use of political and geographical boundaries.

The first tier provides that no apportionment plan or district shall be drawn with the intent to favor or disfavor a political party or an incumbent. Redistricting decisions unconnected with an intent to favor or disfavor a political party and incumbent do not violate this provision of the Florida Constitution, even if their effect is to favor or disfavor a political party or incumbent.[46]

The Florida Supreme Court stated that these new requirements prohibit what had previously been an acceptable practice, "such as favoring incumbents and the political party in power." The Court went on to say that "Florida's constitution prohibits intent, not effect and applies to both the plan as a whole and to each district individually."  Further, the Florida Supreme Court stated that the "protection of racial and language minorities against discrimination" is a tier one requirement, meaning that voters placed this as a "top priority" that the legislature must comply with during redistricting.[47]

To the extent that compliance with second-tier standards conflicts with first-tier standards, the second-tier standards do not apply.[48]  The order in which the standards are set forth within either tier does not establish any priority of one standard over another within the same tier.[49]

---

[46] In *Hartung v. Bradbury*, 33 P.3d 972, 987 (Or. 2001), the court held that "the mere fact that a particular reapportionment may result in a shift in political control of some legislative districts (assuming that every registered voter votes along party lines)," does not show that a redistricting plan was drawn with an improper intent.  It is well recognized that political consequences are inseparable from the redistricting process. In *Vieth v. Jubelirer*, 541 U.S. 267, 343 (2004) (Souter, J., dissenting) ("The choice to draw a district line one way, not another, always carries some consequence for politics, save in a mythical State with voters of every political identity distributed in an absolutely gray uniformity.").

[47] *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d at 665.

[48] Art. III, s. 20(b) and 21(b), Fla. Const.

[49] Art. III, s. 20(c) and 21(c), Fla. Const.

The first tier of the standards also provides the following protections for racial and language minorities:

- Districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process.
- Districts shall not be drawn to diminish the ability of racial or language minorities to elect representatives of their choice.

The Florida Supreme Court has held that these standards are essentially a restatement of Sections 2 and 5 of the Voting Rights Act.[50] The Court has construed the non-diminishment standard as imposing a statewide non-retrogression standard on all sixty-seven counties in Florida. These protections have a wider geographical reach than the non-retrogression protections found in Section 5 of the VRA, which covered only five counties in Florida.  Further, the state performs a "functional analysis" to ensure compliance with the non-diminishment standard. This functional analysis is conducted by analyzing Voter Age Population, Voter Turnout, Voter Registration, and Election Results for a given district. The analysis is used to determine a minority population's ability to elect the representatives of its choice.[51] The Florida Supreme Court emphasized that "mere access to political data cannot presumptively demonstrate prohibited intent because such data is a necessary component of evaluating whether a minority group has the ability to elect representatives of their choice."[52]

The map drawing application for the 2022 redistricting cycle includes the following data points for General and Primary Election cycles from 2012-2020:

- Voter Registration by Party
- Voter Registration by Race or Ethnicity
- Voter Registration by Race or Ethnicity and Party
- Voter Registration by Party and Race or Ethnicity
- Voter Turnout by Party
- Voter Turnout by Party and Race or Ethnicity
- Voter Turnout by Race or Ethnicity and Party
- General Elections Results by Candidate
- Primary Elections Results by Candidate

The first tier also requires that districts consist of contiguous territory.  In the context of state legislative districts, the Florida Supreme Court has held that a district is contiguous if no part of the district is isolated from the rest of the district by another district.[53]  In a contiguous district, a person can travel from any point within the district to any other point without departing from the district.[54]  A district is not contiguous if its parts touch only at a common corner, such as a right angle.[55]  The Court has also concluded that the presence in a district of a body of water without a connecting bridge, even if it requires land travel outside the district in order to reach other parts of the district, does not violate contiguity.[56]

The second tier of these standards requires that districts be compact.[57] Compactness "refers to the shape of the district."[58]   The Florida Supreme Court has confirmed that the primary test for compactness is a visual examination of the general shape of the district.[59] "Compact districts should not have an unusual shape, a bizarre design, or an unnecessary appendage unless it is necessary to

---

[50] *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d at 619, 625.
[51] *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d at 627.
[52] *Id.*
[53] *In re Senate Joint Resolution 2G, Special Apportionment Session 1992*, 597 So. 2d 276, 279 (Fla. 1992) (citing *In re Apportionment Law, Senate Joint Resolution 1E*, 414 So. 2d 1040, 1051 (Fla. 1982)).
[54] *Id.*
[55] *Id.* (citing *In re Apportionment Law, Senate Joint Resolution 1E*, 414 So. 2d at 1051).
[56] *Id.* at 280.
[57] Art. III, s. 20(b) and 21(b), Fla. Const.
[58] *In re Senate Joint Resolution of Legislative Apportionment 1176*, 83 So. 3d at 685.
[59] *Id.* at 634 ("[A] review of compactness begins by looking at the shape of a district.").

comply with some other requirement."[60] The Florida Supreme Court recognized specific tests to measure quantitively, mathematical compactness: the Reock, Convex Hull, and Polsby-Popper tests.[61]

The second tier of these standards also requires that "districts shall, where feasible, utilize existing political and geographical boundaries."[62] "Political boundaries" refers to county and municipal lines.[63] The protection for counties and municipalities is consistent with the purpose of the standards to respect existing community lines. "Geographical boundaries" refers to boundaries that are "easily ascertainable and commonly understood, such as rivers, railways, interstates, and state roads."[64] The Florida Supreme Court stated that the tier two requirements are meant to restrict the legislature's discretion in drawing irregularly shaped districts." The Court further stated that these standards "may undercut or defeat any assertion of improper intent."[65]

**Florida Constitution – Article X, Section 8**

This section of the Florida Constitution states that each decennial census taken by the U.S. government shall be the official census of the state of Florida.[66]

**Passage of CS/SB 102**

On February 1, 2022, Governor DeSantis requested an advisory opinion from the Florida Supreme Court inquiring as to whether Article III, Section 20(a) of the Florida constitution "requires the retention of a district in northern Florida that connects the minority population in Jacksonville with distant and distinct minority populations (either in Leon and Gadsden Counties or outside of Orlando) to ensure sufficient voting strength, even if not a majority, to elect a candidate of their choice."[67] The Florida Supreme Court declined to provide an opinion in response to the Governor's request.

On March 4, 2022, the House amended and passed CS/SB 102 to include both a primary and secondary map. The primary map in the House product (H000C8019) sought to address concerns expressed by the Governor's office about the Duval-to-Gadsden configuration of CD 5 by creating a more compact North Florida district located in Duval County alone. The House amendment also contained a secondary map (H000C8015), which would have taken immediate effect if a court determined that the primary map's configuration of CD 5 was found to be invalid under state or federal law. The secondary map maintained a configuration of CD 5 similar to that in the benchmark map. The Senate concurred with the House amendment and passed CS/SB 102 the same day.

On March 29, 2022, the Governor vetoed CS/SB 102 and issued a proclamation calling the Florida Legislature into Special Session C to consider legislation relating to the establishment of congressional districts.[68]

---

[60] *Id.*
[61] *League of Women Voters of Fla. V. Detzner,* 179 So. 3d 258, 283, 289 (Fla. 2015).
[62] Art. III, s. 20(b) and 21(b), Fla. Const.
[63] *In re Senate Joint Resolution of Legislative Apportionment 1176,* 83 So. 3d at 636-37.
[64] *Id.* at 638 (marks omitted); *see also id.* ("Together with an analysis of compactness, an adherence to county and city boundaries, and rivers, railways, interstates and state roads as geographical boundaries will provide a basis for an objective analysis of the plans and the specific districts drawn.").
[65] *In re Senate Joint Resolution of Legislative Apportionment 1176,* 83 So. 3d at 618.
[66] Art. X, s. 8, Fla. Const.
[67] Advisory opinion to the Governor: Retention of North Florida Congressional District, SC22-139 (2022).
[68] Veto Letter of Ron DeSantis, Governor (March 29, 2022), https://www.flgov.com/wp-content/uploads/2022/03/SLA-BIZHUB22032912100.pdf (last visited Apr. 18, 2022).

**Effect of Proposed Changes**

## Redistricting Proposal Plan P000C0109 Data Report

| STATEWIDE SNAPSHOT | | | | | |
|---|---|---|---|---|---|
| Total State Population: | 21,538,187 | | Total Counties: | 67 | Reock Avg. |
| Ideal District Population: | 769,221 | | Counties Split: | 17 | 0.47 |
| Mean Deviation: | 0 | 0.00% | Counties Kept Whole: | 50 | Convex Hull Avg. |
| Max Deviation: | 0 | 0.00% | Total Cities: | 412 | 0.81 |
| Min Deviation: | -1 | 0.00% | Cities Split: | 16 | Polsby Popper Avg. |
| Overall Deviation Range: | 1 | 0.00% | Cities Kept Whole: | 396 | 0.43 |

| DISTRICT BREAKDOWN | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Population | | | Voting Age Population | | Compactness | | |
| District | Total Population | Deviation From Ideal | % Deviation | BVAP % | HVAP % | Reock | Convex Hull | Polsby Popper |
| 1 | 769,221 | 0 | 0.00 | 13.54 | 6.69 | 0.54 | 0.87 | 0.48 |
| 2 | 769,221 | 0 | 0.00 | 23.09 | 6.42 | 0.46 | 0.82 | 0.48 |
| 3 | 769,221 | 0 | 0.00 | 15.88 | 10.64 | 0.57 | 0.90 | 0.50 |
| 4 | 769,221 | 0 | 0.00 | 31.66 | 7.82 | 0.38 | 0.76 | 0.32 |
| 5 | 769,221 | 0 | 0.00 | 12.80 | 10.86 | 0.56 | 0.89 | 0.52 |
| 6 | 769,221 | 0 | 0.00 | 11.22 | 9.78 | 0.74 | 0.92 | 0.48 |
| 7 | 769,221 | 0 | 0.00 | 10.53 | 18.97 | 0.47 | 0.83 | 0.40 |
| 8 | 769,221 | 0 | 0.00 | 9.68 | 10.05 | 0.32 | 0.78 | 0.45 |
| 9 | 769,221 | 0 | 0.00 | 13.02 | 50.04 | 0.49 | 0.86 | 0.47 |
| 10 | 769,221 | 0 | 0.00 | 25.98 | 28.63 | 0.41 | 0.75 | 0.37 |
| 11 | 769,221 | 0 | 0.00 | 12.76 | 17.09 | 0.52 | 0.82 | 0.36 |
| 12 | 769,221 | 0 | 0.00 | 5.29 | 11.72 | 0.45 | 0.75 | 0.38 |
| 13 | 769,221 | 0 | 0.00 | 7.09 | 9.56 | 0.51 | 0.93 | 0.58 |
| 14 | 769,221 | 0 | 0.00 | 19.13 | 25.97 | 0.48 | 0.83 | 0.47 |
| 15 | 769,221 | 0 | 0.00 | 15.40 | 22.74 | 0.58 | 0.88 | 0.58 |
| 16 | 769,221 | 0 | 0.00 | 11.98 | 18.67 | 0.45 | 0.73 | 0.45 |
| 17 | 769,221 | 0 | 0.00 | 5.56 | 11.54 | 0.28 | 0.77 | 0.39 |
| 18 | 769,221 | 0 | 0.00 | 13.21 | 23.68 | 0.42 | 0.82 | 0.42 |
| 19 | 769,221 | 0 | 0.00 | 6.07 | 16.22 | 0.33 | 0.78 | 0.39 |
| 20 | 769,221 | 0 | 0.00 | 50.11 | 22.98 | 0.50 | 0.77 | 0.28 |
| 21 | 769,221 | 0 | 0.00 | 12.48 | 15.14 | 0.50 | 0.82 | 0.49 |
| 22 | 769,220 | -1 | 0.00 | 15.88 | 24.65 | 0.44 | 0.74 | 0.42 |
| 23 | 769,221 | 0 | 0.00 | 13.17 | 20.51 | 0.50 | 0.79 | 0.29 |
| 24 | 769,221 | 0 | 0.00 | 42.17 | 38.46 | 0.48 | 0.90 | 0.48 |
| 25 | 769,221 | 0 | 0.00 | 17.52 | 42.26 | 0.42 | 0.81 | 0.38 |
| 26 | 769,221 | 0 | 0.00 | 6.92 | 73.22 | 0.29 | 0.77 | 0.33 |
| 27 | 769,221 | 0 | 0.00 | 7.07 | 74.18 | 0.71 | 0.95 | 0.73 |
| 28 | 769,221 | 0 | 0.00 | 10.32 | 73.35 | 0.22 | 0.55 | 0.24 |

**Proposed Congressional Map**



**Limitations on Choice of Venue**

The bill creates s. 8.062, F.S., which limits the choice of venue for state court actions challenging the state's congressional districts to Leon County. The bill also creates s. 8.063, F.S., which provides that the state court shall be the court of original jurisdiction on actions challenging the state's congressional districts related to state constitutional or state law grounds. The bill further provides that state circuit courts may hear any state constitutional and state law claims, or any federal constitutional or federal law claims so long as those actions are within the jurisdiction of the court. Lastly, the bill provides a severability clause for any portions that may be held invalid.

B.  SECTION DIRECTORY:

Section 1      Provides that the 2020 Census is the official census of the state for the purposes of this bill; Lists and defines the geography utilized for the purposes of this bill in accordance with Public Law 94-171.

Section 2      Provides for the geographical description of the redistricting of the 28 congressional districts.

Section 3      Provides for the amendment of Section 8.0111, allowing for apportionment of any territory not specified for inclusion in any district.

Section 4      Provides that the districts created by this bill constitute and form the congressional districts of the State.

Section 5      Provides for the format of electronic maps to serve as the official maps of congressional districts.

Section 6      Provides a severability clause in the event that any portion of this chapter is held invalid.

Section 7      Creates s. 8.062, F.S., which limits the choice of venue for state court actions challenging the state's congressional districts to Leon County.

Section 8      Creates s. 8.063, F.S., which provides that the state court shall be the court of original jurisdiction on actions challenging the state's congressional districts related to state constitutional or state law grounds.

Section 9      Provides that this bill applies with respect to the qualification, nomination, and election of members of the Congress of the United States in the primary and general elections held in 2022 and thereafter.

Section 10     Provides for the repeal of sections 8.08, 8.081, 8.082, 8.083, 8.084, 8.085, 8.086, 8.087, 8.088, Florida Statutes, upon this act becoming law.

Section 11     Provides a severability clause in the event that any portion of this act is held invalid.

Section 12     Provides for $1,000,000 in nonrecurring General Revenue to assist the Department of State for any litigation expenses incurred as a result of the passage of the congressional districts of Florida.

Section 13     Provides that, except as otherwise expressly provided, this act shall take effect upon expiration of the terms of the representatives to the United States House of Representatives serving on the date that this act becomes a law.

## II. FISCAL ANALYSIS & ECONOMIC IMPACT STATEMENT

A.  FISCAL IMPACT ON STATE GOVERNMENT:

    1. Revenues:

        None.

    2. Expenditures:

        The bill appropriates $1 million in nonrecurring funding from the General Revenue Fund to the Florida Department of State to assist with any litigation expenses incurred as a result of the passage of the congressional districts for the state of Florida. Any unexpended balance of these funds will revert at the end of the 2021-2022 fiscal year and be appropriated for Fiscal Year 2022-2023 for the same purpose.

B.  FISCAL IMPACT ON LOCAL GOVERNMENTS:

    1. Revenues:

        None.

    2. Expenditures:

        The reapportionment will have an indeterminate fiscal impact on Florida's 67 Supervisor of Elections offices.  Local supervisors will incur the cost of data-processing and labor to change voter records to reflect new districts if they are impacted by this proposed map.  As precincts are aligned to new districts, postage and printing will be required to provide each active voter whose precinct has changed with mail notification. Temporary staffing may be hired to assist with mapping, data verification, and voter inquiries.

C.  DIRECT ECONOMIC IMPACT ON PRIVATE SECTOR:

    None.

D.  FISCAL COMMENTS:

    None.

## III.  COMMENTS

A.  CONSTITUTIONAL ISSUES:

    1. Applicability of Municipality/County Mandates Provision:

        None.

    2. Other:

        None.

B. RULE-MAKING AUTHORITY:

   None.

C. DRAFTING ISSUES OR OTHER COMMENTS:

   None.

## IV. AMENDMENTS/COMMITTEE SUBSTITUTE CHANGES