# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

     Plaintiffs,

v.

FLORIDA HOUSE OF REPRESENTATIVES
and CORD BYRD, in his official capacity as
Florida Secretary of State,

     Defendants.

_____/

## DEFENDANT FLORIDA HOUSE OF REPRESENTATIVES' ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant, the Florida House of Representatives, answers Plaintiffs' Second Amended Complaint (ECF No. 58).

\* As to the Second Amended Complaint's unnumbered introductory paragraph, admitted that this action challenges one congressional district and seven State House districts as racial gerrymanders under the Fourteenth Amendment. Denied that the challenged districts violate the Fourteenth Amendment. The remainder of this paragraph is denied.

1. The last sentence of this paragraph is denied. The remainder of this paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

2. Admitted.


PLAINTIFFS' TRIAL EXHIBIT

P2

1:24-cv-21983-JB

3.     Admitted.

4.     Admitted that Plaintiffs challenge Congressional District 26 and House Districts 112, 113, 114, 115, 116, 118, and 119 as racial gerrymanders under the Fourteenth Amendment. Denied that the challenged districts violate the Fourteenth Amendment. Admitted that Plaintiffs are four individuals and three organizations. As to Plaintiffs' allegations in the first sentence of this paragraph relating to their residency and status as community membership organizations, without knowledge and therefore denied. The remainder of this paragraph is denied.

5.     Denied.

6.     Denied.

7.     Denied.

8.     Denied.

9.     Admitted that, on April 20, 2022, Representative Carlos Guillermo Smith asked the question quoted in this paragraph. The remainder of this paragraph is denied.

10.     Admitted that Chair Leek made the statement (among others) quoted in this paragraph. The remainder of this paragraph is denied.

11.     Admitted that Representative Carlos Guillermo Smith asked the question quoted in this paragraph. The remainder of this paragraph is denied.

12.     Admitted that Chair Leek made the statement (among others) quoted in this paragraph. The remainder of this paragraph is denied.

13.     The first sentence of this paragraph is denied. The remainder of this paragraph states legal conclusions to which no response is required. To the extent a response is

required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

14.     This paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Without knowledge and therefore denied.

22.     Without knowledge and therefore denied.

23.     Without knowledge and therefore denied.

24.     Without knowledge and therefore denied.

25.     Without knowledge and therefore denied.

26.     Without knowledge and therefore denied.

27.     Without knowledge and therefore denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Admitted that the Florida House of Representatives and the Florida Senate are the two chambers that comprise the Florida Legislature. Admitted that the Florida Legislature is responsible for redrawing state legislative and congressional districts. The last sentence of this paragraph is admitted. The remainder of this paragraph is denied.

32.     The first two sentences of this paragraph are admitted. The remainder of this paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

33.     Admitted for jurisdictional purposes only.

34.     Admitted for venue purposes only.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     Admitted that state-legislative and congressional redistricting is the duty of the Florida Legislature, which is responsible for adopting redistricting plans for the Florida House, the Florida Senate, and Florida's apportioned seats in the United States House of Representatives. The remainder of this paragraph is denied.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.     This paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this

paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

43.     This paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

44.     This paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

45.     This paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

46.     The first sentence of this paragraph is admitted. Admitted that the Senate Committee on Reapportionment, the House Redistricting Committee, the House State Legislative Redistricting Subcommittee, and the House Congressional Redistricting Subcommittee began to meet in September 2021. Admitted that Mr. Bardos provided a presentation on redistricting law to the House Redistricting Committee and the House Congressional Redistricting Subcommittee, that Mr. Dunbar provided a presentation on redistricting law to the House State Legislative Redistricting Subcommittee, and that Mr. Nordby provided a presentation on redistricting law to the Senate Committee on

Reapportionment. Admitted that these presentations included explanations of the federal Voting Rights Act of 1965 and the Tier One and Tier Two standards in the Florida Constitution. Admitted that committee staff provided all four committees and subcommittees with presentations on redistricting fundamentals. The remainder of this paragraph is denied.

47. Admitted that counsel and committee staff explained that the Legislature must perform a functional analysis of voting behavior to assure compliance with the Florida Constitution's non-diminishment standard. Admitted that a functional analysis considers census population data, voter-registration data, turnout data, and election results. Admitted that a functional analysis is how committee staff determine whether changes to a district protected by the Florida Constitution's non-diminishment standard would diminish the ability of minorities to elect representatives of their choice. The remainder of this paragraph is denied.

48. Admitted.

49. Denied.

50. Denied that any district was drawn with only a single "goal." Admitted that, in drawing the challenged districts, the Legislature sought to comply with the Florida Constitution's non-diminishment standard. The remainder of this paragraph is denied.

51. Admitted that each chamber drew the districts from which the chamber's members are elected. The remainder of this paragraph is denied.

52.    Admitted that the House State Legislative Redistricting Subcommittee met on December 3, 2021, for a staff presentation of two workshop maps (H000H8005 and H000H8007). The remainder of this paragraph is denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Admitted that Jason Poreda, Chief Map Drawer for the House Redistricting Committee, made the following statement (among others) about House Districts 109, 110, 111, 113, 114, 115, 116, 118 and 119 in the workshop maps: "These nine districts are all protected majority-minority Hispanic districts where functional analysis [was] performed to ensure the respective minority groups can elect candidates of their choice in each district and that opportunity is not diminished." The remainder of this paragraph is denied.

57.    Admitted that the House Redistricting Committee met on January 13, 2022, for a staff presentation of two workshop maps (H000H8005 and H000H8007). The remainder of this paragraph is denied.

58.    Admitted that Mr. Poreda made the following statement (among others) about the two workshop maps: "The next group of districts, which include 109, 110, 111, 113, 114, 115, 116, and 119, are protected Tier One majority-minority Hispanic districts that, in each one of them, have had functional analysis performed on them to ensure that the minority group's ability to elect a candidate of their choice is maintained, as is in the benchmark." The remainder of this paragraph is denied.

59.     Admitted that the House State Legislative Redistricting Subcommittee met on January 21, 2022, to consider Plan H000H8009. The remainder of this paragraph is denied.

60.     Denied.

61.     Admitted.

62.     Admitted that House District 115 in Plan H000H8013 included 988 people who, in Plan H000H8009, were included in House District 116, and that House District 116 in Plan H000H8013 included 916 people who, in Plan H000H8009, were included in House District 115. Admitted that House Districts 112 and 118 in Plan H000H8013 were assigned unpopulated areas that, in Plan H000H8009, were assigned to other districts. The remainder of this paragraph is denied.

63.     Admitted that Secretary Byrd, then Chair of the House State Legislative Redistricting Subcommittee, made the following statement (among others) about Plan H000H8009: "Districts 110, 111, 112, 113 114, 115, 116, 118, and 119 in Miami-Dade County are performing Hispanic districts protected by Tier One of the Florida Constitution. . . . The Hispanic voting-age population in these districts [is] similar compared to the benchmark districts with slight changes, but are drawn in a consistent manner with respect to Supreme Court precedent to maintain existing majority-minority districts. A functional analysis conducted by staff ensures that the voting strength of the minority group in both general and primary elections does not deny or abridge the equal opportunity of racial or language minorities to participate in the political process or diminish their ability to elect representatives of their choice." The remainder of this paragraph is denied.

64.     Admitted that, by a 13-to-7 vote, the House State Legislative Redistricting Subcommittee favorably reported a bill that contained Plan H000H8009. The remainder of this paragraph is denied.

65.     Admitted that, on January 26, 2022, the House Redistricting Committee considered Plan H000H8013. Admitted that Plan H000H8013 was not identical to Plan H000H8009 and was ultimately enacted. The remainder of this paragraph is denied.

66.     Denied.

67.     Admitted that Chair Byrd made the following statement (among others) about Plan H000H8013: "Districts 110, 11, 12, 13, 14, 15, 16, 18, and 19 in Miami-Dade County are all performing Hispanic districts protected by Tier One of the Florida Constitution. . . . The Hispanic voting-age population in these districts [is] similar compared to the benchmark districts with slight changes but are drawn in a consistent manner with respect to the Florida Supreme Court precedent to maintain existing majority-minority districts."

68.     Admitted that, by a 17-to-7 vote, the House Redistricting Committee favorably reported a bill that contained Plan H000H8013. The remainder of this paragraph is denied.

69.     Admitted that, on February 1, 2022, the House considered Committee Substitute for Senate Joint Resolution 100 on second reading. The remainder of this paragraph is denied.

70.     The second sentence of this paragraph is admitted. Admitted that Chair Leek made the following statement (among others) about Plan H000H8013: "Our proposed State House districts are also drawn in compliance with Tier One of the Florida Constitution. The

proposed map is inclusive of . . . twelve protected Hispanic districts, all of which are majority-minority districts. . . . In each district, the minority group's voting-age population [is] similar when compared to benchmark districts, with slight increases or decreases . . . . These districts are also drawn in a consistent manner with respect to the Florida Supreme Court precedent and to maintain existing majority-minority districts." The remainder of this paragraph is denied.

71.     Admitted that Chair Byrd made the following statement (among others) about Plan H000H8013: "Districts 110, 111, 112, 113, 114, 115, 116, 118, and 119 in Miami-Dade County are all performing Hispanic districts protected by Tier One of the Florida Constitution. As mentioned, a functional analysis on each of these districts was conducted by staff to ensure the minority group's ability to elect is not diminished. All nine of these districts are majority-minority Hispanic districts entirely within Miami-Dade County." The remainder of this paragraph is denied.

72.     Admitted that, on February 2, 2022, by a 77-to-39 vote, the House passed Committee Substitute for Senate Joint Resolution 100, as amended, which included Plan H000H8013 and a redistricting plan for State Senate districts. The remainder of this paragraph is denied.

73.     Admitted that, on February 3, 2022, by a 37-to-0 vote, the Senate passed Committee Substitute for Senate Joint Resolution 100, as amended, which included Plan H000H8013. Admitted that, without debate or questions, the Senate concurred in House Amendment 503145, which added Plan H000H8013 to Committee Substitute for Senate Joint Resolution 100. The remainder of this paragraph is denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Admitted.

80.     Denied.

81.     Admitted that Chair Leek made the following statement (among others) in response to Representative Driskell's question: "So [you] also have some protected districts. So there's another analysis that goes in that in addition to compactness. So remember, that's a Tier One element. So we get to compactness after Tier One. So we had to make sure that the protected districts . . . continue to perform within reason as they had performed . . . . So yes, I would consider those within the legal limits." The remainder of this paragraph is denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Admitted that Representative Driskell made the following statement (among others) about Plan H000H8013: "And the reason why I homed in on [House Districts 114, 115, 116, 118, and 119] is because when you look at them with the eye test with compactness, they don't look very compact. They look a little irregularly drawn. Some of

them have appendages. And when you look at their compactness scores under the different—the different ways to analyze those, whether it's Reock, Convex Hull, or Polsby-Popper, these maps look like outliers. And the questions that I asked specifically went to compactness and whether or not we took into consideration if we lopped off an appendage and tried to make it pass the eye test better and look more compact, what would that have done to the performance for minority voters in those districts. That's just one example of one geographic region in the State where I believe we could have done a better job." The remainder of this paragraph is denied.

87.     The first sentence of this paragraph is denied. The second and third sentences of this paragraph are admitted.

88.     Admitted that one district in Plan H000H8013 (a district protected under Tier One for Black voters) has a lower Reock score than House District 118. Admitted that one district in Plan H000H8013 has a lower score than House District 118 on the Legislature's boundary analysis, which calculates the percentage of each district's boundary that consists of political and geographical boundaries. The third sentence of this paragraph is admitted. Admitted that the distance from House District 118's northern boundary (Tamiami Trail) to its southern boundary (SW 232nd Street) is more than 14 miles. The remainder of this paragraph is denied.

89.     Admitted that House District 119 is adjacent to House District 118. Admitted that Tamiami Trail is House District 119's northern boundary and that SW 232nd Street is House District 119's southern boundary. The last sentence of this paragraph is admitted. The remainder of this paragraph is denied.

90.     The first and third sentences of this paragraph are admitted. The second sentence of this paragraph is denied.

91.     Admitted that House District 114 is adjacent to House District 115. Admitted that Deering Bay Yacht and Country Club and SW 144th Street are near House District 114's southern boundary. Admitted that the northwest corner of House District 114 is located where the Dolphin Expressway passes over Galloway Road. Admitted that House District 114 includes two parts of the City of Miami. The last sentence of this paragraph is admitted. The remainder of this paragraph is denied.

92.     Admitted that the eastern boundary of House District 116 borders House Districts 114 and 115 and that the western boundary of House District 116 borders House Districts 111 and 118. Admitted that House District 116's northernmost boundary is near NW 25th Street and follows the municipal boundary between the City of Doral and the City of Sweetwater. Admitted that Killian Drive in Kendall is House District 116's southernmost boundary. The last sentence of this paragraph is admitted. The remainder of this paragraph is denied.

93.     Denied.

94.     Denied.

95.     The last sentence of this paragraph is admitted. The remainder of this paragraph is denied.

96.     The first sentence of this paragraph is denied. The second and third sentences of this paragraph are admitted.

97. Denied that any district was drawn with only a single "goal." Admitted that, in drawing the challenged congressional districts, the Legislature sought to comply with the Florida Constitution's non-diminishment standard.

98. The first sentence of this paragraph is admitted. Admitted that the Senate passed Committee Substitute for Senate Bill 102, as amended, which contained Plan S035C8060, and that the House later amended the bill to replace Plan S035C8060 with Plans H000C8017 and H000C8015. Admitted that the Governor vetoed the bill over disagreements with districts outside of South Florida. Admitted that the Legislature passed Senate Bill 2-C, which contained Plan P000C0109, and that the Governor signed the bill. The remainder of this paragraph is denied.

99. Admitted.

100. Admitted.

101. Denied.

102. Admitted that congressional district maps prepared by legislative committee staff included a district that combined parts of Miami-Dade County, including the City of Hialeah, with parts of neighboring Collier County, and that bordered the Gulf. The remainder of this paragraph is denied.

103. Denied.

104. Denied.

105. Admitted.

106. Denied.

107.    Admitted that Mr. Ferrin made the following statement (among others): "in Collier County, the shape of [Congressional District 19] is a result of the configuration of District 25, which is a Hispanic majority-minority district protected from diminishment under Tier One." The remainder of this paragraph is denied.

108.    Admitted that, on January 10, 2022, the Senate Select Subcommittee on Congressional Reapportionment recommended Plans S000C8038 and S000C8040 to Chair Rodrigues for consideration. The remainder of this paragraph is denied.

109.    Admitted.

110.    Admitted.

111.    Admitted that Mr. Ferrin made the following statement (among others) about Plan S000C8040: "Moving into South Florida. This region contains five Tier One protected districts. They are 20, 24, 25, 26, and 27. And this has a significant impact on the configuration of the region." The first two sentences of footnote 5 state legal conclusions to which no response is required. The last sentence of footnote 5 is admitted. The remainder of this paragraph is denied.

112.    Admitted that Mr. Ferrin made the following statement (among others) about Plan S000C8040: "District 19 is located within Lee and Collier Counties and is affected by the neighboring District 25, which is a Tier One protected district."

113.    Admitted.

114.    Admitted.

115.    Admitted that the Senate Committee on Reapportionment favorably reported Committee Substitute for Senate Bill 102, which contained Plan S000C8040. The remainder of this paragraph is denied.

116.    Admitted that, on January 19, 2022, the Senate considered on second reading Committee Substitute for Senate Bill 102, which contained Plan S000C8040. The remainder of this paragraph is denied.

117.    Admitted.

118.    Because the Court dismissed Plaintiffs' challenges to Congressional Districts 27 and 28 (Districts 26 and 27 in Plans S000C8040 and S035C8060), no response to this paragraph is required.

119.    Because the Court dismissed Plaintiffs' challenges to Congressional Districts 27 and 28 (Districts 26 and 27 in Plans S000C8040 and S035C8060), no response to this paragraph is required.

120.    Because the Court dismissed Plaintiffs' challenges to Congressional Districts 27 and 28 (Districts 26 and 27 in Plans S000C8040 and S035C8060), no response to this paragraph is required.

121.    Denied.

122.    Admitted that Chair Rodrigues made the quoted statement in response to questions about proposed State Senate districts.

123.    Admitted that Chair Rodrigues made the following statement (among others) in response to questions about proposed State Senate districts: "So once we had assured that we were Tier One compliant, which trumps all of the other Tier Two metrics, then the

question was, which map is the most Tier Two compliant among the Tier One choices?"
The remainder of this paragraph is denied.

124.     Without knowledge and therefore denied.

125.     Admitted that, on January 20, 2022, by a 31-to-4 vote, the Senate passed
Committee Substitute for Senate Bill 102, as amended, which included Plan S035C8060.

126.     Denied.

127.     Admitted that, on December 2, 2021, and February 18, 2022, the House
Congressional Redistricting Subcommittee considered congressional district maps prepared
by legislative committee staff. Admitted that, on January 13 and February 25, 2022, the
House Redistricting Committee considered congressional district maps prepared by
legislative committee staff. Admitted that Subcommittee Chair Tyler Sirois and committee
staff stated at one or more of these meetings—and that Chair Sirois stated on the floor—
that Congressional Districts 26, 27, and 28 are performing majority-minority Hispanic
districts on which a functional analysis had been performed. The remainder of this
paragraph is denied.

128.     Admitted that, on February 25, 2022, the House Redistricting Committee
favorably reported Committee Substitute for House Bill 7503, which contained Plans
H000C8017 and H000C8015. Admitted that, in explaining Plans H000C8017 and
H000C8015, Chair Sirois made the statement quoted in this paragraph. The remainder of
this paragraph is denied.

129.     Admitted.

130.     Admitted that, in Collier and Hendry Counties, fewer than 94,000 people were in Congressional District 26 in Plan H000C8017 or Plan P000C0109, but not both. The remainder of this paragraph is denied.

131.     Admitted that, on March 3, 2022, the House considered Plans H000C8019 and H000C8015. Admitted that Plan H000C8019 was the last congressional map prepared by legislative committee staff and published by the House during the 2022 regular session. The second sentence of this paragraph is admitted. The remainder of this paragraph is denied.

132.     Admitted that Chair Leek stated that Plans H000C8019, H000C8015, and S035C8060 "are all fundamentally similar to each other in every district south of Indian River, Osceola, and the Polk County line."

133.     Admitted that, due to disagreements over districts outside of South Florida, Governor DeSantis vetoed Committee Substitute for Senate Bill 102, as amended, which contained Plans H000C8019 and H000C8015. The remainder of this paragraph is denied.

134.     Admitted that the Legislature convened in special session on April 19, 2022. Admitted that, during the special session, the Legislature considered Plan P000C0109, a redistricting plan the Governor supported. The remainder of this paragraph is denied.

135.     Admitted.

136.     Admitted that, in Collier and Hendry Counties, about 94,000 people were in Congressional District 26 in Plan H000C8019 or Plan P000C0109, but not both. The remainder of this paragraph is denied.

137.     Admitted.

138.     Admitted that Mr. Kelly made the statement quoted in this paragraph. The remainder of this paragraph is denied.

139.     Admitted that Mr. Kelly made the following statement (among others): "I noted earlier that ten of the districts are identical to what the Legislature passed. [Plan P000C0109] incorporates concepts from maps previously discussed and presented by—or previously submitted to the Legislature by our office, 0079 and 0094. It incorporates concepts from the map that was referred out of the House Congressional Redistricting Subcommittee, Plan H000C8011, and it aligns in several other ways that I'll describe with the House and Senate's map drawing." The remainder of this paragraph is denied.

140.     Admitted that Mr. Kelly made the following statement (among others): "First, in an effort to create a collaborative product, I worked off the Legislature's primary plan, H000C8019. So while I was seeking to remedy the Governor's veto message and make improvements throughout the map, I began my work by downloading the Legislature's Plan H000C8019 and subsequently making changes." The remainder of this paragraph is denied.

141.     Admitted that Mr. Kelly made the following statement (among others): "Regarding the proposed plan before you today, it maintains the same number of performing majority-minority seats." The remainder of this paragraph is denied.

142.     Admitted that Mr. Kelly made the following statement (among others): "I equalized the population in Collier County . . . . And for District 26, I had to further extend District 26's western boundaries closer towards unincorporated East Naples, utilizing roadways and waterways as boundaries between 26 and 19, except where necessary to

equalize population. The resulting District 26 still has a Hispanic voting-age population of 73.22 percent." The remainder of this paragraph is denied.

143.    Denied.

144.    Admitted that, on April 19, 2022, the Senate Committee on Reapportionment reported Senate Bill 2-C favorably. Admitted that, on April 19, 2022, the House Congressional Redistricting Subcommittee reported House Bill 1-C favorably. Admitted that both bills contained Plan P000C0109. The remainder of this paragraph is denied.

145.    Admitted.

146.    Admitted.

147.    Denied.

148.    Admitted that Senator Berman referenced Congressional District 26 approvingly to support her argument for the restoration of an east-to-west Congressional District 5 with a substantial Black voting-age population. The remainder of this paragraph is denied.

149.    Admitted.

150.    Admitted that, on April 20, 2022, the House considered House Bill 1-C, which contained Plan P000C0109, on second reading. Admitted that representatives asked questions of the bill sponsor, Chair Leek. The remainder of this paragraph is denied.

151.    Admitted.

152.    Admitted.

153.    Admitted.

154.    Denied.

155.    Admitted that Representative Will Robinson made the statement quoted in this paragraph. Admitted that Representative Robinson, a Republican, was a member of the House Redistricting Committee and Vice Chair of the House State Legislative Redistricting Subcommittee. The remainder of this paragraph is denied.

156.    Admitted that Congressional District 26 borders both the Gulf and Biscayne Bay. The remainder of this paragraph is denied.

157.    Denied.

158.    Admitted that Representative Persons-Mulicka, a Republican, expressed support for the elimination of a State House district that, in her words, "spanned coast-to-coast, connecting Collier, Miami-Dade, and Broward." The remainder of this paragraph is denied.

159.    Admitted that Representative Persons-Mulicka made the statement (among others) quoted in this paragraph and, in part for that reason, urged her colleagues to vote for the new State House districts. The remainder of this paragraph is denied.

160.    Denied.

161.    Denied.

162.    Admitted that Representative Joseph made the statements quoted in this paragraph. The remainder of this paragraph is denied.

163.    Admitted that Mr. Kelly's lengthy response included the two sentences quoted in this paragraph. The remainder of this paragraph is denied.

164.    Admitted that Representative Joseph made the statement quoted in this paragraph. The remainder of this paragraph is denied.

165.    Admitted that Mr. Kelly made the statements (among others) quoted in this paragraph. The remainder of this paragraph is denied.

166.    Admitted that Senator Gary Farmer asked Chair Rodrigues questions about the consideration of race in drawing Congressional District 26. Admitted that Senator Farmer is now a circuit judge on Florida's seventeenth judicial circuit. The remainder of this paragraph is denied.

167.    Admitted that Senator Farmer asked the question quoted in this paragraph. The remainder of this paragraph is denied.

168.    Admitted that Chair Rodrigues gave the answer quoted in this paragraph. The remainder of this paragraph is denied.

169.    Admitted that Senator Farmer made the statements (among others) quoted in this paragraph. The remainder of this paragraph is denied.

170.    With the exception of the bracketed material, admitted that Chair Rodrigues gave the answer quoted in this paragraph. The remainder of this paragraph, including the bracketed material, is denied.

171.    The first sentence of this paragraph is denied. Admitted that two congressional districts have lower Reock scores and four congressional districts have lower Polsby-Popper scores than Congressional District 26. Admitted that Congressional District 26's Reock score (0.29) is less than the statewide mean (0.47) and maximum (0.74). Admitted that Congressional District 26's Convex Hull score is four-hundredths below the statewide mean. The remainder of this paragraph is denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Admitted that four congressional districts have lower Reock scores than Congressional District 19. Admitted that Congressional District 19's Convex Hull and Polsby-Popper scores rank below the median Convex Hull and Polsby-Popper scores for congressional districts in Plan P000C0109. The remainder of this paragraph is denied.

176.    Admitted that the Hispanic voting-age population of the portion of Collier County that is in Congressional District 26 is 31.8 percent. The remainder of this paragraph is denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Admitted that Congressional District 28 includes the Florida Keys, Homestead, Goulds, Sweetwater, and the Florida International University campus. The remainder of this paragraph is denied.

181.    Denied.

182.    Admitted that Congressional District 27 includes Key Biscayne and Virginia Key and that Congressional District 24 includes Fisher Island, Miami Beach, and the Venetian Islands. The remainder of this paragraph is denied.

183.    Denied.

184.    Denied.

185.    Denied.

186.  Denied.

187.  Denied.

188.  Admitted that a member of the public submitted Plan P000H0019 to the Legislature in October 2021. Admitted that Figure 15 depicts only Districts 116, 118, and 119 in Plan P000H0019. The remainder of this paragraph is denied.

189.  Admitted that the Legislature did not enact Districts 116, 118, and 119 in Plan P000H0019. The remainder of this paragraph is denied.

190.  Denied.

191.  Denied that race was the predominant factor in the Legislature's decision-making. The last sentence of this paragraph is denied. The remainder of this paragraph states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

192.  This paragraph, including footnote 6, states legal conclusions to which no response is required. To the extent a response is required, the House refers to the legal authorities cited in this paragraph and denies all allegations of this paragraph that are inconsistent with those authorities.

193.  Denied.

194.  Denied.

195.  Denied.

196.  Denied.

197.  Without knowledge and therefore denied.

198.    Without knowledge and therefore denied.

199.    Denied.

200.    Denied.

201.    The Florida Supreme Court's decision in *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015), speaks for itself. The House refers to the Court's decision and denies all allegations of this paragraph that are inconsistent with that decision.

202.    Without knowledge and therefore denied.

203.    Without knowledge and therefore denied.

204.    The Court's decision in *League of Women Voters of Florida, Inc. v. Lee*, 595 F. Supp. 3d 1042 (N.D. Fla. 2022), speaks for itself. The House refers to the Court's decision and denies all allegations of this paragraph that are inconsistent with that decision. Denied that the statements quoted in this paragraph focused specifically on Hispanic voters in South Florida.

205.    Denied.

206.    Admitted that Representative Joseph asked the question quoted in this paragraph. The remainder of this paragraph is denied.

207.    Admitted that Chair Leek made the statements (among others) quoted in this paragraph. The remainder of this paragraph is denied.

208.    Denied.

209.    Denied.

210.    Denied.

211.    Admitted that Chair Leek made the quoted statement (among others) on the House floor on March 3, 2022, in response to a question from Representative Joseph. The remainder of this paragraph is denied.

212.    Admitted that Representative Ben Diamond asked the question quoted in this paragraph and that Chair Leek provided the response quoted in this paragraph. The remainder of this paragraph is denied.

213.    Denied.

214.    Denied.

215.    Admitted that, on April 21, 2022, Representative Mike Beltran, a Republican, made the statement (among others) quoted in this paragraph in support of Senate Bill 2-C. The remainder of this paragraph is denied.

216.    Denied.

217.    The House incorporates by reference its responses to the allegations set forth in paragraphs 1, 3 through 6, 8 through 35, 37, 38, 40 through 49, 75, 81, 83, 97 through 186, and 189 through 216 above.

218.    The Fourteenth Amendment speaks for itself.

219.    This paragraph states a legal conclusion to which no response is required.

220.    Denied.

221.    Denied.

222.    Denied.

223.    Denied.

224.    The House incorporates by reference its responses to the allegations set forth in paragraphs 1, 2, 4, 5, 7 through 26, 28 through 36, 38, 39, 41 through 96, 155, and 184 through 216 above.

225.    Denied.

226.    Denied.

227.    Denied.

228.    Denied.

To the extent the Second Amended Complaint's headings contain factual allegations that require a response, those allegations are denied.

## PRAYER FOR RELIEF

The House denies that Plaintiffs are entitled to relief and request this Court to enter judgment for the House and against Plaintiffs. The House further requests this Court to award the House its costs and such other relief as the Court deems appropriate.

Dated February 27, 2025.

Respectfully submitted,

/s/ *Andy Bardos*

Christopher M. Kise (FBN 855545)
ckise@continentalpllc.com
CONTINENTAL PLLC
101 North Monroe Street, Suite 750
Tallahassee, Florida 32301
Telephone: 850-270-2211

Andy Bardos (FBN 822671)
andy.bardos@gray-robinson.com
GRAYROBINSON, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301-1724
Telephone: 850-577-9090

Jesus M. Suarez (FBN 60086)
jsuarez@continentalpllc.com
Carmen Manrara Cartaya (FBN 73887)
ccartaya@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
Telephone: 305-677-2707

*Attorneys for Defendant, Florida House of Representatives*