# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

    Plaintiffs,

v.

FLORIDA HOUSE OF REPRESENTATIVES
and CORD BYRD, in his official capacity as
Florida Secretary of State,

    Defendants.

_____/

## THE FLORIDA HOUSE OF REPRESENTATIVES' AMENDED ANSWERS TO PLAINTIFFS' SECOND REQUESTS FOR ADMISSION TO THE FLORIDA HOUSE OF REPRESENTATIVES

Defendant, the Florida House of Representatives (the "House"), answers Plaintiffs' Second Set of Requests for Admission on the Florida House of Representatives, dated March 11, 2025.

**GENERAL STATEMENT AND OBJECTIONS**

1. The House objects to the extent that Plaintiffs' definitions and instructions purport to impose obligations different from or additional to the requirements of the Federal Rules of Civil Procedure, or to limit the discretion of answering parties under the Federal Rules of Civil Procedure.

2. For example, the House objects to Instructions Nos. 2 through 5 to the extent they purport to impose obligations that exceed or differ from those of Federal Rule of Civil



PLAINTIFFS' TRIAL EXHIBIT

P17

1:24-cv-21983-JB

Procedure 36(a)(4) and to Instruction No. 10 to the extent it purports to impose obligations that exceed or differ from those of Federal Rules of Civil Procedure 26(a)(5)(A) and 36(a)(5). The House objects that Instruction No. 7 purports to impose obligations not contained in the Federal Rules of Civil Procedure.

3. The House understands "Challenged Districts" to mean House Districts 112, 113, 114, 115, 116, 118, and 119 in H000H8013 and Congressional District 26 in P000C0109.

4. The House interprets the references to "the House" in Requests Nos. 3 through 8 and 16 to refer to legislative committee staff for the House Redistricting Committee, the House Congressional Redistricting Subcommittee, and the House State Legislative Redistricting Subcommittee who conducted the functional analysis required by the Non-Diminishment Standard. To the extent Requests Nos. 3 through 8 and 16 ask the House to gather information from each of its 120 elected members and hundreds of employees, the House objects that these requests are overly broad and unduly burdensome and disproportionate to the needs of this case, and encroach on the legislative privilege of its members and employees.

5. The House's review of information and documents is continuing, as is discovery. The House's answers are based on information now known to it and are provided without prejudice to the House's right to assert additional objections or to revise, correct, supplement, clarify, or amend its answers, if the House discovers additional grounds for objections or additional, responsive information.

6. The House provides its answers without waiving or intending to waive, and the House expressly preserves, all applicable privileges, exemptions, and protections from

discovery and all objections to the relevance and admissibility of the information disclosed or the subject matters thereof. In the answers provided below, the House has not withheld any responsive information on the basis of privilege, except where explicitly stated in the answer.

<u>**REQUESTS FOR ADMISSION**</u>

**REQUEST NO. 1:** Admit that the House applied the requirements of Fla. Const. art. III, §§ 20–21 consistently throughout the state in the 2021–22 redistricting process.

**ANSWER:** The House objects that this interrogatory is vague, overly broad, unduly burdensome, and disproportionate to the needs of this case. The House consists of 120 elected members and hundreds of employees. The constitutional provisions cited in this request encompass at least seven different legal standards. And the 2021–22 redistricting process encompassed congressional, State House, and State Senate maps, including many maps the Legislature did not enact or even consider. The House therefore objects to reviewing every map drawn or considered by every elected member or employee of the House to subjectively evaluate whether every state-constitutional standard was applied "consistently" to every district in every map throughout the 2021–22 redistricting process and across the State's varied geography and demography.

**REQUEST NO. 2:** Admit that, during the 2021–22 redistricting process, a House employee drew a draft congressional plan without a district that included portions of both Miami-Dade and Collier Counties.

**ANSWER:** Admitted.

**REQUEST NO. 3:** Admit that, during the 2021–22 redistricting process, the House believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, the Challenged Districts had to be likely to elect a Republican candidate.

**ANSWER:** As explained above, the House interprets this request's reference to "the House" to refer to legislative committee staff for the House Redistricting Committee, the House Congressional Redistricting Subcommittee, and the House State Legislative Redistricting Subcommittee who conducted the functional analysis required by the Non-Diminishment Standard.

This request is denied. Whether it is possible to draw a district that is unlikely to elect a candidate of a particular political party—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—depends on a functional analysis of the specific, proposed district. Given the innumerable ways that districts can be configured, committee staff did not rule out the possibility that a district that is unlikely to elect a Republican candidate—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—could potentially be drawn. In fact, statistically, two of the Challenged Districts (House Districts 113 and 114) are Democrat-leaning districts.

**REQUEST NO. 4:** Admit that, during the 2021–22 redistricting process, the House believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, the Challenged Districts could not be likely to elect a Democratic candidate.

**ANSWER:** As explained above, the House interprets this request's reference to "the House" to refer to legislative committee staff for the House Redistricting Committee, the House Congressional Redistricting Subcommittee, and the House State Legislative Redistricting Subcommittee who conducted the functional analysis required by the Non-Diminishment Standard.

This request is denied. Whether it is possible to draw a district that is likely to elect a candidate of a particular political party—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—depends on a functional analysis of the specific, proposed district. Given the innumerable ways that districts can be configured, committee staff did not rule out the possibility that a district that is likely to elect a Democratic candidate—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—could potentially be drawn. In fact, statistically, two of the Challenged Districts (House Districts 113 and 114) are Democrat-leaning districts.

**REQUEST NO. 5:** Admit that, during the 2021–22 redistricting process, the House believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, the Challenged Districts had to have a particular partisan performance.

**ANSWER:** The House objects that the phrase "particular partisan performance" is vague and ambiguous.

**REQUEST NO. 6:** Admit that, during the 2021–22 redistricting process, the House believed or understood that one or more of the Challenged Districts had to be likely to elect a Republican candidate.

**ANSWER:** As explained above, the House interprets this request's reference to "the House" to refer to legislative committee staff for the House Redistricting Committee, the House Congressional Redistricting Subcommittee, and the House State Legislative Redistricting Subcommittee who conducted the functional analysis required by the Non-Diminishment Standard.

This request is denied. Whether it is possible to draw a district that is unlikely to elect a candidate of a particular political party—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—depends on a functional analysis of the specific, proposed district. Given the innumerable ways that districts can be configured, committee staff did not rule out the possibility that a district that is unlikely to elect a Republican candidate—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—could potentially be drawn. In fact, statistically, two of the Challenged Districts (House Districts 113 and 114) are Democrat-leaning districts.

**REQUEST NO. 7:** Admit that, during the 2021–22 redistricting process, the House believed or understood that one or more of the Challenged Districts could not be likely to elect a Democratic candidate.

**ANSWER:** As explained above, the House interprets this request's reference to "the House" to refer to legislative committee staff for the House Redistricting Committee, the

House Congressional Redistricting Subcommittee, and the House State Legislative Redistricting Subcommittee who conducted the functional analysis required by the Non-Diminishment Standard.

This request is denied. Whether it is possible to draw a district that is likely to elect a candidate of a particular political party—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—depends on a functional analysis of the specific, proposed district. Given the innumerable ways that districts can be configured, committee staff did not rule out the possibility that a district that is likely to elect a Democratic candidate—but that avoids diminishment in the ability of Hispanic voters to elect representatives of their choice—could potentially be drawn. In fact, statistically, two of the Challenged Districts (House Districts 113 and 114) are Democrat-leaning districts.

**REQUEST NO. 8:** Admit that, during the 2021–22 redistricting process, the House believed or understood that one or more of the Challenged Districts had to have a particular partisan performance.

**ANSWER:** The House objects that the phrase "particular partisan performance" is vague and ambiguous.

**REQUEST NO. 9:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged Districts had to be likely to elect a Republican candidate: Rep. Tom Leek, Rep. Cord Byrd,

7

Rep. Tyler Sirois, Rep. Randy Fine, Rep. Kaylee Tuck, Rep. Will Robinson, Leda Kelly, Jason Poreda, Kyle Langan.

**ANSWER:** The House lacks sufficient knowledge or information to admit or deny this request. The House has made reasonable inquiry, but the information it knows or can readily obtain is insufficient to enable it to admit or deny. Specifically, without information known only to individuals who have asserted the legislative privilege, the House is unable to admit or deny this request.

**REQUEST NO. 10:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged Districts had to be likely to elect a Republican candidate: Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, Andy Bardos.

**ANSWER:** The House objects that Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, and Andy Bardos are attorneys who provided legal advice to the House with respect to redistricting and that the work-product doctrine therefore protects from disclosure their mental impressions, conclusions, opinions, and legal theories, if any, regarding the Non-Diminishment Standard's application to Hispanic voters in the Challenged Districts.

**REQUEST NO. 11:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged

8

Districts could not be likely to elect a Democratic candidate: Rep. Tom Leek, Rep. Cord Byrd, Rep. Tyler Sirois, Rep. Randy Fine, Rep. Kaylee Tuck, Rep. Will Robinson, Leda Kelly, Jason Poreda, Kyle Langan.

**ANSWER:** The House lacks sufficient knowledge or information to admit or deny this request. The House has made reasonable inquiry, but the information it knows or can readily obtain is insufficient to enable it to admit or deny. Specifically, without information known only to individuals who have asserted the legislative privilege, the House is unable to admit or deny this request.

**REQUEST NO. 12:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged Districts could not be likely to elect a Democratic candidate: Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, Andy Bardos.

**ANSWER:** The House objects that Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, and Andy Bardos are attorneys who provided legal advice to the House with respect to redistricting and that the work-product doctrine therefore protects from disclosure their mental impressions, conclusions, opinions, and legal theories, if any, regarding the Non-Diminishment Standard's application to Hispanic voters in the Challenged Districts.

**REQUEST NO. 13:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing

9

Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged Districts had to have a particular partisan performance: Rep. Tom Leek, Rep. Cord Byrd, Rep. Tyler Sirois, Rep. Randy Fine, Rep. Kaylee Tuck, Rep. Will Robinson, Leda Kelly, Jason Poreda, Kyle Langan.

**ANSWER:** By correspondence dated May 7, 2025, Plaintiffs' counsel clarified that the phrase "particular partisan performance" does "not mean an exact precise election result, but rather a particular result, range, or threshold."

The House understands this request, as clarified by Plaintiffs' counsel, to seek an admission that, during the 2021–22 redistricting process, at least one individual named in the request believed or understood that, to avoid diminishing Hispanic voters' ability to elect representatives of their choice in a Challenged District, the Challenged District must achieve a particular result, fall within a particular range, or exceed a particular threshold according to a single, specific metric of partisan performance (such as 2020 general-election vote share).

With that understanding, the House responds that it lacks sufficient knowledge or information to admit or deny this request. The House has made reasonable inquiry, but the information it knows or can readily obtain is insufficient to enable it to admit or deny. Specifically, without information known only to individuals who have asserted the legislative privilege, the House is unable to admit or deny this request.

**REQUEST NO. 14:** Admit that, during the 2021–22 redistricting process, at least one of the following individuals believed or understood that, in order to avoid diminishing Hispanic voters' ability to elect representatives of their choice, one or more of the Challenged

Districts had to have a particular partisan performance: Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, Andy Bardos.

**ANSWER:** The House objects that Daniel Bell, J. Michael Maida, Peter Dunbar, Marc Dunbar, and Andy Bardos are attorneys who provided legal advice to the House with respect to redistricting and that the work-product doctrine therefore protects from disclosure their mental impressions, conclusions, opinions, and legal theories, if any, regarding the Non-Diminishment Standard's application to Hispanic voters in the Challenged Districts. The House further objects that the phrase "particular partisan performance" is vague and ambiguous.

**REQUEST NO. 15:** Admit that, during the 2015 Congressional Redistricting Litigation, the House argued that at least one Protected District with a Hispanic majority had to be likely to elect a Republican candidate to avoid diminishing Hispanic voters' ability to elect representatives of their choice.

**ANSWER:** Denied.

**REQUEST NO. 16:** Admit that, during the 2015 congressional redistricting process, the House believed or understood that at least one Protected District with a Hispanic majority had to be likely to elect a Republican candidate to avoid diminishing Hispanic voters' ability to elect representatives of their choice.

**ANSWER:** Denied.

**REQUEST NO. 17:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House was aware of *Gingles Unraveled: Hispanic Cohesion in South Florida*.

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the extent this request seeks information from individuals who have not waived their legislative privilege.[1]

**REQUEST NO. 18:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House was aware of *Gingles Unraveled: Hispanic Cohesion in South Florida*.

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and

---

[1] A litigant may not avoid the legislative privilege by directing its discovery requests to the legislative body rather than to the legislator or legislative staff member individually. *See, e.g.*, *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856 (D.C. Cir. 1988) (concluding that the Speech or Debate Clause protects a congressional subcommittee from a document subpoena, regardless of the extent of burdens the subpoena would impose on members and staff); *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1105, 1110–12 (D. Ariz. 2023) (protecting the Arizona Legislature from a corporate deposition because the proposed discovery would effectively force a waiver of every legislator's individual legislative privilege); *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 235 (S.D.N.Y. 2015) (concluding that a subpoena for deposition and documents to a congressional subcommittee implicates the protections afforded by the Speech or Debate Clause).

former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the extent this request seeks information from individuals who have not waived their legislative privilege. *See supra* note 1.

**REQUEST NO. 19:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House had read *Gingles Unraveled: Hispanic Cohesion in South Florida*.

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the extent this request seeks information from individuals who have not waived their legislative privilege. *See supra* note 1.

**REQUEST NO. 20:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House had read *Gingles Unraveled: Hispanic Cohesion in South Florida*.

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the

extent this request seeks information from individuals who have not waived their legislative privilege. *See supra* note 1.

**REQUEST NO. 21:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House had read in its entirety *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015).

**ANSWER:** Admitted.

**REQUEST NO. 22:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House had read in its entirety *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015).

**ANSWER:** Admitted.

**REQUEST NO. 23:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House had read pages 286–87 and footnote 11 of *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015).

**ANSWER:** Admitted.

**REQUEST NO. 24:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House had read pages 286–87 and footnote 11 of *League of Women Voters of Florida v. Detzner*, 179 So. 3d 258 (Fla. 2015).

**ANSWER:** Admitted.

**REQUEST NO. 25:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House was aware of *Taking a Deeper Look at Hispanic Voting Patterns in South Florida*.

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the extent this request seeks information from individuals who have not waived their legislative privilege. *See supra* note 1. Plaintiffs, moreover, withdrew this request in email correspondence from their counsel to the House's counsel on May 22, 2025.

**REQUEST NO. 26:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House was aware of *Taking a Deeper Look at Hispanic Voting Patterns in South Florida*.

**ANSWER:** Admitted.

**REQUEST NO. 27:** Admit that by March 4, 2022, a member, officer, employee, or Retained Counsel of the House had read *Taking a Deeper Look at Hispanic Voting Patterns in South Florida*.

15

**ANSWER:** The House objects that this request seeks information that is not relevant to any party's claim or defense. The House further objects that, because it purports to require the House to survey 120 current and former elected members and hundreds of current and former employees, this request is overly broad and unduly burdensome and disproportionate to the needs of this case. The House further objects on the basis of legislative privilege to the extent this request seeks information from individuals who have not waived their legislative privilege. *See supra* note 1. Plaintiffs, moreover, withdrew this request in email correspondence from their counsel to the House's counsel on May 22, 2025.

**REQUEST NO. 28:** Admit that by April 20, 2022, a member, officer, employee, or Retained Counsel of the House had read *Taking a Deeper Look at Hispanic Voting Patterns in South Florida*.

**ANSWER:** Admitted.

Dated May 30, 2025.                                  Respectfully submitted,

 

|  |  |
|---|---|
|  | /s/ *Andy Bardos* |
| Christopher M. Kise (FBN 855545) | Andy Bardos (FBN 822671) |
| ckise@continentalpllc.com | andy.bardos@gray-robinson.com |
| CONTINENTAL PLLC | GRAYROBINSON, P.A. |
| 101 North Monroe Street, Suite 750 | 301 South Bronough Street, Suite 600 |
| Tallahassee, Florida 32301 | Tallahassee, Florida 32301-1724 |
| Telephone: 850-270-2211 | Telephone: 850-577-9090 |

Jesus M. Suarez (FBN 60086)
jsuarez@continentalpllc.com
Carmen Manrara Cartaya (FBN 73887)
ccartaya@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
Telephone: 305-677-2707

*Attorneys for Defendant, Florida House of Representatives*

## **CERTIFICATE OF SERVICE**

I certify that, on May 30, 2025, a true and correct copy of the foregoing was served by email on all counsel identified on the Service List that follows.

/s/ *Andy Bardos*
Andy Bardos (FBN 822671)
GRAYROBINSON, P.A.

## SERVICE LIST

Nicholas L.V. Warren
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, Florida 33134
nwarren@aclufl.org
*Attorneys for Plaintiffs*

Daniel B. Tilley
Caroline A. McNamara
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, Florida 33134
dtilley@aclufl.org
cmcnamara@aclufl.org
*Attorneys for Plaintiffs*

Bradley R. McVay
Joseph S. Van de Bogart
Ashley Davis
Florida Department of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399
brad.mcvay@dos.myflorida.com
joseph.vandebogart@dos.myflorida.com
ashley.davis@dos.myflorida.com
*Attorneys for Secretary of State*

Mohammad O. Jazil
Michael Beato
Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
*Attorneys for Secretary of State*

Jorge L. Vasquez, Jr.
Vasquez Attorneys at Law, PC
141 Parkway Road, Suite 14
Bronxville, New York 10708
jorge@vasquezpc.com
*Attorneys for Plaintiffs*

Andrew J. Frackman
O'Melveny & Myers LLP
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
afrackman@omm.com
*Attorneys for Plaintiffs*

Brian P. Quinn
Patrick J. Jones
Emily Murphy
Gabrielle S. Jackson
Andrea Ojeda
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, D.C. 20006
bquinn@omm.com
pjones@omm.com
emurphy@omm.com
gjackson@omm.com
aojeda@omm.com
*Attorneys for Plaintiffs*