# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al.*,

     Plaintiffs,

v.

FLORIDA HOUSE OF REPRESENTATIVES
and CORD BYRD, in his official capacity as
Florida Secretary of State,

     Defendants.

_____/

## THE FLORIDA HOUSE OF REPRESENTATIVES' ANSWERS TO PLAINTIFFS' THIRD SET OF REQUESTS FOR ADMISSION TO THE FLORIDA HOUSE OF REPRESENTATIVES

Defendant, the Florida House of Representatives (the "House"), answers Plaintiffs'

Third Set of Requests for Admission to the Florida House of Representatives, dated June 18,

2025.

### GENERAL STATEMENT AND OBJECTIONS

1.     The House objects to the extent that Plaintiffs' definitions and instructions

purport to impose obligations different from or additional to the requirements of the

Federal Rules of Civil Procedure, or to limit the discretion of answering parties under the

Federal Rules of Civil Procedure.

2.     For example, the House objects that Instructions Nos. 2 and 5 purport to

impose obligations different from or additional to the requirements of Rule 36(a)(4), that the



PLAINTIFFS' TRIAL EXHIBIT

P18

1:24-cv-21983-JB

first sentence of Instruction No. 10 purports to impose obligations different from or additional to the requirements of Rule 36(a)(5), and that Instruction No. 7 purports to impose obligations not contained in the Federal Rules of Civil Procedure.

3.      In the House's answers, "Challenged Districts" has the same meaning as in paragraph 4 of Plaintiffs' First Amended Complaint (ECF No. 31).

4.      The House's review of information and documents is continuing, as is discovery. The House's answers are based on information now known to it and are provided without prejudice to the House's right to assert additional objections or to revise, correct, supplement, clarify, or amend its answers, if the House discovers additional grounds for objections or additional, responsive information.

5.      The House provides its answers without waiving or intending to waive, and the House expressly preserves, all applicable privileges, exemptions, and protections from discovery. In the answers provided below, the House has not withheld any responsive information on the basis of privilege.

### REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Admit that, at the Common Cause trial (9/26/23 tr. at 120:15–17), when asked, "There's a lot of benefit, is there not, to keeping a district entirely within one county?", Mr. Kelly testified, "It's a good goal to do so."

**ANSWER:** The House was not a party to and did not attend the Common Cause trial and cannot verify the accuracy of the transcript referenced in this request. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 2:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed it was a good goal to keep a district entirely within one county.

**ANSWER:** The House did not employ Mr. Kelly during the 2021–22 redistricting process. The House does not therefore know what Mr. Kelly's beliefs were during the 2021–22 redistricting process. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 3:** Admit that, at the Common Cause trial (9/26/23 tr. at 121:10–13), when asked, "In any event, it's a benefit if one representative represents Jacksonville and no other county, correct?", Mr. Kelly testified, "It's a good goal if you can locate that district entirely within a county."

**ANSWER:** The House was not a party to and did not attend the Common Cause trial and cannot verify the accuracy of the transcript referenced in this request. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 4:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed it was a good goal to locate a district entirely within Duval County.

**ANSWER:** The House did not employ Mr. Kelly during the 2021–22 redistricting process. The House does not therefore know what Mr. Kelly's beliefs were during the 2021–

22 redistricting process. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 5:** Admit that, at the Common Cause trial (9/26/23 tr. at 121:20–23), when asked, "If you have a representative who's situated entirely within the county, these are people who have a common interest, right?", Mr. Kelly testified, "Yes, they're in the same county."

**ANSWER:** The House was not a party to and did not attend the Common Cause trial and cannot verify the accuracy of the transcript referenced in this request. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 6:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed if you have a representative who's situated entirely within a county, these are people who have a common interest.

**ANSWER:** The House did not employ Mr. Kelly during the 2021–22 redistricting process. The House does not therefore know what Mr. Kelly's beliefs were during the 2021–22 redistricting process. Thus, although the House has made reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 7:** Admit that the Chair of the Senate Committee on Reapportionment issued a memorandum on October 18, 2021 with the subject "Committee Directives to Staff on Map Drawing."

**ANSWER:** Admitted that the Chair of the Senate Committee on Reapportionment issued a memorandum on October 18, 2021, with the subject "Committee Directives to Staff on Map-Drawing."

**REQUEST NO. 8:** Admit that the "Committee Directives to Staff on Map Drawing" memorandum included instructions to Senate reapportionment staff about what criteria to follow when drawing maps in the 2022 redistricting process.

**ANSWER:** Admitted.

**REQUEST NO. 9:** Admit that Senate staff followed the principles of the "Committee Directives to Staff on Map Drawing" memorandum when drawing maps as part of the 2022 redistricting process.

**ANSWER:** The House objects that, to the extent it encompasses State Senate districts, this request is not relevant to any party's claims or defenses. Plaintiffs challenge only congressional and State House districts.

The House further objects that, to the extent it encompasses unchallenged districts in congressional and State House redistricting plans, this request is not relevant to any party's claims or defenses. Plaintiffs challenge only one congressional district and seven State House districts.

The House further objects that it has no knowledge of any districts that Senate staff might have drawn but not published. To that extent, despite reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

The House further objects that this request imposes an undue burden and is disproportionate to the needs of this case. Staff of the Senate Committee on Reapportionment drew and submitted 12 congressional redistricting plans (*i.e.*, redistricting plans that begin with the designation "S000"), each of which contained 28 districts. (Senate staff did not submit any State House redistricting plans.) To require the House to review 336 districts and formulate an opinion on the consistency of those districts with each of the many legal principles and directives outlined in the memorandum would impose significant burdens and yield little or no benefit.

The House further objects that, since the memorandum outlines legal standards that apply to redistricting, this request seeks the admission of a pure legal conclusion. *See*, *e.g.*, Pl. Cubanos Pa'lante's Answers to Def. House of Representatives' First Request For Admissions (Feb. 10, 2025) (objecting to requests for admissions that the challenged districts comply with Florida's compactness and political-and-geographical-boundaries standards).

**REQUEST NO. 10:** Admit that House District 115 spans from SW 8th Street to Black Point Park and Marina.

**ANSWER:** Admitted that SW 8th Street is House District 115's northern boundary. Denied that House District 115 reaches Black Point Park and Marina.

**REQUEST NO. 11:** Admit that House District 116 spans from NW 25th Street to SW 112th Street.

**ANSWER:** Admitted that NW 25th Street forms part of House District 116's northern boundary and that SW 112th Street is House District 116's southern boundary.

**REQUEST NO. 12:** Admit that House District 118 spans from SW 8th Street to SW 232d Street.

**ANSWER:** Admitted that SW 8th Street is House District 118's northernmost boundary and that SW 232nd Street is House District 118's southern boundary.

**REQUEST NO. 13:** Admit that House District 119 spans from SW 8th Street to SW 232d Street.

**ANSWER:** Admitted that SW 8th Street is House District 118's northern boundary and that SW 232nd Street is House District 118's southern boundary.

**REQUEST NO. 14:** Admit that House District 112 crosses the Dolphin Expressway (State Road 836).

**ANSWER:** Admitted.

**REQUEST NO. 15:** Admit that House District 113 spans from NE 28th Street to Cape Florida on the southern tip of Key Biscayne.

**ANSWER:** Denied that NE 28th Street is House District 113's northern boundary. Admitted that Cape Florida on the southern tip of Key Biscayne is the southernmost point of land within House District 113.

**REQUEST NO. 16:** Admit that House District 114 spans from the Dolphin Expressway (State Road 836) to Chapman Field Park.

**ANSWER:** Admitted that the Dolphin Expressway (State Road 836) is House District 114's northern boundary and that the southern end of Chapman Field Park is the southernmost point of land within House District 114.

**REQUEST NO. 17:** Admit that House District 116 crosses the Dolphin Expressway (State Road 836) and the Don Shula Expressway (State Road 874).

**ANSWER:** Admitted.

**REQUEST NO. 18:** Admit that House District 118 crosses the Homestead Subdivision railroad line west of the Florida Turnpike (State Road 821).

**ANSWER:** Admitted.

**REQUEST NO. 19:** Admit that House District 119 crosses the Homestead Subdivision railroad line west of the SW 147th Avenue.

**ANSWER:** Admitted.

**REQUEST NO. 20:** Admit that voters in Florida listed as "inactive" pursuant to Fla. Stat. § 98.065(4)(d) are still registered and able to vote on election day if they wish to do so.

**ANSWER:** The House objects that this request presents a pure question of law and does not seek an admission of facts, the application of law to fact, or opinions about either. *See* Fed. R. Civ. P. 36(a)(1)(A). To the extent this request asks the House to admit that individual voters or a class of voters is in fact registered to vote, the House responds that it does not maintain Florida's voter-registration rolls. Thus, despite reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 21:** Admit that between November 2020 and April 2025, the percent of Hispanic voters in Miami-Dade County registered without a party affiliation ranged between 33.6 - 34.7 percent.

**ANSWER:** Admitted.

**REQUEST NO. 22:** Admit that House District 112 contains a largely uninhabited, 4,300-acre area encompassing Miami International Airport and the adjacent industrial zone.

**ANSWER:** Admitted that House District 112 contains the Miami International Airport and an adjacent industrial zone, which are largely uninhabited. Although the House has made reasonable inquiry, the information the House knows or can readily obtain is

insufficient to enable the House to determine the acreage of the Miami International Airport and the adjacent industrial zone and thus to admit or deny that portion of this request.

**REQUEST NO. 23:** Admit that Congressional District 26 spans from the Gulf of Mexico to Biscayne Bay.

**ANSWER:** Admitted that small portions of Congressional District 26 touch the Gulf of America and Biscayne Bay.

**REQUEST NO. 24:** Admit that the Florida Legislature makes available online redistricting software at https://web.floridaredistricting.esriemcs.com/redistricting/.

**ANSWER:** Admitted.

**REQUEST NO. 25:** Admit that the U.S. Census Bureau makes available Census block shapefiles from the U.S. Census Bureau.

**ANSWER:** Admitted.

**REQUEST NO. 26:** Admit that illustrative House Plans C1-C4 in Professor Cory McCartan's opening expert report in this action enable additional map configurations that keep the City of Miami within four House districts.

**ANSWER:** Admitted that McCartan State House Maps C1, C2, C3, and C4 divide the City of Miami among four State House districts.

**REQUEST NO. 27:** Admit that the Everglades is a significant natural boundary between cities and other population centers on the east and west coasts of Florida.

**ANSWER:** Admitted that the Everglades is a large, mostly natural area with cities and other population centers to its east and west. Denied that the Everglades is a "boundary" for purposes of article III, sections 20(b) and 21(b) of the Florida Constitution.

**REQUEST NO. 28:** Admit that in South Florida, the east and west coasts are separated along county lines.

**ANSWER:** Admitted that, south of Lake Okeechobee, one of many county boundaries runs north-to-south approximately midway between the east and west coasts.

**REQUEST NO. 29:** Admit that the Florida Legislature has historically used three specific compactness measures: the Polsby-Popper score, the Reock score, and the Convex Hull score.

**ANSWER:** To the extent this request implies that compactness is measured primarily by quantitative scores rather than a visual examination, this request is denied. In addition, despite reasonable inquiry, the information the House knows or can readily obtain is insufficient to enable it to admit or deny this request as it relates to the Florida Senate. Admitted that, to the extent quantitative measures assist in assessing compactness, the Reock score, the Convex Hull score, and the Polsby-Popper score are the three quantitative measures of compactness that the House has principally used since the adoption of article III, sections 20 and 21 of the Florida Constitution.

**REQUEST NO. 30:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall Hispanic VAP is 45.6% based on 2020 Census data.

**ANSWER:** Admitted.

**REQUEST NO. 31:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall White VAP is 32.9% based on 2020 Census data.

**ANSWER:** To the extent "overall White VAP" includes individuals who self-reported as White and one or more additional races—or who self-reported as both White and of Hispanic ethnicity—this request is denied. Admitted that, in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the single-race, non-Hispanic White VAP is 32.9% based on 2020 Census data.

**REQUEST NO. 32:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall Black VAP is 18.9% based on 2020 Census data.

**ANSWER:** Admitted.

**REQUEST NO. 33:** Admit that the Hispanic VAP of Congressional Districts 26, 27, and 28 varies by less than a percentage point based on 2020 Census data.

**ANSWER:** Admitted that, based on 2020 Census data, the Hispanic VAPs of Congressional Districts 26, 27, and 28 fall within a range of less than one percentage point.

**REQUEST NO. 34:** Admit that in Congressional Districts 26, 27, and 28 each contain areas with greater than 90% Hispanic VAP and with less than 25% Hispanic VAP based on 2020 Census data.

**ANSWER:** The House objects that the word "areas" is vague and ambiguous. This request does not specify a unit of geography or the number of units needed to comprise an "area." For example, this request can be understood to ask whether Congressional Districts 26, 27, and 28 each contain at least one census block with a Hispanic VAP above 90 percent and at least one census block with a Hispanic VAP below 25 percent.

**REQUEST NO. 35:** Admit that Collier County is split across three congressional districts.

**ANSWER:** Admitted.

**REQUEST NO. 36:** Admit that the portion of Collier County in Congressional District 26 has a VAP that is 31.8% Hispanic.

**ANSWER:** Admitted.

**REQUEST NO. 37:** Admit that the portion of Collier County in Congressional District 18 and 19 is 13.7% Hispanic.

**ANSWER:** Admitted that, if the portion of Collier County in Congressional District 18 is combined with the portion of Collier County in Congressional District 19, then the Hispanic VAP of the combined portion is 13.7 percent.

**REQUEST NO. 38:** Admit that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portions of Collier County in Congressional Districts 18 and 19.

**ANSWER:** Denied that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portion of Collier County in Congressional District 18. Admitted that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portion of Collier County in Congressional District 19.

**REQUEST NO. 39:** Admit that Miami-Dade County is split across four congressional districts.

**ANSWER:** Admitted.

**REQUEST NO. 40:** Admit that the portion of Miami-Dade County in Congressional District 26 has 88.9% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 41:** Admit that the portion of Miami-Dade County in Congressional District 24 has 39.3% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 42:** Admit that the portion of Miami-Dade County in Congressional District 27 has 74.2% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 43:** Admit that the portion of Miami-Dade County in Congressional District 28 has 80.2% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 44:** Admit that the portion of Miami-Dade County in Congressional District 26 has a higher Hispanic VAP than the portions of Miami-Dade County in Congressional Districts 24, 27, and 28.

**ANSWER:** Admitted.

**REQUEST NO. 45:** Admit that Immokalee is split across two congressional districts.

**ANSWER:** The House objects that this request is vague. Because Immokalee is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Immokalee CDP and therefore to the perimeter of Immokalee CDP, as created

and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 46:** Admit that the portion of Immokalee in Congressional District 26 has 70.3% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because Immokalee is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Immokalee CDP and therefore to the perimeter of Immokalee CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 47:** Admit that Miami is split across three congressional districts.

**ANSWER:** Admitted that the City of Miami is split across three congressional districts.

**REQUEST NO. 48:** Admit that the portion of Miami in Congressional District 26 has 79.6% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in Congressional District 26 has 79.7% Hispanic VAP.

**REQUEST NO. 49:** Admit that the portion of Miami in Congressional District 26 has higher Hispanic VAP than the portions of Miami in Congressional District 24.

**ANSWER:** Admitted.

**REQUEST NO. 50:** Admit that Brownsville is split across two congressional districts.

**ANSWER:** The House objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 51:** Admit that the portion of Brownsville in Congressional District 26 has 63.7% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The

House therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 52:** Admit that the portion of Brownsville in Congressional District 26 has higher Hispanic VAP than the portion of Brownsville in district 24.

**ANSWER:** The House objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 53:** Admit that Gladeview is split across two congressional districts.

**ANSWER:** The House objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The

House therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 54:** Admit that the portion of Gladeview in Congressional District 26 has 92.5% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 55:** Admit that the portion of Gladeview in Congressional District 26 has higher Hispanic VAP than the portion of Gladeview in district 24.

**ANSWER:** The House objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The

House therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

REQUEST NO. 56: Admit that West Little River is split across two congressional districts.

ANSWER: The House objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

REQUEST NO. 57: Admit that the portion of West Little River in Congressional District 26 has 83.3% Hispanic VAP.

ANSWER: The House objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The

House therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 58:** Admit that the portion of West Little River in Congressional District 26 has higher Hispanic VAP than the portion of West Little River in Congressional District 24.

**ANSWER:** The House objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 59:** Admit that the majority of precincts that are split between Congressional District 26 and another district contains a higher percentage of Hispanic VAP in the portion in Congressional District 26 than the portion in the other district.

**ANSWER:** Denied that any precincts are split between congressional districts.

**REQUEST NO. 60:** Admit that the Republican candidate won a plurality or majority in the 2020 Presidential election in Congressional Districts 26, 27, and 28.

**ANSWER:** Admitted.

**REQUEST NO. 61:** Admit that the Republican candidate won a plurality or majority in the 2018 governor election in Congressional Districts 26, 27, and 28.

**ANSWER:** Denied.

**REQUEST NO. 62:** Admit that the Republican candidate won a plurality or majority in the 2016 Presidential election in Congressional Districts 26, 27, and 28.

**ANSWER:** Denied.

**REQUEST NO. 63:** Admit that in the Challenged State House Districts the combined overall Hispanic VAP is 69.3% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 64:** Admit that in the Challenged State House Districts the combined overall White VAP is 11.8% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 65:** Admit that in the Challenged Districts the combined overall Black VAP is 17.6% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 66:** Admit that all of the Challenged Districts have a Hispanic VAP above 65%.

**ANSWER:** Admitted that all of the Challenged Districts have a Hispanic VAP above 65.0%.

**REQUEST NO. 67:** Admit that all but one of the Challenged Districts have a Hispanic VAP above 70%.

**ANSWER:** Admitted.

**REQUEST NO. 68:** Admit that Miami is split across five State House districts.

**ANSWER:** Admitted that the City of Miami is split across five State House districts.

**REQUEST NO. 69:** Admit that the portion of Miami in State House Districts 112, 113, and 114 have a 78.9% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in State House Districts 112, 113, and 114 has a 78.8% Hispanic VAP.

**REQUEST NO. 70:** Admit that the portion of Miami in State House Districts 108 and 109 have a 55.5% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in State House Districts 108 and 109 has a 55.5% Hispanic VAP.

**REQUEST NO. 71:** Admit that Goulds is split across two State House districts.

**ANSWER:** The House objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 72:** Admit that the portion of Goulds in State House District 118 has a 80.9% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and

defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 73:** Admit that the portion of Goulds in State House District 117 has a 55.5% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 74:** Admit that the portion of Goulds in State House District 118 has higher Hispanic VAP than the portion of Goulds in district 117.

**ANSWER:** Admitted.

**REQUEST NO. 75:** Admit that South Miami Heights is split across two State House districts.

**ANSWER:** The House objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political

subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 76:** Admit that the portion of South Miami Heights in State House District 118 has a 80.6% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 77:** Admit that the portion of South Miami Heights in State House District 117 has a 75.5% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political

subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is denied.

**REQUEST NO. 78:** Admit that the portion of South Miami Heights in State House District 118 has higher Hispanic VAP than the portion of South Miami Heights in district 117.

**ANSWER:** The House objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The House therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 79:** Admit that there is a unincorporated area northeast of Everglades National Park that is split across two State House districts.

**ANSWER:** The House objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 80:** Admit that the portion of the unincorporated area northeast of Everglades National Park in State House District 119 has a 88.0% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 81:** Admit that the portion of unincorporated area northeast of Everglades National Park in State House District 120 has a 44.9% Hispanic VAP.

**ANSWER:** The House objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 82:** Admit that the portion of the unincorporated area northeast of Everglades National Park in State House District 118 has higher Hispanic VAP than the portion of the large unincorporated area northeast of Everglades National Dark in State House District 117.

**ANSWER:** The House objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

Dated July 18, 2025.                     Respectfully submitted,


                                         /s/ _Andy Bardos_
Christopher M. Kise (FBN 855545)         Andy Bardos (FBN 822671)
ckise@continentalpllc.com                andy.bardos@gray-robinson.com
CONTINENTAL PLLC                         GRAYROBINSON, P.A.
101 North Monroe Street, Suite 750       301 South Bronough Street, Suite 600
Tallahassee, Florida 32301               Tallahassee, Florida 32301-1724
Telephone: 850-270-2211                  Telephone: 850-577-9090

Jesus M. Suarez (FBN 60086)
jsuarez@continentalpllc.com
Carmen Manrara Cartaya (FBN 73887)
ccartaya@continentalpllc.com
CONTINENTAL PLLC
255 Alhambra Circle, Suite 640
Coral Gables, Florida 33134
Telephone: 305-677-2707


*Attorneys for Defendant, Florida House of Representatives*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 18, 2025, a true and correct copy of the foregoing was served by email on all counsel identified on the Service List that follows.

/s/ *Andy Bardos*

Andy Bardos (FBN 822671)

GRAYROBINSON, P.A.

## SERVICE LIST

Nicholas L.V. Warren
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, Florida 33134
nwarren@aclufl.org
*Attorneys for Plaintiffs*

Daniel B. Tilley
Caroline A. McNamara
ACLU Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, Florida 33134
dtilley@aclufl.org
cmcnamara@aclufl.org
*Attorneys for Plaintiffs*

Bradley R. McVay
Ashley Davis
Florida Department of State
R.A. Gray Building
500 South Bronough Street
Tallahassee, Florida 32399
brad.mcvay@dos.myflorida.com
ashley.davis@dos.myflorida.com
*Attorneys for Secretary of State*

Brian P. Quinn
Patrick J. Jones
Emily Murphy
Gabrielle S. Jackson
Andrea Ojeda
O'Melveny & Myers LLP
1625 Eye Street NW
Washington, D.C. 20006
bquinn@omm.com
pjones@omm.com
emurphy@omm.com
gjackson@omm.com
aojeda@omm.com
*Attorneys for Plaintiffs*

Jorge L. Vasquez, Jr.
Vasquez Attorneys at Law, PC
141 Parkway Road, Suite 14
Bronxville, New York 10708
jorge@vasquezpc.com
*Attorneys for Plaintiffs*

Andrew J. Frackman
O'Melveny & Myers LLP
1301 Avenue of the Americas, 17th Floor
New York, New York 10019
afrackman@omm.com
*Attorneys for Plaintiffs*

Mohammad O. Jazil
Michael Beato
Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
*Attorneys for Secretary of State*