UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:24-cv-21983-JB

CUBANOS PA'LANTE, *et al*.,

      Plaintiffs,

v.

FLORIDA HOUSE OF REPRESENTATIVES
and CORD BYRD, in his official capacity as
Florida Secretary of State,

      Defendants.

_____/

**THE SECRETARY'S ANSWERS TO
PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION**

    Defendant Secretary of State Cord Byrd responds to Plaintiffs' second set of requests for admission, which were served on June 18, 2025.

**REQUESTS FOR ADMISSION**

    **REQUEST NO. 1:** Admit that, at the Common Cause trial (9/26/23 tr. at 120:15–17), when asked, "There's a lot of benefit, is there not, to keeping a district entirely within one county?", Mr. Kelly testified, "It's a good goal to do so."

    **ANSWER:** Admitted that those words are contained on the trial transcript and should be viewed within the context of the trial as a whole and Mr. Kelly's full trial testimony.

    **REQUEST NO. 2:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed it was a good goal to keep a district entirely within one county.

    **ANSWER:** Without knowledge, therefore this request can't be admitted or denied. The Secretary is unable to determine or speak for Mr. Kelly's subjective beliefs.

1



PLAINTIFFS' TRIAL
EXHIBIT

**P20**

1:24-cv-21983-JB

**REQUEST NO. 3:** Admit that, at the Common Cause trial (9/26/23 tr. at 121:10–13), when asked, "In any event, it's a benefit if one representative represents Jacksonville and no other county, correct?", Mr. Kelly testified, "It's a good goal if you can locate that district entirely within a county."

**ANSWER:** Admitted that those words are contained on the trial transcript and should be viewed within the context of the trial as a whole and Mr. Kelly's full trial testimony.

**REQUEST NO. 4:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed it was a good goal to locate a district entirely within Duval County.

**ANSWER:** Without knowledge, therefore this request can't be admitted or denied. The Secretary is unable to determine or speak for Mr. Kelly's subjective beliefs.

**REQUEST NO. 5:** Admit that, at the Common Cause trial (9/26/23 tr. at 121:20–23), when asked, "If you have a representative who's situated entirely within the county, these are people who have a common interest, right?", Mr. Kelly testified, "Yes, they're in the same county."

**ANSWER:** Admitted that those words are contained on the trial transcript and should be viewed within the context of the trial as a whole and Mr. Kelly's full trial testimony.

**REQUEST NO. 6:** Admit that, at the time of the 2021–22 redistricting process, Mr. Kelly believed if you have a representative who's situated entirely within a county, these are people who have a common interest.

**ANSWER:** Without knowledge, therefore this request can't be admitted or denied. The Secretary is unable to determine or speak for Mr. Kelly's subjective beliefs.

**REQUEST NO. 7:** Admit that the Chair of the Senate Committee on Reapportionment issued a memorandum on October 18, 2021 with the subject "Committee Directives to Staff on Map Drawing."

**ANSWER:** Admitted that the Chair of the Senate Committee on Reapportionment issued a memorandum on October 18, 2021, with the subject "Committee Directives to Staff on Map-Drawing."

**REQUEST NO. 8:** Admit that the "Committee Directives to Staff on Map Drawing" memorandum included instructions to Senate reapportionment staff about what criteria to follow when drawing maps in the 2022 redistricting process.

**ANSWER:** Admitted.

**REQUEST NO. 9:** Admit that Senate staff followed the principles of the "Committee Directives to Staff on Map Drawing" memorandum when drawing maps as part of the 2022 redistricting process.

**ANSWER:** The Secretary objects that, to the extent it encompasses State Senate districts, this request is not relevant to any party's claims or defenses. Plaintiffs challenge only congressional and State House districts.

3

The Secretary further objects that, to the extent it encompasses unchallenged districts in congressional and State House redistricting plans, this request is not relevant to any party's claims or defenses. Plaintiffs challenge only one congressional district and seven State House districts.

The Secretary further objects that it has no knowledge of any districts that Senate staff might have drawn but not published. To that extent, despite reasonable inquiry, the information the Secretary knows or can readily obtain is insufficient to enable it to admit or deny this request.

The Secretary further objects that this request imposes an undue burden and is disproportionate to the needs of this case. Staff of the Senate Committee on Reapportionment drew and submitted 12 congressional redistricting plans (*i.e.*, redistricting plans that begin with the designation "S000"), each of which contained 28 districts. (Senate staff did not submit any State House redistricting plans.) To require the Secretary to review 336 districts and formulate an opinion on the consistency of those districts with each of the many legal principles and directives outlined in the memorandum would impose significant burdens and yield little or no benefit.

The Secretary further objects that, since the memorandum outlines legal standards that apply to redistricting, this request seeks the admission of a pure legal conclusion.

**REQUEST NO. 10:** Admit that House District 115 spans from SW 8th Street to Black Point Park and Marina.

**ANSWER:** Admitted that SW 8th Street is House District 115's northern boundary. Denied that House District 115 reaches Black Point Park and Marina.

**REQUEST NO. 11:** Admit that House District 116 spans from NW 25th Street to SW 112th Street.

**ANSWER:** Admitted that NW 25th Street forms part of House District 116's northern boundary and that SW 112th Street is House District 116's southern boundary.

**REQUEST NO. 12:** Admit that House District 118 spans from SW 8th Street to SW 232d Street.

**ANSWER:** Admitted that SW 8th Street is House District 118's northernmost boundary and that SW 232nd Street is House District 118's southern boundary.

**REQUEST NO. 13:** Admit that House District 119 spans from SW 8th Street to SW 232d Street.

**ANSWER:** Admitted that SW 8th Street is House District 118's northern boundary and that SW 232nd Street is House District 118's southern boundary.

**REQUEST NO. 14:** Admit that House District 112 crosses the Dolphin Expressway (State Road 836).

**ANSWER:** Admitted.

**REQUEST NO. 15:** Admit that House District 113 spans from NE 28th Street to Cape Florida on the southern tip of Key Biscayne.

**ANSWER:** Denied that NE 28th Street is House District 113's northern boundary. Admitted that Cape Florida on the southern tip of Key Biscayne is the southernmost point of land within House District 113.

**REQUEST NO. 16:** Admit that House District 114 spans from the Dolphin Expressway (State Road 836) to Chapman Field Park.

**ANSWER:** Admitted that the Dolphin Expressway (State Road 836) is House District 114's northern boundary and that the southern end of Chapman Field Park is the southernmost point of land within House District 114.

**REQUEST NO. 17:** Admit that House District 116 crosses the Dolphin Expressway (State Road 836) and the Don Shula Expressway (State Road 874).

**ANSWER:** Admitted.

**REQUEST NO. 18:** Admit that House District 118 crosses the Homestead Subdivision railroad line west of the Florida Turnpike (State Road 821).

**ANSWER:** Admitted.

**REQUEST NO. 19:** Admit that House District 119 crosses the Homestead Subdivision railroad line west of the SW 147th Avenue.

**ANSWER:** Admitted.

**REQUEST NO. 20:** Admit that voters in Florida listed as "inactive" pursuant to Fla. Stat. § 98.065(4)(d) are still registered and able to vote on election day if they wish to do so.

**ANSWER:** The Secretary objects that this request presents a pure question of law and does not seek an admission of facts, the application of law to fact, or opinions about either. *See* Fed. R. Civ. P. 36(a)(1)(A).

**REQUEST NO. 21:** Admit that between November 2020 and April 2025, the percent of Hispanic voters in Miami-Dade County registered without a party affiliation ranged between 33.6 - 34.7 percent.

**ANSWER:** Admitted.

**REQUEST NO. 22:** Admit that House District 112 contains a largely uninhabited, 4,300-acre area encompassing Miami International Airport and the adjacent industrial zone.

**ANSWER:** Admitted that House District 112 contains the Miami International Airport and an adjacent industrial zone, which are largely uninhabited. Without knowledge as to the acreage of the Miami International Airport and the adjacent industrial zone, so this request can't be admitted or denied.

**REQUEST NO. 23:** Admit that Congressional District 26 spans from the Gulf of Mexico to Biscayne Bay.

**ANSWER:** Admitted that Congressional District 26 spans from the Gulf of America to Biscayne Bay.

**REQUEST NO. 24:** Admit that the Florida Legislature makes available online redistricting software at https://web.floridaredistricting.esriemcs.com/redistricting/.

**ANSWER:** Admitted.

**REQUEST NO. 25:** Admit that the U.S. Census Bureau makes available Census block shapefiles from the U.S. Census Bureau.

**ANSWER:** Admitted.

**REQUEST NO. 26:** Admit that illustrative House Plans C1-C4 in Professor Cory McCartan's opening expert report in this action enable additional map configurations that keep the City of Miami within four House districts.

**ANSWER:** Admitted that McCartan State House Maps C1, C2, C3, and C4 divide the City of Miami among four State House districts.

**REQUEST NO. 27:** Admit that the Everglades is a significant natural boundary between cities and other population centers on the east and west coasts of Florida.

**ANSWER:** Admitted that the Everglades is a large, mostly natural area with cities and other population centers to its east and west. Denied that the Everglades is a "boundary" for purposes of article III, sections 20(b) and 21(b) of the Florida Constitution.

**REQUEST NO. 28:** Admit that in South Florida, the east and west coasts are separated along county lines.

**ANSWER:** Admitted that, south of Lake Okeechobee, one of many county boundaries runs north-to-south approximately midway between the east and west coasts.

**REQUEST NO. 29:** Admit that the Florida Legislature has historically used three specific compactness measures: the Polsby-Popper score, the Reock score, and the Convex Hull score.

**ANSWER:** To the extent this request implies that compactness is measured primarily by quantitative scores rather than a visual examination, this request is denied. In addition, despite reasonable inquiry, the information the Secretary knows or can readily obtain is insufficient to enable it to admit or deny this request as it relates to the Florida Senate. Admitted that, to the extent quantitative measures assist in assessing compactness, the Reock score, the Convex Hull score, and the Polsby-Popper score are the three quantitative measures of compactness that the House has principally used since the adoption of article III, sections 20 and 21 of the Florida Constitution.

**REQUEST NO. 30:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall Hispanic VAP is 45.6% based on 2020 Census data.

**ANSWER:** Admitted.

**REQUEST NO. 31:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall White VAP is 32.9% based on 2020 Census data.

**ANSWER:** To the extent "overall White VAP" includes individuals who self-reported as White and one or more additional races—or who self-reported as both White and of Hispanic ethnicity—this request is denied. Admitted that, in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the single-race, non-Hispanic White VAP is 32.9% based on 2020 Census data.

**REQUEST NO. 32:** Admit that in Congressional Districts 18, 19, 20, 24, 25, 26, 27, and 28, the combined overall Black VAP is 18.9% based on 2020 Census data.

**ANSWER:** Admitted.

**REQUEST NO. 33:** Admit that the Hispanic VAP of Congressional Districts 26, 27, and 28 varies by less than a percentage point based on 2020 Census data.

**ANSWER:** Admitted that, based on 2020 Census data, the Hispanic VAPs of Congressional Districts 26, 27, and 28 fall within a range of less than one percentage point.

**REQUEST NO. 34:** Admit that in Congressional Districts 26, 27, and 28 each contain areas with greater than 90% Hispanic VAP and with less than 25% Hispanic VAP based on 2020 Census data.

**ANSWER:** The Secretary objects that the word "areas" is vague and ambiguous. This request does not specify a unit of geography or the number of units needed to comprise an "area." For example, this request can be understood to ask whether Congressional Districts 26, 27, and 28 each contain at least one census block with a Hispanic VAP above 90 percent and at least one census block with a Hispanic VAP below 25 percent.

**REQUEST NO. 35:** Admit that Collier County is split across three congressional districts.

**ANSWER:** Admitted.

**REQUEST NO. 36:** Admit that the portion of Collier County in Congressional District 26 has a VAP that is 31.8% Hispanic.

**ANSWER:** Admitted.

**REQUEST NO. 37:** Admit that the portion of Collier County in Congressional District 18 and 19 is 13.7% Hispanic.

**ANSWER:** Admitted that, if the portion of Collier County in Congressional District 18 is combined with the portion of Collier County in Congressional District 19, then the Hispanic VAP of the combined portion is 13.7 percent.

**REQUEST NO. 38:** Admit that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portions of Collier County in Congressional Districts 18 and 19.

**ANSWER:** Denied that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portion of Collier County in Congressional District 18. Admitted that the portion of Collier County in Congressional District 26 has a higher Hispanic VAP than the portion of Collier County in Congressional District 19.

**REQUEST NO. 39:** Admit that Miami-Dade County is split across four congressional districts.

**ANSWER:** Admitted.

**REQUEST NO. 40:** Admit that the portion of Miami-Dade County in Congressional District 26 has 88.9% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 41:** Admit that the portion of Miami-Dade County in Congressional District 24 has 39.3% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 42:** Admit that the portion of Miami-Dade County in Congressional District 27 has 74.2% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 43:** Admit that the portion of Miami-Dade County in Congressional District 28 has 80.2% Hispanic VAP.

**ANSWER:** Admitted.

**REQUEST NO. 44:** Admit that the portion of Miami-Dade County in Congressional District 26 has a higher Hispanic VAP than the portions of Miami-Dade County in Congressional Districts 24, 27, and 28.

**ANSWER:** Admitted.

**REQUEST NO. 45:** Admit that Immokalee is split across two congressional districts.

**ANSWER:** The Secretary objects that this request is vague. Because Immokalee is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Immokalee CDP and therefore to the perimeter of Immokalee CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 46:** Admit that the portion of Immokalee in Congressional District 26 has 70.3% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because Immokalee is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Immokalee CDP and therefore to the perimeter of Immokalee CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 47:** Admit that Miami is split across three congressional districts.

**ANSWER:** Admitted that the City of Miami is split across three congressional districts.

**REQUEST NO. 48:** Admit that the portion of Miami in Congressional District 26 has 79.6% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in Congressional District 26 has 79.7% Hispanic VAP.

**REQUEST NO. 49:** Admit that the portion of Miami in Congressional District 26 has higher Hispanic VAP than the portions of Miami in Congressional District 24.

**ANSWER:** Admitted.

**REQUEST NO. 50:** Admit that Brownsville is split across two congressional districts.

**ANSWER:** The Secretary objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 51:** Admit that the portion of Brownsville in Congressional District 26 has 63.7% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 52:** Admit that the portion of Brownsville in Congressional District 26 has higher Hispanic VAP than the portion of Brownsville in district 24.

**ANSWER:** The Secretary objects that this request is vague. Because Brownsville is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Brownsville CDP and therefore to the perimeter of Brownsville CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 53:** Admit that Gladeview is split across two congressional districts.

**ANSWER:** The Secretary objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 54:** Admit that the portion of Gladeview in Congressional District 26 has 92.5% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by

Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 55:** Admit that the portion of Gladeview in Congressional District 26 has higher Hispanic VAP than the portion of Gladeview in district 24.

**ANSWER:** The Secretary objects that this request is vague. Because Gladeview is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Gladeview CDP and therefore to the perimeter of Gladeview CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 56:** Admit that West Little River is split across two congressional districts.

**ANSWER:** The Secretary objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United

States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 57:** Admit that the portion of West Little River in Congressional District 26 has 83.3% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 58:** Admit that the portion of West Little River in Congressional District 26 has higher Hispanic VAP than the portion of West Little River in Congressional District 24.

**ANSWER:** The Secretary objects that this request is vague. Because West Little River is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as West Little River CDP and therefore to the perimeter of West Little River CDP, as created and defined by the United

States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 59:** Admit that the majority of precincts that are split between Congressional District 26 and another district contains a higher percentage of Hispanic VAP in the portion in Congressional District 26 than the portion in the other district.

**ANSWER:** Denied that any precincts are split between congressional districts.

**REQUEST NO. 60:** Admit that the Republican candidate won a plurality or majority in the 2020 Presidential election in Congressional Districts 26, 27, and 28.

**ANSWER:** Admitted.

**REQUEST NO. 61:** Admit that the Republican candidate won a plurality or majority in the 2018 governor election in Congressional Districts 26, 27, and 28.

**ANSWER:** Denied.

**REQUEST NO. 62:** Admit that the Republican candidate won a plurality or majority in the 2016 Presidential election in Congressional Districts 26, 27, and 28.

**ANSWER:** Denied.

**REQUEST NO. 63:** Admit that in the Challenged State House Districts the combined overall Hispanic VAP is 69.3% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 64:** Admit that in the Challenged State House Districts the combined overall White VAP is 11.8% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 65:** Admit that in the Challenged Districts the combined overall Black VAP is 17.6% based on 2020 Census data.

**ANSWER:** Denied.

**REQUEST NO. 66:** Admit that all of the Challenged Districts have a Hispanic VAP above 65%.

**ANSWER:** Admitted that all of the Challenged Districts have a Hispanic VAP above 65.0%.

**REQUEST NO. 67:** Admit that all but one of the Challenged Districts have a Hispanic VAP above 70%.

**ANSWER:** Admitted.

**REQUEST NO. 68:** Admit that Miami is split across five State House districts.

**ANSWER:** Admitted that the City of Miami is split across five State House districts.

**REQUEST NO. 69:** Admit that the portion of Miami in State House Districts 112, 113, and 114 have a 78.9% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in State House Districts 112, 113, and 114 has a 78.8% Hispanic VAP.

**REQUEST NO. 70:** Admit that the portion of Miami in State House Districts 108 and 109 have a 55.5% Hispanic VAP.

**ANSWER:** Admitted that the portion of the City of Miami in State House Districts 108 and 109 has a 55.5% Hispanic VAP.

**REQUEST NO. 71:** Admit that Goulds is split across two State House districts.

**ANSWER:** The Secretary objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 72:** Admit that the portion of Goulds in State House District 118 has a 80.9% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore

understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 73:** Admit that the portion of Goulds in State House District 117 has a 55.5% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because Goulds is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as Goulds CDP and therefore to the perimeter of Goulds CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 74:** Admit that the portion of Goulds in State House District 118 has higher Hispanic VAP than the portion of Goulds in district 117.

**ANSWER:** Admitted.

**REQUEST NO. 75:** Admit that South Miami Heights is split across two State House districts.

**ANSWER:** The Secretary objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized

by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 76:** Admit that the portion of South Miami Heights in State House District 118 has a 80.6% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 77:** Admit that the portion of South Miami Heights in State House District 117 has a 75.5% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore

understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is denied.

**REQUEST NO. 78:** Admit that the portion of South Miami Heights in State House District 118 has higher Hispanic VAP than the portion of South Miami Heights in district 117.

**ANSWER:** The Secretary objects that this request is vague. Because South Miami Heights is an unincorporated community and not a municipality or other political subdivision of the State of Florida, it has no official boundaries under Florida law and no political boundaries recognized by Florida's redistricting standards. *See* Fla. Const. art. III, §§ 20(b), 21(b). The Secretary therefore understands this request to refer to the Census Designated Place (CDP) known as South Miami Heights CDP and therefore to the perimeter of South Miami Heights CDP, as created and defined by the United States Census Bureau for data-aggregation purposes. With that understanding, this request is admitted.

**REQUEST NO. 79:** Admit that there is a unincorporated area northeast of Everglades National Park that is split across two State House districts.

**ANSWER:** The Secretary objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 80:** Admit that the portion of the unincorporated area northeast of Everglades National Park in State House District 119 has a 88.0% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 81:** Admit that the portion of unincorporated area northeast of Everglades National Park in State House District 120 has a 44.9% Hispanic VAP.

**ANSWER:** The Secretary objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

**REQUEST NO. 82:** Admit that the portion of the unincorporated area northeast of Everglades National Park in State House District 118 has higher Hispanic VAP than the portion of the large unincorporated area northeast of Everglades National Dark in State House District 117.

**ANSWER:** The Secretary objects that this request is vague. The vast majority of the land area of the State of Florida, including South Florida, is unincorporated. The area northeast of Everglades National Park is part of a continuous tract of unincorporated area that permeates the State. It is unclear what portion of that unincorporated area this request references.

Dated: July 18, 2025

Respectfully submitted by,

Bradley R. McVay (FBN 79034)
Ashley Davis (FBN 48032)
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536
Brad.McVay@dos.fl.gov
Ashley.Davis@dos.fl.gov

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938
MJazil@holtzmanvogel.com
MBeato@holtzmanvogel.com
ZBennington@holtzmanvogel.com

*Counsel for the Secretary*

## CERTIFICATE OF SERVICE

I certify that on July 18, 2025, I served the foregoing via electronic mail to all counsel of record.

/s/ Mohammad O. Jazil
Mohammad O. Jazil