# Exhibit 2

# Supreme Court of Florida

WEDNESDAY, JUNE 10, 2026

Equal Ground Education
Fund, Inc., et al.,
                    Petitioner(s)
v.

Secretary, Florida Department
of State, et al.,
                    Respondent(s)

**SC2026-0857**
Lower Tribunal No(s).:
1D2026-1539;
372026CA0009141000MX

We hereby deny Petitioners' request for a constitutional writ. We have repeatedly stressed that "the doctrine of all writs is not an independent basis for this Court's jurisdiction." *Roberts v. Brown*, 43 So. 3d 673, 677 (Fla. 2010); *Black Voters Matter Capacity Bldg. Inst., Inc. v. Byrd*, 340 So. 3d 475, 475 (Fla. 2022). Here Petitioners ask us to intervene in the First District Court of Appeal's ongoing consideration of an appeal of an order declining to grant a temporary injunction. At this time, we do not have jurisdiction over that matter, and we do not simply assume that the First District's decision will provide an appropriate basis for this Court's review. We add that no motions for rehearing will be considered.

**CASE NO.:  SC2026-0857**
Page Two

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and
SASSO, JJ., concur.
TANENBAUM, J., specially concurs with an opinion.
LABARGA, J., dissents with an opinion.

TANENBAUM, J., specially concurring.

> *Facts are stubborn things; and whatever may be our*
> *wishes, our inclinations, or the dictates of our passion,*
> *they cannot alter the state of facts and evidence.*
> – John Adams

The dissent makes several assertions regarding this court's

jurisdiction and the First District Court of Appeal's handling of the

underlying non-final-order appeal.  Though I join the majority in

full, the dissent's assertions impel, respectfully, a proper response.

I

To begin, the dissent presumes that there *unquestioningly* will

be a constitutional hook supporting this court's discretionary

jurisdiction to review the First District's eventual disposition.  That

presumption is not well founded.  A temporary injunction like the

one sought below is merely an interim writ (rather than a

provisional remedy), and the trial court's power to grant one comes

directly from the constitution.  *See* Art. V, § 5(b), Fla. Const.

CASE NO.:  SC2026-0857
Page Three

(granting circuit courts the power to issue "all writs necessary or proper to the complete exercise of their jurisdiction"); *Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.* (*Byrd I*), 339 So. 3d 1070, 1075–76 (Fla. 1st DCA 2022) (explaining the history behind this constitutional writ of injunction and citing cases).  The Declaratory Judgment Act does not establish a right to provisional or temporary relief, so whether to grant or deny the interim injunction—especially in a suit for a declaratory judgment—could be only a procedural question, not a substantive one.  *See Byrd I*, 339 So. 3d at 1076–77. In turn, the trial court's decision on a request for that injunction is not one addressing the merits of a plaintiff's claim for relief.

Indeed, this court, for nearly a century and a half, has said that the trial court's consideration of a temporary injunction "in no manner [requires it] to anticipate the ultimate determination of rights involved."  *Sullivan v. Moreno*, 19 Fla. 200, 215 (1882).  "[I]ts purpose is to preserve the property or rights *in statu quo,* until a satisfactory hearing upon the merits, *without expressing and indeed without having the means of forming an opinion as to such rights,*"

**CASE NO.:  SC2026-0857**
Page Four

and without the necessity of "decid[ing] in favor of complainant upon the merits."  *Id.* (second emphasis supplied).

A temporary injunction just provides the trial court a tool to protect, if necessary, its jurisdiction until it can decide the case before it on the merits and afford the complete relief directed by law if the facts, sufficiently proven, warrant it.  Though the trial court must make some threshold, cursory prediction of a plaintiff's ultimate success at a final hearing, the trial court is mostly assessing its own need regarding jurisdiction rather than a plaintiff's substantive entitlement to an injunction.  The determination does not truly bear on whether there has been an infringement of a substantive right.

For this reason, our court early on has characterized "[t]he granting of a temporary injunction [a]s a matter peculiarly within the discretion of the court upon a consideration of all the circumstances."  *Id.*; *see also Simms v. Patterson*, 43 So. 421, 422 (Fla. 1907) ("It is settled law in this court that both the granting and continuing of injunctions rests largely within the sound judicial

**CASE NO.: SC2026-0857**
Page Five

discretion of the [trial] court, to be governed by the circumstances

of the case, and that an appellate court *will not interfere* with the

exercise of this judicial discretion, unless an abuse thereof is clearly

made to appear." (emphasis supplied)); *Shaw v. Palmer*, 44 So. 953,

954–55 (Fla. 1907) ("*Wide judicial discretion* rests in the [trial] court

in the granting, denying, dissolving, or modifying injunctions, and,

where the evidence taken by the court in person is sufficient to

warrant the action of the court, the appellate court *will not interfere*

where no abuse of discretion appears." (emphases supplied)).

The sole question before the First District in the underlying

appeal, then, is whether the trial court abused its discretion in

assessing any threat to its jurisdiction to ultimately afford full relief,

if warranted.  Whatever the First District ultimately might decide, it

is not at all clear, as we sit here today, that its review for an abuse

of discretion will "expressly construe[] a provision of the state or

federal constitution"; a decision either way certainly will not

constitute an express "declar[ation]" that a statute or a

CASE NO.:  SC2026-0857
Page Six

constitutional provision is valid or invalid.  Art. V, § 3(b)(3), (1), Fla.

Const.

## II

Next, there is the dissent's complaint that the First District did

not certify the non-final-order appeal to this court under Article V,

section 3(b)(5) of the Florida Constitution (known as "pass-through"

jurisdiction).  This court, since the time that the district courts of

appeal were first created, has said that these courts *were not*

intermediate appellate courts.  *Ansin v. Thurston*, 101 So. 2d 808,

810 (Fla. 1958) ("It was never intended that the district courts of

appeal should be intermediate courts.").  Rather, "[t]hey are and

were meant to be courts of final, appellate jurisdiction."  *Lake v.*

*Lake*, 103 So. 2d 639, 642 (Fla. 1958).  The court continued:

> Sustaining the dignity of decisions of the district courts
> of appeal must depend largely on the determination of
> the Supreme Court not to venture beyond the limitations
> of its own powers by arrogating to itself the right to delve
> into a decision of a district court of appeal primarily to
> decide whether or not the Supreme Court agrees with the
> district court of appeal about the disposition of a given
> case.

*Id.*

CASE NO.:  SC2026-0857
Page Seven

This court even observed that "[t]he revision and modernization of the Florida judicial system at the appellate level was prompted by the great volume of cases reaching the Supreme Court and the consequent delay in the administration of justice." *Ansin,* 101 So. 2d at 810.  By our own characterization, we are to "function[] as a supervisory body in the judicial system for the State," acting only when necessary to settle "issues of public importance" and to "preserv[e the] uniformity of principle and practice, with review by the district courts in most instances being final and absolute."  *Id.*  As this court then concluded,

> [t]o fail to recognize that [the district courts are] primarily of final appellate jurisdiction and to allow such courts to become intermediate courts of appeal would result in a condition far more detrimental to the general welfare and the speedy and efficient administration of justice than that which the system was designed to remedy.

*Id.*

"[U]nder th[is] constitutional plan the powers of this Court to review decisions of the district courts of appeal are limited and strictly prescribed."  *Id.*  The district courts—being the courts of last resort in almost all appeals—are the gatekeepers for this court's

**CASE NO.: SC2026-0857**
Page Eight

discretionary jurisdiction in many circumstances.  That includes

pass-through jurisdiction.  The constitution gives the *district court*

the absolute authority, in its considered judgment, to determine

whether an appeal is appropriate for pass-through certification.  It

is not for this court to admonish one of these usually-last-resort

appellate courts for making a judgment call on whether to certify.

And there are fair reasons for the First District's call here.

Perhaps the First District chose not to certify because it considered

the appeal for what it is—a non-final-order appeal involving an

abuse-of-discretion review.  It is not readily apparent how the First

District may have botched its assessment.  After all, what about a

trial court's determination that a constitutional writ was not

necessary to protect its jurisdiction—after weighing the

consequences of both granting and denying the writ so close to

candidate qualifying, with candidates already having made

decisions based on the new redistricting law—is "of great public

importance" or would "have a great effect on the proper

CASE NO.:  SC2026-0857
Page Nine

administration of justice throughout the state"?  Art. V, § 3(b)(5),

Fla. Const.  The dissent does not say.

The district court may also have factored into its calculus the

fact that the plaintiffs chose the constitutionally bankrupt practice

of using the temporary-injunction route to obtain some immediate,

ostensibly splashy judicial ruling on what they can *claim* to be an

important constitutional question; rather than pushing forward to

obtain an expedited judgment on the merits through the ordinary,

legally established course.  *See Byrd I*, 339 So. 3d at 1078

(criticizing this approach).  At least in *Byrd II* (on which the dissent

relies), that is exactly what happened.  *See generally Black Voters*

*Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State* (*Byrd II*),

415 So. 3d 180, 184 (Fla. 2025).  It may also have been of some

note to the First District, here, that the plaintiffs have put no effort

at all into moving their suit to disposition in the trial court while

they take the non-final, non-merits order up on appeal.  At all

events, surely reasonable minds could disagree over whether this

CASE NO.:  SC2026-0857
Page Ten

non-final-order appeal is the "big one" requiring our immediate involvement for the benefit of the State.

III

The dissent also attributes dilatoriness to the First District, criticizing it, I guess, for not fully getting the message from this court in *Byrd II*—ostensibly suggesting that this court could move more quickly in the light of the approaching federal qualifying deadline.  But review the tape, so to speak.  In 2023, the First District took fewer than ninety days (from September 6, 2023, when the notice of appeal was filed; to December 1, 2023, when the opinion was issued) to dispose of the appeal that the dissent once again says should have been passed through in *Byrd II*.  *See Sec'y of State Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, 375 So. 3d 335, 338 (Fla. 1st DCA 2023).  In about *eighty-six days*, the First District managed to sit en banc (with ten judges participating), hold oral argument, produce multiple opinions—including a majority opinion joined by seven of those ten judges—and conclusively dispose of the final-order appeal.  The deadline to

**CASE NO.:  SC2026-0857**
Page Eleven

qualify for federal office in advance of the 2024 election was April 26, 2024.

The amended notice to invoke this court's jurisdiction was filed December 13, 2023, with four months still left to go before federal qualifying.  This court accepted jurisdiction January 24, 2024, leaving itself around ninety days to dispose of the case before qualifying—about the same amount of time it took the First District to address the matter on the merits.  This court did not finally dispose of the case until *nearly eighteen months* later, on July 17, 2025—long after qualifying *and the election.  See Byrd II.*

IV

Finally, the dissent suggests there is a special urgency here, requiring this court's immediate involvement, because congressional redistricting is involved.  There is no need for special treatment in this case.  Perhaps the First District took into consideration the fact that this court in the past has allowed congressional elections to move forward on redistricting plans that have been declared, directly or indirectly, to be unconstitutional.  It

CASE NO.:  SC2026-0857
Page Twelve

happened in 2014.  *See Byrd I*, 339 So. 3d at 1082–83.  And, in essence, that was the effect of this court's decision in *Byrd II*— wherein it acknowledged that the challenged redistricting law destroyed a benchmark district in violation of the Fair Districts Amendment (as previously interpreted by this court) but leaving that plan in place because the plaintiffs had failed to come up with a constitutionally permissible alternative.  *See Byrd II*, 415 So. 3d at 194, 198–200; *but cf. Marbury v. Madison*, 5 U.S. 137, 178 (1803) (holding that the constitution, as the superior law, must control over a statute, which is the inferior law).

\*   \*   \*

This court's denial of the requested writ in this case simply reflects its respect for the constitution's allocation of judicial power across the State's different courts and the limited authority the constitution gives us to intervene in appeals pending in the district courts.  The process in this case has operated as the constitution requires.  The people of Florida can rest assured that elections will take place this year—under a redistricting law and an election code

CASE NO.:  SC2026-0857
Page Thirteen

enacted by their Legislature, all as administered by various, capable

state and local election officials—following which they will have

their duly apportioned allotment of elected representatives in

Congress.  In the meantime, the plaintiffs will have their days in

court, in due course, to be heard on the merits of their challenge to

the new redistricting law—all in comportment with the reformed

judicial system established by the people through their constitution.

LABARGA, J., dissenting.

    I dissent to the majority's denial of a constitutional writ

because I disagree that this Court lacks jurisdiction to consider the

present matter.  Based on the record before this Court, it is not a

simple assumption that this Court will ultimately have jurisdiction

to review the First District Court of Appeal's decision.  Each legal

issue raised in the plaintiffs' complaint alleges a violation of the Fair

Districts Amendment set forth in article III, section 20 of the Florida

Constitution.

    And while I disagree with the majority's decision here, I write

further to express concern about jurisdictional decisions made by

**CASE NO.:  SC2026-0857**
Page Fourteen

the First District Court of Appeal.

The filing deadline for the November 2026 congressional elections is noon on Friday, June 12, 2026, followed by primary day on Tuesday, August 18, 2026.

With this backdrop, on May 27, 2026, the First District Court of Appeal received the appeal of the trial court's May 26, 2026, order denying a preliminary injunction of Florida's 2026 congressional map.  On June 1, 2026, expressly mindful of a previous word of caution regarding time-sensitive matters, the district court declined to pass through this urgently time-sensitive matter to this Court for immediate review, suggesting that substantive and procedural factors in this case do not require such expedited treatment.[1]

---

1.  Article V, section 3(b)(5) of the Florida Constitution provides for what is commonly referred to as this Court's "pass-through" jurisdiction.  Pursuant to this section, this Court

> [m]ay review any order or judgment of a trial court certified by the district court of appeal in which an appeal is pending to be of great public importance, or to have a great effect on the proper administration of justice

**CASE NO.:  SC2026-0857**
Page Fifteen

Not only that, having denied a request to pass through the appeal of the order denying the injunction, on June 3, 2026, the district court also denied the motion to expedite its own appellate review of the appeal of the trial court's order.

My mention of a previous caution highlights that this is not a novel situation.  In 2023, with the 2024 congressional election approaching and a congressional map at issue, the district court refused a "Joint Time-Sensitive Suggestion for Pass-Through Certification"—from the parties on both sides of the case—to permit the most expeditious outcome-determinative review in this Court. The district court determined instead to keep the case and decide the merits en banc.[2]  In our ultimate review of the district court's merits decision, the majority explained:

---

throughout the state, and certified to require immediate resolution by the supreme court.

2.  *See* Order, *Sec'y of State Byrd v. Black Voters Matter Capacity Bldg. Inst., Inc.*, Case No. 1D2023-2252 (Fla. 1st DCA Sep. 18, 2023) (ordering setting matter for en banc determination after the parties jointly requested pass-through certification "for immediate resolution by the Florida Supreme Court").

CASE NO.:  SC2026-0857
Page Sixteen

     Even when a district court disagrees with a decision of this Court, it is the lower court's duty to follow our precedent.  In appropriate cases, the district court may pass upon and certify a question of great public importance for our review.  We reject the First District's contrary approach.

     Finally, we remind all district courts of their constitutional authority to certify for this Court's direct review trial court judgments in which an appeal is pending and which are of "great public importance" or "have a great effect on the proper administration of justice throughout the state."  Art. V, § 3(b)(5), Fla. Const.

*Black Voters Matter Capacity Bldg. Inst., Inc. v. Sec'y, Fla. Dep't of State*, 415 So. 3d 180, 192-93 (Fla. 2025).

And yet, for a second time in fewer than three years, in a substantively similar context, the district court has elected a path of delayed appellate review.  Only this time, the votes of even more Floridians are at stake.  While invoking pass-through jurisdiction is a discretionary matter for the district court, the fact is—as we previously reminded the district court—that our state's constitution anticipates that some matters may be so urgent as to require an expedited path to this Court.  Surely, the upcoming 2026 congressional elections affecting the representation of millions of

CASE NO.:  SC2026-0857
Page Seventeen

Floridians meet that threshold, just as the upcoming 2024 congressional elections did.

And, *had the district court invoked pass-through jurisdiction here, doing so would have established an independent basis for this Court's jurisdiction in this matter.*

Even in the absence of pass-through jurisdiction, this is hardly a situation where this Court's ultimate jurisdiction is in question.  The appeal of the injunction and any appeal on the merits will almost certainly involve construing article III, section 20—the Fair Districts Amendment approved by voters in 2010 as an amendment to the Florida Constitution.  Thus, this Court will have discretion to exercise its subject matter jurisdiction and review the decisions that eventually leave the First District Court of Appeal.[3]

Unfortunately, for now, and with a filing deadline and an election fast approaching, we will not have the opportunity to review

_____

3.  Article V, section 3(b)(3) of the Florida Constitution provides in part that this Court "[m]ay review any decision of a district court of appeal . . . that expressly construes a provision of the state or federal constitution . . . ."

**CASE NO.:  SC2026-0857**
Page Eighteen

the issues of statewide importance raised in the petitioners' efforts

to enjoin Florida's 2026 congressional map.

> For these reasons, I dissent.

A True Copy
Test:

SC2026-0857 6/10/2026

John A. Tomasino
Clerk, Supreme Court
SC2026-0857 6/10/2026



SO

Served:
ANTHONY ASHTON
ANDRE VELOSY BARDOS
KRISTEN CLARKE
1DCA CLERK
LEON CLERK
ASHLEY DAVIS
JEFFREY PAUL DESOUSA
DAVID DEWHIRST
CHRISTINA A. FORD
HARLEEN K. GAMBHIR
MIRIAM FAHSI HASKELL
HON. JOSHUA MAHLON HAWKES
MOHAMMAD OMAR JAZIL
PETER KETCHAM-COLWILL
ABHA KHANNA
CARMEN MARIA MANRARA CARTAYA
MARGARET ANNE MCCORMICK
HANI MIRZA

**CASE NO.:  SC2026-0857**
Page Nineteen

JASON J. MUEHLHOFF
DANIEL ELDEN NORDBY
JOHN POWERS
HUNTER ROBERT PRATT
TARA PRICE
KASSANDRA REARDON
QUINN BRANDON RITTER
ADAM CARDON SAPER
FREDERICK STANTON WERMUTH
MARTIN CHRISTIAN WOLK
JULIE ZUCKERBROD